UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN HOLT, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>NOBLE HOUSE HOTELS & RESORT, LTD dba NOBLE HOUSE HOTELS & RESORT, LTD, LP AND DOES 1-25 inclusive,<br><br>Defendant. | Case No.: 17CV2246-MMA(BLM)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANT**<br><br>**[ECF NO. 39]** |

Currently before the Court is Plaintiff's July 18, 2018 Motion to Compel Discovery Responses From Defendant [see ECF No. 39 ("MTC")], Defendant's July 25, 2018 opposition to the motion [see ECF No. 40 ("Oppo.")], and Plaintiff's August 1, 2018 reply [see ECF No. 43 ("Reply")]. For the reasons set forth below, Plaintiff's motion is **GRANTED IN PART**.

## **FACTUAL BACKGROUND**

The instant class action was removed to this Court on November 3, 2017 and brings claims for violations of California Business & Professions Code Sections 17200 and 1750, and California Civil Code Section 1750. ECF No. 1. Plaintiff filed an amended complaint on April 30, 2018 alleging the same causes of action. ECF No. 35. Specifically, Plaintiff alleges that Defendant engages in deceptive and misleading billing practices at its restaurants that cause consumers to suffer monetary damages and competitors to suffer a competitive disadvantage.

Id. at 2. The source of this allegedly deceptive behavior is a 3.5 percent surcharge that Defendant adds to consumers' final bills. Id. at 2-3. Plaintiff alleges that the surcharge is "a non-earned percentage added to the consumers' final bills, which is actually a false, deceptive, and misleading charge" that misleads the public about the actual prices of Defendant's food and drinks. Id.

## **RELEVANT PROCEDURAL AND DISCOVERY BACKGROUND**

On March 30, 2018,[1] Plaintiff served on Defendant Plaintiff's Requests for Admission, Requests for Production of Documents, and Special Interrogatories (Set One). See Hart Decl. at ¶ 2. Defendant served its responses on May 2, 2018. Id. at ¶ 3. Plaintiff sent a meet and confer letter to Defendant on May 9, 2018 to address deficiencies in the production and the parties held a telephonic meet and confer on May 16, 2018. Id. at ¶¶ 4-6. During the call, defense counsel agreed to follow-up with Plaintiff's counsel after speaking with her client. Id. at ¶ 6. On June 6 and 8, 2018, Plaintiff's counsel contacted defense counsel regarding the status of the disputed discovery and defense counsel responded that additional time was needed. Id. at ¶¶ 8-9. Counsel spoke again on June 11, 2018 and on June 25, 2018, defense counsel emailed supplemental discovery responses to Plaintiff's counsel. Id. at ¶¶ 10-12. Counsel held another telephonic meet and confer on June 28, 2018 regarding the still insufficient discovery responses and Plaintiff's counsel sent another letter to defense counsel on July 5, 2018. Id. at ¶ 13.

On July 11, 2018, counsel for Plaintiff, Ms. Yana Hart and Mr. Clark Conforti, and counsel for Defendant, Ms. Heidi Bradley and Mr. James Zack, contacted the Court regarding various discovery disputes concerning Defendant's responses to written discovery. ECF No. 38. In response, the Court issued a briefing schedule. Id. The parties timely filed their pleadings in accordance with the schedule. See MTC, Oppo. and Reply.

---

[1] The declaration states that the discovery was served on March 30, 2017. See ECF No. 39-1, Declaration of Yana A. Hart In Support of Plaintiff's Motion to Compel ("Hart Decl.") at ¶ 2. The Court assumes that this is a typographical error and that the discovery was served on March 30, 2018.

## LEGAL STANDARD

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Id. at 34(b)(2)(B).

An interrogatory may relate to any matter that may be inquired under Rule 26(b). Fed. R. Civ. P. 33(a)(2). "The grounds for objecting to an interrogatory must be stated with specificity, [and] [a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4).

"A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). "Each matter must be separately stated." Fed. R. Civ. P. 36(a)(2). A responding party may object to a request if they state the ground for the

objection. Fed. R. Civ. P. 36(a)(5). The requesting party may then seek a decision from the court determining the sufficiency of an answer or objection. Fed. R. Civ. P. 36(a)(6). The court must order that an answer be served unless it finds an objection justified. Id.

# **DISCUSSION**

**A.     Discovery Regarding Defendant's Revenue and Profitability**

    1.     Parties' Positions

Plaintiff seeks to compel additional responses to Requests for Production of Documents ("RFPs") Nos. 10, 11, and 15 and Interrogatories ("Rogs") No. 7 and 8 concerning Defendant's profitability. MTC at 10, 13. The RFPs and Rogs are as follows:

Requests for Production of Documents 10, 11, and 15.

10. Produce YOUR profits/loss statements for each restaurant location in California, or an aggregate of all California restaurant locations for 2016.

11. Produce YOUR profit/loss statements for each restaurant location in California, or an aggregate of all California restaurant locations for 2017.

15. Produce YOUR income/expense report, or other similar financial document, which shows how YOU spend the money YOU received from the SURCHARGE.

Interrogatories 7 and 8.

7. State the total amount of revenue received by YOU for 2016.

8. State the total amount of recent [sic] received by YOU for 2017.

MTC at 10, 13. Plaintiff argues that the requests are highly relevant to her Unfair Competition Law ("UCL") claims "because they demonstrate whether the surcharges went to the restaurant or the employees" and because courts weigh the "utility" of a defendant's conduct when determining if a surcharge is fair under the UCL. Id. at 15. Plaintiff also argues that she has no way of knowing what Defendant does with profits from the surcharge or how the profits impact Defendant's revenue without the requested discovery. Id. at 16. Plaintiff notes that without the information, "Plaintiff cannot even understand the nature of the surcharge, the reasons for its imposition, the utility [of] the surcharge, or even determine whether the disclosure of the

4

surcharge on the customer's bills was, in fact, misleading." Id. Finally, Plaintiff argues that the information will "assist Plaintiff in determining the commonality and typicality under the Rule 23 for the class certification purposes."[2] Id.

Defendant contends that its sole basis for objecting to the requests "is relevance in the context of Fed. R. Civ. P. 26(b)(1)'s proportionality principles." Oppo. at 7; see also ECF No. 40-4, Declaration of Heidi Bradley In Support of Opposition to Plaintiff's Motion to Compel Discovery Responses ("Bradley Decl.") at ¶ 2. Defendant notes that Plaintiff ignores the 2015 amendments of the Federal Rules of Civil Procedure and misstates Fed. R. Civ. P. 26. Id. at 8. Defendant also contends that the financial requests do not bear on whether the surcharge was adequately disclosed which is the legal issue underlying this case and that the "the costs and exposure of producing sensitive financial details [are not] proportional to the value to Plaintiff or important to the resolution of the issues actually in this case." Id. Defendant notes that its use of the money collected through the surcharge is not a relevant inquiry for determining compliance with the UCL and cites to Searle v. Wyndham Internat., Inc., 102 Cal. App. 4th 1327, 1334 (2002) for support. Id. at 8-9. Defendant further contends that since the basis for Plaintiff's complaint is that she was automatically charged the surcharge, and there is no mention in her complaint that the surcharge is not charged as disclosed, there is no merit to her argument that the discovery is needed to "verify that the Surcharge is actually charged as specified in the Surcharge Disclosures (i.e., that the Restaurant automatically adds a 3.5% charge to all bills)." Id. at 10.

Plaintiff replies that at a minimum, she is entitled to investigate these matters as Defendant's disclosure implies that the entire surcharge goes directly to employees which is likely untrue. Reply at 4. Plaintiff also replies that she needs to balance the harm to herself against the utility of Defendant's conduct for her UCL claim and that she "cannot balance any factors if the nature of the surcharge is undisclosed and if Plaintiff is not provided with the

---

[2] Plaintiff responds to other objections initially made by Defendant, but for purposes of this motion, Defendant's only objection is relevance [see Oppo. at 7] so the Court will not address the other objections.

5

financial documents showing the surcharge allocation." Id. at 5.  Plaintiff argues that knowing the total surcharge revenue that Defendant collected is insufficient because "the financial documents would assist Plaintiff in determining if Defendant always charges the surcharge, if any transactions exist without the surcharge, and what is the complete accounting of the surcharge for each separate restaurant Defendant maintains." Id.  Finally, Plaintiff argues that she needs to know the number of surcharge related transactions for each of Defendant's restaurants to aid in determining how she should proceed with her class certification. Id. at 5-6. Plaintiff notes that producing this information would not present a burden for Defendant. Id.

2. Analysis

Plaintiff argues that the requests are relevant to all of her causes of action because they show whether the surcharges went to Defendant or the employees. MTC at 15. Plaintiff also argues that "the financial documents would assist Plaintiff in determining if Defendant always charges the surcharge, if any transactions exist without the surcharge, and what is the complete accounting of the surcharge for each separate restaurant Defendant maintains." Reply at 5. Plaintiff further argues that the requests are relevant to the unfair prong of her UCL claim. MTC at 15; see also Reply at 4-5.

"Because the California Supreme Court has not established a definitive test to determine whether a business practice is unfair [under the UCL], 'a split of authority [has] developed among the Courts of Appeal, which have applied three different tests for unfairness in consumer cases.'" Graham v. VCA Antech, Inc., 2016 WL 5958252, at *8 (C.D. Cal. Sept. 12, 2016) (quoting O'Connor v. Uber Techs., Inc., 2013 WL 6354534, at *16 (N.D. Cal. Dec. 5, 2013) (Chen, J.) (quoting Drum v. San Fernando Valley Bar Ass'n, 182 Cal. App. 4th 247, 256 (2010)). Here, Plaintiff applies the balancing test in which a court "must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim ... [A]n 'unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."[3] Davidson v.

---

[3] The tests applied in other lines of cases:

ConocoPhillips Co., 2008 WL 2625873, at *5 (N.D. Cal. July 3, 2008) (quoting Searle, 102 Cal.App.4th at 1334, 126 Cal.Rptr.2d 231); see also Graham, 2016 WL 5958252, at *8 (quoting Drum, 182 Cal. App. 4th at 256.

While Plaintiff and members of the putative class allege that they "have suffered injury in fact and have lost money or property as a result of Defendant's unfair competition," Defendant responds that the utility or benefit of the allegedly improper surcharge is "to help cover increasing labor costs and in support of the recent increases in minimum wage and benefits for Noble House's dedicated employees." FAC at 11; see also Oppo. at 4. Defendant provides a copy of the menu and bill that were in use in August 2017 when Plaintiff visited the restaurant in support of its response. Oppo. at Exhs. A and B. Both the menu and the bill state

> A 3.5% surcharge will be[4] added to all guest checks to help cover increasing labor costs and in our support of the recent increases in minimum wage and benefits for our dedicated team members.

Id.

The Court finds that the requests seek irrelevant information. Initially, Plaintiff has not

---

> require that the public policy which is a predicate to a consumer unfair competition action under the "unfair" prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions.
>
> [or]
>
> draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.

Graham, 2016 WL 5958252, at *8.

[4] The bill says "has been" instead of "will be." Oppo. at Exh. B.

7

established how Defendant's "profits/loss statements" or "total revenue" are relevant to the claims at issue in this case. Plaintiff argues that the requested financial records will help determine whether the surcharge is charged to every customer but it is not clear that the requested financial records will answer that question and, even if they would, the requests as written are extremely overbroad and seek irrelevant confidential information beyond any surcharge relevance. Moreover, Plaintiff has not established that there is a dispute regarding whether the surcharge was actually charged to every customer and Defendant has provided Plaintiff with "the total amount of surcharge related revenue (Defendant) has collected." Oppo. at 6. Secondly, the Court finds that Plaintiff has not established the relevance of "how [Defendant] spend[s] the money [it] received from the SURCHARGE." MTC at 10. While <u>Searle</u> is not binding on the Court's discovery decision, it is instructive on the relevance of the requested financial records. In <u>Searle</u>, the court opined that a consumer does not have a "legitimate interest in what the hotel does with the service charge." 102 Cal. App. 4th at 1334-35 (<u>Searle</u> involved a plaintiff who alleged a deceptive service charge under the UCL when a 17% service charge was added to her room service bill at defendant's hotel, she was "not advised the service charge [wa]s in fact a gratuity paid to the server," and her bill contained a blank line for her to add gratuity for the server. The California Court of Appeal found that "[w]hat a hotel does with the revenue it earns—either from the mini-bar, in home movies or its room service charges—is of no direct concern to hotel guests" and that the "room service patron[ ] is given both clear notice the service being offered comes at a hefty premium and the freedom to decline the service"). The Court reaches the same conclusion here--how Defendant spent the collected surcharge is not relevant to the claims at issue in this litigation. Finally, the Court finds that the discovery requests for "profits/loss statements" or "total revenue" are not relevant to the utility issue of the UCL claim. To the extent that the requests do have some minimal relevance, the actual requests are overbroad and seek a significant amount of irrelevant and confidential information. Accordingly, Plaintiff's motion to compel further response to RFPs 10, 11, and 15 and Rogs 7 and 8, is **DENIED**.

///

**B.      Discovery Regarding Gratuity**

Plaintiff seeks to compel additional responses to Rogs 13 and 14 and Requests for Admission ("RFAs") Nos. 2 and 8.  The Rogs and RFAs are as follows:

Interrogatories 13 and 14.

13. IDENTIFY the average TIP percentage go [sic] all servers and bartenders employed by YOU, for the four years prior to implementation of the SURCHARGE. (Please note: each bartender and server need not be identified individually, but rather the average of all bartenders and servers is what is sought by Plaintiff.)

14. IDENTIFY the average TIP percentage of all servers and bartenders employed by YOU, since you began using the SURCHARGE. (Please note: each bartender and server need not be identified individually, but rather the average of all bartenders and servers is what is sought by Plaintiff.)

Requests for Admission 2 and 8

2. Admit that the money generated from the SURCHARGE goes to Defendant and is not a TIP for the servers, bartenders, or kitchen staff.

8. Admit that YOU do not separate or segregate the money obtained via SURCHARGE into a separate bank account from the moneys collected for food prices.

MTC at 19-20.  Plaintiff argues that the sought after discovery is relevant to determining Defendant's utility of conduct under the UCL and whether Defendant's disclosure of the surcharge is misleading.  Id. at 21.  Plaintiff notes that the instant matter is distinguishable from Searle where the state court was ruling on a demurrer and not discovery.  Id.  Plaintiff also argues that the discovery is relevant because Defendant misrepresented the prices on the menu and the nature of the surcharge.  Id. at 22. Finally, Plaintiff argues that the discovery goes to the heart of Plaintiff's argument, that "Defendant is falsely advertising the surcharge and is pocketing the profits."  Id.

Defendant contends that the requests are neither relevant nor proportional to this case. Oppo. at 11.  Specifically, Defendant contends that according to Searle, a restaurant's customer

1  "has no legitimate interest in the tipping and compensation practices between the restaurant
2  and its employees, even where the restaurant charges a mandatory service charge." Id.
3  Additionally, Defendant contends that since "Plaintiff's actual claims do not center on whether
4  the Surcharge is a 'tip,' but rather on whether the Surcharge was adequately disclosed to
5  consumers," the requests are not relevant. Id. at 11. Defendant notes that Plaintiff's cite to
6  Ehret v. Uber Techs., Inc., 68 F. Supp. 3d 1121, 1137 (N.D. Cal. 2014) is misplaced. Id. at 12.
7  Defendant also notes that to the extent Plaintiff asserts that her claims concern gratuity related
8  issues, Plaintiff has no standing to do so. Id. at 14.

9  Plaintiff replies that she is not limited to requesting discovery on the issues raised in her
10 pleadings. Reply at 7. Plaintiff further replies that while she does not allege the amount of tip
11 that she left for her server, "this information would assist Plaintiff in determining whether the
12 language on the bill regarding the surcharge is actually misleading." Id. Plaintiff notes that the
13 requested information is not burdensome and that any confidentiality concerns are easily
14 addressed by the protective order in this case. Id.

15 While discovery may not always be limited to the issues raised by the pleadings, Fed. R.
16 Civ. P. 26(b)(1) demands that discovery be relevant to a party's claim or defense and the Court
17 does not find that to be the case here with respect to the gratuity related discovery. Plaintiff's
18 reason for seeking tip percentages - that they may show that the surcharge was not properly
19 disclosed and that consumers were misled into believing the surcharge was a tip - is speculative.
20 There are a large number of factors that could impact the tip percentage for employees.
21 Moreover, as noted by Defendant, Plaintiff does not allege that she tipped her server or that she
22 did not tip her server because she believed that the 3.5% surcharge was a gratuity. Also, unlike
23 the allegedly fraudulent and unfair misrepresentation at issue in Ehret, where plaintiff alleged
24 that defendant explicitly stated that a 20% charge was a gratuity for drivers, but it was actually
25 retained as revenue for defendant, Defendant's menu and bill disclosures do not state that the
26 3.5% surcharge is gratuity for servers. See 68 F. Supp. 3d at 1137; see also Oppo. at Exhs. A-
27 B. Accordingly, Plaintiff's motion to compel a response to interrogatories Nos. 13-14 is **DENIED**.
28 The Court **GRANTS** Plaintiff's motion to compel a response to RFA No. 2. As discussed

above, *how* Defendant spent the surcharge is not relevant in this litigation, but the fact of whether the surcharge goes to Defendant for its use or to servers, bartenders, or kitchen staff as tips is relevant to Plaintiff's claims and the Court therefore orders Defendant to respond to RFA No. 2.  On the other hand, the Court finds that whether or not Defendant uses a separate bank account for surcharge money is irrelevant.  Accordingly, Plaintiff's motion to compel a response to RFA No. 8 is **DENIED**.

**IT IS SO ORDERED**.

Dated: 8/24/2018

Hon. Barbara L. Major
United States Magistrate Judge