# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN HOLT, *individually and on behalf of all others similarly situated*,<br><br>                                   Plaintiff,<br><br>v.<br><br>NOBLE HOUSE HOTELS & RESORT, LTD,<br><br>                                   Defendant. | Case No.:  17cv2246-MMA (BLM)<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br><br><br>[Doc. No. 46] |

Plaintiff Kathleen Holt ("Plaintiff"), individually and on behalf of all others similarly situated, filed this putative class action against Defendant Noble House Hotels & Resort, LTD ("Noble House") alleging causes of action for violations of California's False Advertising Law ("FAL"),[1] California Business and Professions Code sections 17500, *et seq.*; California's Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200, *et seq.*; and California's Consumers Legal Remedy Act ("CLRA"), California Business and Professions Code sections 1750, *et seq.*  Doc. No. 35

---

[1] Plaintiff does not seek to certify an FAL class and because the deadline to file a motion to certify has passed, Plaintiff has waived class certification regarding her FAL cause of action. *See* Mtn. at 13; *see also* Reply at 8; Doc. No. 42.

("FAC"). Plaintiff filed a motion to certify a Federal Rule of Civil Procedure 23(b)(2) class and a Rule 23(b)(3) class. Doc. No. 46-1 ("Mtn."). Noble House filed its response in opposition [Doc. No. 50 ("Oppo.")], and Plaintiff replied [Doc. No. 61 ("Reply")]. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 62. For the following reasons, the Court **GRANTS** Plaintiff's motion for class certification.

## BACKGROUND

On August 6, 2017, Plaintiff was charged a 3.5% surcharge of $1.38 on her bill at Acqua California Bistro ("Acqua"). FAC ¶ 26. Plaintiff contests the legality of Noble House's 3.5% surcharge on menu items within three Hilton hotel restaurants managed by Noble House in San Diego, California: (1) Acqua; (2) Olive Bar; and (3) Fresco's. Plaintiff alleges the surcharge practice is misleading and deceiving because it advertises prices for food and drinks in its menus and then adds the surcharge to the balance of the bill total at checkout "when it is too late for the consumer to make an informed decision about the increased amount on the bill total." FAC ¶¶ 16-30. Plaintiff alleges Noble House adds the surcharge "instead of raising the prices on its menu . . . ." FAC ¶¶ 25, 29. Noble House contends the surcharge was added "to help cover increasing labor costs and in support of the recent increases in minimum wage and benefits . . . ." Oppo. at 7. Noble House places a notice on the bottom of its menus, on signs throughout the premises, and at the bottom of all bills stating: "A 3.5% surcharge will be added to all Guest checks to help cover increasing labor costs and in our support of the recent increases in minimum wage and benefits for our dedicated team members." Mtn. at 12; Oppo. at 7-8; Doc. No. 46-3 ("Kazerounian Decl."), Exhibits D (Acqua bill), E at 4, F (Fresco's menu), H (Acqua menu), J (Olive Bar menu); Doc. No. 56-1 at 50, 52 (Acqua menu and bill).

## LEGAL STANDARD

Rule 23 governs the certification of a class. Fed. R. Civ. P. 23. "Parties seeking class certification bear the burden of demonstrating that they have met each of the four

requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001)). Rule 23(a) requires a party seeking class certification to establish the following four elements:

> (1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims are typical of the class (typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation).

*Id.* at 980 (citing Fed. R. Civ. P. 23(a)). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

District courts must "engage in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23." *Ellis*, 657 F.3d at 980. "In many cases, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* (citation omitted). "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Id.* at 981 (emphasis in original).

Once the prerequisites of Rule 23(a) are met, the Court must then determine whether the class action is maintainable under Rule 23(b). A class action is appropriate under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole," and any request for monetary damages is "merely incidental to [the] primary claim for injunctive relief." Fed. R. Civ. P. 23(b)(2); *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). "Under Rule 23(b)(3), a class may be certified if the district court 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting Fed. R. Civ. P. 23(b)(3)).

## DISCUSSION

### A.     Class Definition

As a preliminary matter, the classes that Plaintiff seeks to certify are different from the class alleged in the FAC. In the FAC, Plaintiff sought to represent a class of "[a]ll consumers who ate or drank at a restaurant in California, owned, managed, or operated by [Noble House], who were charged a surcharge on their bill in addition to the costs of the food or drinks." FAC ¶ 95. However, the motion for class certification seeks to represent a California-only Rule 23(b)(2) class consisting of "[a]ll persons who were charged a surcharge on their bill, between February 1, 2017 and present, at a restaurant in California managed by [Noble House]," and a Rule 23(b)(3) class consisting of "[a]ll residents of California who were charged a surcharge on their bill at one or more of the following three Hilton San Diego Resort and Spa restaurants: (1) Acqua[], (2) Olive Bar, or (3) Fresco's, between February 1, 2017 and September 20, 2017, where payment was processed by credit card." Mtn. at 13.

"The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it." *Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009). "The primary exception to this principle is when a plaintiff proposes a new class definition that is *narrower* than the class definition originally proposed, and does not involve a new claim for relief." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 621 (S.D. Cal. 2015) (citing *Abdeljalil v. Gen.*

*Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015)). Here, the definitions in the motion are narrower than the definition in the FAC and Noble House does not oppose the new definitions. *See* Mtn. at 13 n.2; *see also* Oppo. Accordingly, the Court analyzes class certification based on the definitions provided in Plaintiff's motion.[2]

## B. Certification Under Rule 23(a)

### 1. Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder is "impracticable." Fed. R. Civ. P. 23(a)(1). Noble House does not dispute that the classes satisfy the numerosity requirement, and Plaintiff has presented evidence to confirm that between February 1, 2017 and September 20, 2017, more than forty consumers were charged a surcharge. Doc. No. 46-4, Deposition of Donald Dennis ("Dennis Depo.") at 51:21-52:10 (indicating that that there have been more than 100 patrons at each restaurant in the past 18 months); Doc. No. 46-5 at 12 (admitting Plaintiff's request for admission no. 9 that Noble House charged at least forty consumers with a surcharge within three years prior to Plaintiff filing this action). Accordingly, Plaintiff satisfies the numerosity requirement. *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 588 (S.D. Cal. 2010).

### 2. Commonality

Rule 23(a)(2) requires a plaintiff to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement will be met only if the plaintiff shows that "the class members have suffered the same injury." *Dukes*, 564 U.S. at 350 (quotation marks and citation omitted). For purposes of commonality, the real test is whether a class action can "generate common *answers* apt to

---

[2] Noble House asserts that the classes are not identifiable or ascertainable. Oppo. at 28. However, the Ninth Circuit has declined to adopt an ascertainability and/or administrative feasibility requirement for class plaintiffs to demonstrate for purposes of class certification. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126, 1133 (9th Cir. 2017) (joining the Sixth, Seventh, and Eighth Circuits and declining to impose an additional hurdle beyond those delineated in Rule 23). Also, both parties discuss class notice. *See* Mtn. at 34-35; Oppo. at 28-29. The Court declines to address class notice as this stage of the proceedings as premature. *See* Fed. R. Civ. P. 23(c)(1)-(2).

drive the resolution of the litigation." *Id.* at 350 (quotation marks and citation omitted). In other words, commonality exists where the "determination of [a common contention's] truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014), *cert. denied*, 135 S.Ct. 2835 (2015) (quotation marks and citation omitted). The Rule 23(a)(2) requirements are "construed permissively," such that just one common question of law or fact will satisfy the rule. *See Ellis*, 657 F.3d at 981. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Plaintiff asserts that common questions in this case include: (1) whether Noble House charged California consumers on their credit card a surcharge of 3.5% at any of the three Hilton hotel restaurants in California managed by Noble House between February 1, 2017 and September 20, 2017; and (2) whether the practice of disclosing that a surcharge of 3.5% would be charged on the bill without stating the total amount for each menu item (accounting for the surcharge) is: (a) unlawful *per se* under California Civil Code § 1770(a)(20) of the CLRA, (b) unlawful due to incorporation of the CLRA violation, and (c) an unfair practice under the UCL. Mtn. at 19. Noble House contends that Plaintiff cannot establish commonality for four reasons: (1) Plaintiff fails to show that all class members faced the same circumstances with how the surcharge was disclosed; (2) there is no evidence the putative class members reacted in the same way to the surcharge disclosure or relied upon the notice or lack thereof; (3) Plaintiff testified that the menu she ordered from did not have a surcharge disclosure; and (4) Plaintiff was only a patron at one of the restaurants at issue in this case. Oppo. at 18-20.

Noble House misconstrues Plaintiff's claims by focusing on disclosure of the surcharge. *See id.* Noble House contends that disclosed surcharges are not *per se*

unlawful.[3]  *See id.* (citing *Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327, 1336 (Ct. App. 2002); *Italian Colors Restaurant v. Harris*, 99 F. Supp. 3d 1199, 1205 (E.D. Cal. 2015)).  However, Plaintiff does not allege that surcharges in general are *per se* unlawful, but rather that Noble House's practice with respect to its 3.5% surcharge is *per se* unlawful under the CLRA and UCL.  *See* FAC.  Specifically, Plaintiff asserts that Noble House's surcharge violates the CLRA because the menu lists the prices of menu items without the added 3.5% surcharge.  FAC ¶ 82; *see* Cal. Civ. Code § 1770(a)(20) (stating it is unlawful to "[a]dvertise that a product is being offered at a specific price plus a specific percentage of that price unless . . . the total price is set forth in the advertisement").  According to Plaintiff, this business practice also constitutes an unlawful or unfair business practice under the UCL.  *See* FAC.  In other words, Plaintiff argues Noble House's practice of listing the cost of an item, for example $10.00, violates the CLRA and UCL because, after imposition of the surcharge, the item actually costs $10.35.  More importantly, Plaintiff argues this practice violates these consumer protection statutes regardless of disclosure.[4]

---

[3] The Court finds *Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327, which Noble House relies on to support its argument that mandatory surcharges are permissible, inapposite.  *See* Oppo. at 10.  In *Searle*, the hotel-patron plaintiff "alleged a 17 percent service charge the hotel[-defendant] adds to its room service bills is paid directly to room service servers and that, in failing to expressly advise patrons about this aspect of the server's compensation, the hotel is engaging in a deceptive practice which induces patrons to pay gratuities patrons would not otherwise feel obligated to provide."  *Searle*, 102 Cal. App. 4th at 1330.  The court specified that "[*b*]*ecause there is no allegation the hotel deceives its guests about the costs of its room service meals* and because patrons are free to both obtain meals outside their rooms and to provide as small or as large a gratuity as they wish, the hotel's billing practice is not actionable." *Id.* (emphasis added).  For this reason, the Court finds *Searle* and other cases relating to room service charges distinguishable and inapposite.  *See id.*

[4] The Court notes that its Order denying Noble House's motion to dismiss was based solely on arguments raised by Noble House.  *See* Doc. Nos. 6, 14.  In its motion to dismiss, Noble House argued that it disclosed the surcharge, and therefore, Plaintiff's causes of action failed to state a claim.  *See* Doc. No. 6.  The Court, noting it would be improper to factually determine at the motion to dismiss stage that the surcharge was disclosed where Plaintiff alleged otherwise, denied the motion.  *See* Doc. No. 14. This does not mean that Plaintiff's claims survived solely because Plaintiff alleged the surcharge was not disclosed.

"Claims arising under consumer protection statutes are generally well-suited for class certification." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 474 (C.D. Cal. 2012). Here, the parties agree that Noble House engages in the same surcharge practice for all restaurants Noble House manages in California for Hilton hotels. Mtn. at 20; Oppo. at 21 (stating that it is undisputed that the "Surcharge Disclosure practices . . . have been in effect and consistently applied since February 2017"). "Thus, Plaintiff alleges a single misrepresentation that was made identically to all potential class members." *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 589 (C.D. Cal. 2011). Plaintiff's injury is in purchasing one or more items off of one of the restaurants' menus in reliance on the alleged misrepresentation that the cost listed on the menu was the total cost, when in fact the total cost is 3.5% higher. *See id.* Similarly, the class members' injuries are purchasing an item off of a menu in reliance on the menu price. *See id.*

As such, the Court finds that the class claims do pose a common question: whether Noble House's practice of listing menu prices without inclusion of the cost of the surcharge was unfair, deceptive, and/or misleading under the CLRA and/or UCL. Such a question is sufficient to satisfy commonality. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 973 (C.D. Cal. 2015) (finding the question "whether ConAgra's '100% Natural' marketing and labeling of Wesson Oil products was false, unfair, deceptive, and/or misleading" sufficient to satisfy commonality); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) (finding the commonality requirement was satisfied by allegations that the defendant beverage supplier's "packaging and marketing materials [were] unlawful, unfair, deceptive, or misleading to a reasonable consumer"). Moreover, variation among factual circumstances behind class members' experience with the surcharge and its disclosure does not defeat the "minimal" showing required to establish commonality. *See Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("[H]ere, variation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid

does not defeat the relatively 'minimal' showing required to establish commonality"). The Court, therefore, finds the commonality requirement satisfied.

### 3. *Typicality*

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009) (quotation marks and citation omitted); *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation. *Id.* at 508 (quotation marks and citation omitted).

Noble House contends Plaintiff's claims are not typical because: (1) she was only a patron at one of the restaurants at issue in this action; and (2) she did not rely on the surcharge disclosure when she ordered a meal at Acqua.[5] Oppo. at 20-22. The Court is not persuaded by either of Noble House's arguments. First, the fact that Plaintiff was a patron at only one of the restaurants at issue in this action does not defeat typicality. Noble House contends the same surcharge practice has been "in effect and consistently applied" at all of the restaurants at issue in this case since February 2017. Oppo. at 21; *see* Doc. No. 52-6 ("Dennis Depo."), at 49:11-51:17. Thus, members of the class were subjected to the same surcharge practice of listing the menu price without inclusion of the

---

[5]At her deposition, Plaintiff testified that she did not see the surcharge disclosure. Doc. No. 56-1 ("Holt Depo."), at 57:8-11. Later in the deposition, Plaintiff appears to testify that she did order from the menu, and that the menu did contain the surcharge disclosure. *See id.* at 64:10, 64:19-65:14, 71:9-72:5. In any event, Plaintiff concedes that the menu did contain the surcharge disclosure. *See* Mtn. at 12 (explaining that beginning in February of 2017, "Noble House placed a [surcharge] notice in tiny print at the bottom of its menus and on a few small signs on the premises"); Reply at 3 (stating that "Ms. Holt testified that she ordered from the Acqua menu which menu (undoubtedly) contains the surcharge disclosure").

cost of the surcharge. Noble House has not explained how being a patron of only one of the restaurants makes Plaintiff's claims and defenses unique in light of the surcharge practice's prevalence at all restaurants at issue. *See Hanon*, 976 F.2d at 508.

Second and as discussed previously, whether Plaintiff saw the surcharge disclosure is irrelevant because Plaintiff alleges the practice of listing a menu item price without accounting for the surcharge is unlawful. Additionally, whether class members saw the disclosure and their responses to the disclosure is irrelevant because "a plaintiffs' [sic] individual experience with the product is irrelevant where, as here, the injury under the UCL . . . and CLRA is established by an objective test. Specifically, this objective test states that injury is shown where the consumer has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that 'members of the public are likely to be deceived.'" *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (citation omitted).

In this case, Plaintiff alleges that she and all class members were exposed to the same allegedly misleading and deceiving practice—the price of menu items without the cost of the surcharge added—and that they were all injured in the same manner—they were injured by the statutory violations and cost of the surcharge. As a result, the Court concludes that Plaintiff's claims are sufficiently typical of class claims. *See Hanon*, 976 F.2d at 508.

### 4.     *Adequacy*

A class representative must also be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020). Noble House directly challenges Plaintiff's adequacy of representation and indirectly challenges the adequacy of proposed class counsel. *See* Oppo. at 22-25.

*a.     Adequacy of the Class Representative*

First, Noble House argues Plaintiff is not an adequate class representative because she has a close relationship with an attorney on the case.  Oppo. at 22-24.  Plaintiff and Robert Hyde have been friends for 30 years.  *Id.* at 8.  On August 6, 2017, Plaintiff and Mr. Hyde visited Acqua together.  *Id.*  Plaintiff retained Mr. Hyde during the visit, which gave rise to this action.  *Id.*  According to Plaintiff, Mr. Hyde was a natural choice to represent Plaintiff because he had filed similar class action lawsuits against several other San Diego restaurants that impose surcharges.  *Id.*  While Mr. Hyde is one of the attorneys on the docket, he does not seek to be appointed as class counsel.  Oppo. at 23.  Nonetheless, Noble House argues that he has been the most active attorney to date, suggesting that Plaintiff is merely trying to "circumvent the adequacy rules" by seeking to appoint Abbas Kazerounian and Jason Ibey as class counsel.  *Id.* at 24; Mtn. at 23 (seeking to appoint Mr. Kazerounian and Mr. Ibey as class counsel).  Plaintiff opposes a finding of inadequacy, but notes that Mr. Hyde is willing to withdraw as counsel if the Court finds a conflict.  Reply at 6.

"[A] close personal relationship between the named plaintiff and class counsel 'creates a *present* conflict of interest—an incentive for [the named plaintiff] to place the interests of [the counsel] above those of the class." *Bohn v. Pharmavite, LLC*, No. CV 11-10430-GHK (AGRx), 2013 WL 4517895, at * 3 (C.D. Cal. Aug. 7, 2013) (quoting *London v. Wal-Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003)); *see Drimmer v. WD-40 Co.*, 343 Fed. App'x 219, 221 (9th Cir. 2009) (finding district court did not abuse its discretion in denying class certification based on "the combination of personal relationship [and] landlord-tenant relationship" between the named plaintiff and class counsel).  The Eleventh Circuit has held that a named plaintiff could not adequately serve as a class representative because of his close personal and financial ties to class counsel. *London*, 340 F.3d at 1254-55.  There, the plaintiff and the attorney had been close friends since high school and the plaintiff had previously served as the attorney's stockbroker. *Id.*  In addition, the attorney had previously represented the plaintiff in a similar lawsuit

and encouraged him to bring the instant suit. *Id.* Additionally, the Seventh Circuit has held that the named plaintiff, whose brother was class counsel, could not adequately serve as a class representative because he may be motivated to maximize the attorney's fees awarded to class counsel. *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 95 (7th Cir. 1977). As explained by the Eleventh Circuit, this type of close relationship warranted a "stringent examination," particularly where the "attorney's fees will 'far exceed[]' the class representative's recovery," because "'courts fear that a class representative who is closely associated with the class attorney [will] allow settlement on terms less favorable to the interests of absent class members." *London*, 340 F.3d at 1254.

Here, the nature of Plaintiff's relationship with her attorney, Mr. Hyde, is not analogous to past conflicts found by the courts. Such conflicts dealt with a relationship between the class representative and class counsel (rather than one of Plaintiff's attorneys who will not be class counsel) and had an additional conflict beyond friendship – commonly a financial or familial tie. *See Drimmer*, 343 Fed. App'x at 221 (finding a conflict based on "the combination of personal relationship [and] landlord-tenant relationship" between the named plaintiff and class counsel); *London*, 340 F.3d at 1254-55 (finding a conflict based on the plaintiff's close personal relationship and financial ties to class counsel); *Susman*, 561 F.2d at 95 (finding a conflict where the plaintiff's counsel was plaintiff's brother); *see also In re Toys "R" Us – Delaware, Inc. –Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 372-75 (C.D. Cal. 2013) (noting that a close friendship alone does not render a plaintiff an inadequate class representative); *In re Google AdWords Litig.*, No. 08-CV-3369 EJD, 2012 U.S. Dist. LEXIS 1216, at * 41-43 (N.D. Cal. Jan. 5, 2012), *rev'd on other grounds sub nom. Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015) (noting that a conflict arises when there is a "long-standing personal friendship *and* financial ties"); *Vasquez-Torres v. StubHub, Inc.*, No. CV 07-1328 FMC (FFMx), 2008 U.S. Dist. LEXIS 22503, at *10-14 (C.D. Cal. Mar. 4, 2008) (finding the plaintiff an adequate representative in part because the plaintiff did not have apparent financial ties to class

counsel and was never employed by class counsel's firm).  Noble House has not identified a financial, familial, or other potentially conflicting relationship beyond friendship.  *See* Oppo.  As such, the Court finds that Plaintiff and Mr. Hyde's friendship does not have the same potential for conflicts of interest.  *See Kesler v. Ikea U.S., Inc.*, No. SACV 07-00568-JVS (RNBx), 2008 U.S. Dist. LEXIS 97555, at *9-13 (C.D. Cal. Feb. 4, 2008) (finding the plaintiff was an adequate class representative even though she had known class counsel since fourth grade, attended high school with her, saw her on a regular basis, and was a bridesmaid in her wedding).

Second, Noble House briefly argues that Plaintiff is not an adequate class representative because she has "little knowledge of the subject action."  Oppo. at 24-25. Specifically, Noble House states that Plaintiff's initial complaint is a "nearly identical copy-and-paste of the surcharge-related class action complaints" filed against other San Diego restaurants and Plaintiff did not review the FAC until a week prior to her deposition.  *Id.* at 24-25.  "'Several district courts . . . have properly denied class certification where the class representative had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibility of competing interests of the attorneys.'"  *In re Toys "R" Us – Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. at 370 (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987)).

Here, the Court is unconvinced that the similarity between Plaintiff's initial complaint and complaints in other surcharge actions and Plaintiff's failure to review the FAC until a week prior to her deposition renders her an inadequate representative.  As noted by Plaintiff, she has "assisted her counsel with the initial investigation, provided supporting documentation, authorized the initial complaint (which is not a verified complaint) after discussing the facts of the case in great detail with her attorneys, and signed an authorization for release of records for a document subpoena."  Reply at 5.  In addition, Plaintiff "appeared for her deposition and timely responded to discovery requests, and served discovery requests through her counsel."  *Id.*  Moreover, the Court

has reviewed Plaintiff's deposition, and it appears that she is knowledgeable of and involved in this case. *See* Holt Depo. While she did first review the FAC a week prior to her deposition, Plaintiff claims the amendments were minor. Reply at 5. The Court notes that the FAC did not add new causes of action and merely added relief for actual damages under the CLRA and bolstered factual allegations. Doc. No. 33 at 2-3. As such, the Court finds that Plaintiff is an adequate class representative.

### b. Adequacy of Class Counsel

Noble House challenges whether proposed class counsel "will fairly and adequately protect the interests of the class" because Plaintiff testified at her deposition that her attorneys failed to communicate a settlement offer to her. Oppo. at 24-25. Noble House indicates that this conduct violates California Rule of Professional Conduct 3-510, which questions "'counsels' integrity and trustworthiness to represent the interests of the class.'"[6] *Id.* (quoting *Victorino v. FCA US LLC*, 322 F.R.D. 403, 410 (S.D. Cal. 2017)). Plaintiff declares that she mistakenly testified at her deposition that counsel had not communicated the settlement offer to her. Doc. No. 61-1 ("Holt Reply Decl.") at ¶ 6. She clarifies that "Mr. Swigart sat down with [her] on July 19, 2018 and explained to [her] in detail what settlement relief Noble House was offering [her] if [she] did not continue to pursue legal action against Noble House." *Id.*

To be adequate, plaintiffs' counsel must be qualified, experienced, and generally able to conduct the proposed litigation. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Counsels' "unethical conduct, both before and during the litigation in question, is relevant to determining whether counsel is adequate under Rule 23." *White v. Experian Info. Solutions*, 993 F. Supp. 2d 1154, 1170 (C.D. Cal. 2014). However, "failure of counsel to communicate a settlement offer, itself, does not

---

[6] California Rule of Professional Conduct 3-510 provides that a member of the State Bar of California must promptly communicate to his or her client all amounts, terms, and conditions of any written offer of settlement made to the client. Cal. Rule of Prof. Conduct 3-510.

demonstrate inadequacy of counsel under Rule 23(a)(4)." *Victorino*, 322 F.R.D. at 409. Accordingly, even if counsel had not communicated the settlement offer to Plaintiff, this would not render class counsel inadequate. *See id.* Plaintiff's counsel have provided evidence of their experience litigating class actions to demonstrate their competency. *See* Kazerounian Decl.; Doc. No. 46-17 ("Ibey Decl."). Thus, the Court finds that Plaintiff's counsel have ample experience and expertise to adequately represent the class. *See Lerwill*, 582 F.2d at 512.

## C. Certification Under Rule 23(b)

Once the requirements of Rule 23(a) are satisfied, the proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). Here, Plaintiff seeks to certify a Rule 23(b)(2) class and a Rule 23(b)(3) class. *See* Mtn.

### 1. Rule 23(b)(2)

Plaintiff seeks to certify a Rule 23(b)(2) class consisting of "[a]ll persons who were charged a surcharge on their bill, between February 1, 2017 and present, at a restaurant in California managed by [Noble House]." Mtn. at 13, 24-29. Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Under Rule 23(b)(2), class certification "is appropriate only where the primary relief sought is declaratory or injunctive." *Ellis*, 657 F.3d at 986. Any monetary damages sought must be "merely incidental to the primary claim" for injunctive relief. *Zinswer v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (quotation marks and citation omitted).

Noble House contends certification under Rule 23(b)(2) is inappropriate because "there is nothing *per se* illegal about the use of a surcharge," such that "no injunction directing Noble House to discontinue the Surcharge altogether" could issue. Oppo. at 25. However, Plaintiff seeks an injunction requiring Noble House to either list the total cost of the menu item, which includes the cost of the surcharge, or discontinue the surcharge completely. *See* Mtn. at 25. The Court finds that the final injunctive relief sought by

Plaintiff—namely the discontinuation of Noble House's practice of listing the price of an item without including the cost of the surcharge on its menus—would apply generally to the entire class.

While not contested, the Court finds that Plaintiff has shown that injunctive relief is the primary relief sought and that she has Article III standing. *See* Oppo. First, Plaintiff only seeks incidental damages under Rule 23(b)(3) and not Rule 23(b)(2). *See* Mtn. at 29. As such, "'whether the damages claims are incidental to the injunctive relief the [plaintiffs] seek is irrelevant, because the [plaintiffs] are not seeking to recover damages for the proposed Rule 23(b)(2) class[].'" *Stathakos v. Columbia Sportswear Co.*, No. 15-cv-04543-YGR, 2017 U.S. Dist. LEXIS 72417, at *47 (N.D. Cal. May 11, 2017) (citations omitted); *see Ellis*, 657 F.3d at 987 n.10 (recognizing that the district court could certify a damages class under Rule 23(b)(3) separate from, or in addition to, an injunctive relief class under Rule 23(b)(2)). Second, the Court finds that Plaintiff has established Article III standing because she has shown that she was subjected to an allegedly unlawful surcharge practice that is traceable to Noble House, and that enjoining Noble House from using that allegedly unlawful surcharge practice would redress her injury. *See* Mtn. at 27-29; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (stating that to show Article III standing, a plaintiff must show an "injury in fact" that is "concrete and particularized" and "actual or imminent," that the injury is traceable to the defendant's challenged conduct, and that the injury is likely to be redressed by a favorable decision). Even further, Plaintiff declares that she would like to eat at Noble House restaurants in the future and it is not clear which California restaurants are managed or operated by Noble House, so she cannot simply avoid all Noble House restaurants. *See* Mtn. at 28-29; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 11 (1983) (stating that where a plaintiff seeks prospective injunctive relief, Article III requires the plaintiff to show "a sufficient likelihood that he will again be wronged again in a similar way"). As a result, the Court finds that Plaintiff's California-only Rule 23(b)(2) class may be certified under Rule 23(b)(2).

### 2. *Rule 23(b)(3)*

Plaintiff also seeks to certify an incidental damages class under Rule 23(b)(3), which consists of "[a]ll residents of California who were charged a surcharge on their bill at one or more of the following three Hilton San Diego Resort and Spa restaurants: (1) Acqua[], (2) Olive Bar, or (3) Fresco's, between February 1, 2017 and September 20, 2017, where payment was processed by credit card." Mtn. at 13, 29. Rule 23(b)(3) requires the Court to find that: (1) "questions of law or fact common to class members predominate over any questions affecting only individual class members[;]" and (2) "a class action is superior to other available methods to fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. *Predominance*

"In order to satisfy the predominance requirement, a plaintiff must demonstrate that the claims are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 528 (S.D. Cal. 2011) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3rd Cir. 2008)). In analyzing predominance, "the Court must first examine the substantive issues raised by [p]laintiffs and second inquire into the proof relevant to each issue." *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006). Additionally, in order to satisfy Rule 23(b)(3), "plaintiffs must show that 'damages are capable of measurement on a classwide basis.'" *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. ML 13-2438 PSG (PLAx), 2017 WL 2559615, at *9 (C.D. Cal. June 7, 2017) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).

California's CLRA prohibits certain unfair methods of competition in connection with consumer sales. Cal. Civ. Code § 1770(a). Relevant here, it provides that sellers can neither "[a]dvertis[e] goods or services with intent not to sell them as advertised" nor "[a]dvertis[e] that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement . . . in a size larger than any other price in that advertisement . . . ." Cal. Civ. Code § 1770(a)(9), (20).

California's UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The unlawful prong of the UCL borrows from other laws and makes them independently actionable. *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1233 (Ct. App. 2007). As such, violations of the CLRA also constitute violations of the UCL. *See Rael v. New York & Co., Inc.*, No. 16-cv-369-BAS (JMA), 2017 WL 3021019, at *5 (S.D. Cal. July 17, 2017) ("Because the Court finds Plaintiff adequately alleges a violation of . . . the CLRA, Plaintiff also adequately alleges a violation of the UCL 'unlawful' prong."). The "unfair" prong of the UCL creates a cause of action for a business practice that is unfair even if it is not proscribed by some other law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003).

"For purposes of class certification, the UCL . . . and CLRA are materially indistinguishable. Each statute allows Plaintiff[] to establish the required elements of reliance, causation, and damages by proving that Defendant[] made what a reasonable person would consider a material misrepresentation." *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014); *see also Townsend v. Monster Bev. Corp.*, 303 F. Supp. 3d 1010, 1043 (C.D. Cal. 2018). In other words, Plaintiff must show that: (1) the challenged surcharge practice is material and likely to mislead or deceive consumers on a classwide basis; and (2) there is a model to measure damages resulting from the particular injury alleged by the class. *See In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2017 WL 2559615, at *6.

As an initial matter, Noble House argues that the predominance requirement is not met because "Plaintiff asserts a materially different disclosure experience than that of the members of her proposed class." Oppo. at 27. As discussed previously, Noble House improperly relies on Noble House's disclosure practice rather than the surcharge practice itself. Additionally, Plaintiff concedes that the menu she ordered from did contain the surcharge disclosure. Reply at 3 (explaining that the menu Plaintiff ordered from "undoubtedly" contained the surcharge disclosure). In any event, the parties agree that

all class members were exposed to the same surcharge practice at each of the restaurants. *See* Mtn. at 20; *see also* Oppo. at 21 (stating that it is undisputed that the "Surcharge Disclosure practices . . . have been in effect and consistently applied since February 2017"). As discussed previously, this means that the same alleged misrepresentation was made to all class members. Therefore, the Court turns to whether the misrepresentation is material and likely to mislead or deceive, and whether there is a sufficient damages model.

i. <u>Material Misrepresentation</u>

In the context of CLRA and UCL claims, "'[a] misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 332-33 (2011) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997)). "If the misrepresentation . . . is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011), *abrogated on other grounds by Comcast*, 569 U.S. 27 (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009)); *see also Webb v. Carter's Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. 2011) ("[W]here individual issues as to materiality predominate, the record will not permit [an inference of reliance as to the entire class].").

Additionally, the misrepresentation must either be false, actually misleading, or have the capacity, likelihood, or tendency to deceive or confuse the public. *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *4 (N.D. Cal. July 15, 2016) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the

circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Ct. App. 2003).

Here, Plaintiff could prove with generalized evidence that Noble House's conduct was "likely to deceive" purchasers and that the misrepresentation was material. *See Vasquez v. Superior Court*, 4 Cal. 3d 800, 813 (1971); *see also Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017) (finding materiality not at stake under the CLRA because "the price of [the item is] an undeniably material term"). Plaintiff contends the total cost of menu items would have been material to any reasonable person contemplating the purchase of menu items and that Noble House's failure to list the total cost inclusive of the surcharge would be likely to deceive purchasers. *See* FAC ¶¶ 2-9, 16-25, 33-38. "If [Plaintiff is] successful in proving these facts, the purchases common to each class member would in turn be sufficient to give rise to the inference of common reliance on representations which were materially deficient." *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1293 (Ct. App. 2002). Accordingly, the Court is satisfied the issue of whether the surcharge practice is material and likely to deceive is "capable of proof at trial through evidence that is common to the class rather than individual to its members." *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311-12.

### ii. Damages

Plaintiff must also show that "damages are capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34. Thus, Plaintiff must show "a model purporting to serve as evidence of damages," which "measure only those damages attributable" to Plaintiff's theory of liability. *Id.* at 35. If Plaintiff does so, "damage calculations for individual class members do not defeat class certification." *Lindell v. Synthes USA*, No. 11-2053-LJO-BAM, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014).

Here, Plaintiff seeks disgorgement of the surcharge. Mtn. at 29. The 23(b)(3) class is limited to California customers who paid with a credit card. Mtn. at 34. Noble

House keeps hard copies of every credit card receipt—which contains customer information like the customer's name, signature, and type of credit card used—for three years. *Id.* at 12; *see* Doc. No. 52-1 ("Bradley Decl."), Exhibit C. These receipts specifically list the surcharge amount charged. Bradley Decl., Exhibit C. Based on the foregoing, the Court finds that damages are capable of measurement on a classwide basis and are attributable solely to Plaintiff's theories of liability. *See Comcast*, 569 U.S. at 34.

                      *b.*    *Superiority*

Finally, Rule 23(b)(3) requires the Court to find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court evaluates the following four factors to determine whether a class action is a superior method: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) "the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and" (4) "the likely difficulties in managing a class action." *Id.*

"Where damages suffered by each putative class member are not large, [the first] factor weighs in favor of certifying a class action." *Zinser*, 253 F.3d at 1190. Given the relatively low cost of the 3.5% surcharge, any restitution to class members will be small. *See* Mtn. at 32-33. Therefore, the first factor weighs in favor of certifying the class. *See Amchem Prods., Inc.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); *see also* Mtn. at 33-34.

The second and third factors also weighs in favor of certification because concentrating the litigation in a single forum is appropriate where the recovery of an individual plaintiff will be small and because the Court is not aware of any other litigation concerning Noble House's surcharge practice. *See In re NJOY Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1123 (C.D. Cal. 2015); *see also* Mtn. at 34-35.

17cv2246-MMA (BLM)

Fourth, because the UCL and CLRA are essentially indistinguishable in terms of proof, "the cases would not appear unmanageable based on the legal theories and claims at issue." *See In re NJOY Consumer Class Action Litig.*, 120 F. Supp. 3d at 1123; *see also* Mtn. at 34. As a result, the Court finds the Rule 23(b)(3) class satisfies the superiority requirement.

### CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's motion for class certification. The Court certifies Plaintiff's classes as follows:

### Rule 23(b)(2) Class

All persons who were charged a surcharge on their bill, between February 1, 2017 and the present, at a restaurant in California managed by Defendant.

### Rule 23(b)(3) Class

All residents of California who were charged a surcharge on their bill at one or more of the following three Hilton San Diego Resort and Spa restaurants: (1) Acqua California Bistro, (2) Olive Bar, or (3) Fresco's, between February 1, 2017 and September 20, 2017, where payment was processed by credit card.

The Court appoints Plaintiff Kathleen Holt as Class Representative. Additionally, the Court appoints Abbas Kazerounian and Jason A. Ibey of Kazerouni Law Group, APC as Class Counsel.

**IT IS SO ORDERED**.

Dated: October 16, 2018

Hon. Michael M. Anello
United States District Judge