**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Attorneys On Signature Page]

Attorneys for Plaintiff,
Kathleen Holt

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN HOLT, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NOBLE HOUSE HOTELS & RESORT, LTD. d/b/a NOBLE HOUSE HOTELS & RESORT, LTD. LP; and DOES 1 to 25, inclusive, <br><br> Defendants. | Case No.: 17-CV-02246-MMA-BLM <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY** <br><br> **Date:** February 4, 2019 <br> **Time:** 2:30 p.m. <br> **Place:** Courtroom 3D <br> **Judge:** Hon. Michael M. Anello <br><br> [Filed concurrently with Declaration of Abbas Kazerounian; Declaration of Jason A. Ibey; Declaration of Joshua B. Swigart; Declaration of Kevin Lemieux; Declaration of Kathleen Holt] |

*Kazerouni Law Group, APC*
Costa Mesa, California

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

I.      INTRODUCTION ...................................................................................... 1

II.     PROCEDURAL BACKGROUND ............................................................. 2

III.    LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT ... 2

IV.     FACTUAL BASIS FOR CLASS CERTIFICATION ............................... 4

V.      SUMMARY JUDGMENT MAY BE GRANTED AS TO THE
        CONSUMER LEGAL REMEDIES ACT CLAIM AS A CLASS ACTION
        IN FEDERAL COURT ............................................................................... 7

VI.     DEFENDANT HAS VIOLATED THE CONSUMER LEGAL
        REMEDIES ACT ON A CLASS BASIS AS A MATTER OF LAW ....... 7

        A.    The Restaurant Menus Did Not Account for the 3.5% Surcharge in
              the Advertised Prices of Food and Drink Items .................................. 8

        B.    The Restaurant Menu is an Advertisement under the CLRA ............. 9

        C.    The Menu Food and Beverage Items are Products Under
              the CLRA ........................................................................................... 11

        D.    The Causation and Reliance Requirements are Satisfied ................. 14

        E.    Noble House Did Not Comply with Plaintiff's Demand Pursuant to
              Cal. Civ. Code § 1782 ...................................................................... 17

VII.    DEFENDANT IS NOT ENTITLED TO AN AFFIRMATIVE
        DEFENSE ................................................................................................ 18

        A.    First Affirmative Defense ................................................................ 18

        B.    Second Affirmative Defense ............................................................ 19

        C.    Third Affirmative Defense ............................................................... 20

        D.    Fourth Affirmative Defense ............................................................. 20

Kazerouni Law Group, APC
Costa Mesa, California

**E.   Sixth Affirmative Defense** ..................................................... 21

**F.   Seventh Affirmative Defense** ................................................. 21

**G.   Tenth Affirmative Defense** .................................................... 22

**H.   Eleventh Affirmative Defense** ............................................... 22

**I.   Twelfth Affirmative Defense** .................................................. 22

**J.   Thirteenth, Fourteenth, Fifteenth Affirmative Defenses**.................. 23

**K.   Seventeenth Affirmative Defense** .......................................... 23

**L.   Eighteenth Affirmative Defense** ............................................ 23

**M.   Nineteenth Affirmative Defense** ........................................... 23

**N.   Twentieth Affirmative Defense** ............................................. 23

**VIII.   CONCLUSION**....................................................................... 24

Kazerouni Law Group, APC
Costa Mesa, California

# TABLE OF AUTHORITIES

**Cases**

*ABC Distrib. v. Living Essentials LLC,*
    No. 15-cv-02064 NC,
    2016 U.S. Dist. LEXIS 185992 (N.D. Cal. Apr. 26, 2016) ........................*passim*

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed. 2d 142 (1970) ......................................... 2

*Allen v. A.H. Robins Co., Inc.,*
    752 F.2d 1365 (9th Cir.1985) .............................................................................. 20

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986) ...................................... 3

*American Ventures, Inc. v. Post, Buckley, Schuh & Jernigan, Inc.,*
    No. C92-1817Z,
    1993 U.S. Dist. LEXIS 19559 (W.D. Wash. May 14, 1993).................................. 4

*Arring v. Golden Gate Univ.,*
    2014 Cal. Super. LEXIS 3761 (2014) ................................................................. 15

*Ballentine v. Las Vegas Metro. Police Dep't,*
    No. 2:14-cv-01584-APG-GWF,
    2017 U.S. Dist. LEXIS 133777 (D. Nev. Aug. 21, 2017) ................................... 24

*Berger v. Home Depot USA, Inc.,*
    741 F.3d 1061 (9th Cir. 2014) ............................................................................ 16

*Bickel v. City of Piedmont,*
    16 Cal.4th 1040 (1997) ....................................................................................... 19

*Bogart v. Glenmark Generics, Inc.,*
    No. 14-CV-778 LAB DHB,
    2014 U.S. Dist. LEXIS 158055 (S.D. Cal. Nov. 5, 2014) ...........................12-13

*Bradach v. Pharmavite, LLC,*
    735 F.App'x 251 (9th Cir. 2018)......................................................................... 16

Kazerouni Law Group, APC
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

*Brockey v. Moore,*
    107 Cal.App.4th 86 (2003) .................................................................. 17

*Broughton v. Cigna Healthplans,*
    21 Cal.4th 1066 (1999) ........................................................................ 7

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986)...................... 3

*City of Ukiah v. Fones,*
    64 Cal.2d 104 (1996) .......................................................................... 19

*Clark v. Capital Credit & Collection Servs.,*
    460 F.3d 1162 (9th Cir. 2006) ........................................................... 18

*Consumer Fin. Prot. Bureau v. Glob. Fin. Support, Inc.,*
    2016 U.S. Dist. LEXIS 22644 (S.D. Cal. Feb. 24, 2016) ................. 18

*Cortina v. Goya Foods, Inc.,*
    94 F. Supp. 3d 1174,
    2015 U.S. Dist. LEXIS 40159 (S.D. Cal. Mar. 19, 2015) ................ 10

*Digital Control Inc. v. McLaughlin Mfg. Co., Inc.,*
    248 F. Supp. 2d 1019 (W.D. Wash. 2003) ....................................... 18

*Ellenburg v. Brockway, Inc.,*
    763 F.2d 1091 (9th Cir. 1985) ........................................................... 21

*Engalla v. Permanente Medical Group, Inc.,*
    15 Cal.4th 951 (1997) ........................................................................ 15

*Faigman v. AT&T Mobility LLC,*
    No. C 06-04622 MHP,
    2007 U.S. Dist. LEXIS 52192 (N.D. Cal. 2007) ......................... 8, 10

*Fairbanks v. Superior Court,*
    46 Cal.4th 56 (2009) .......................................................................... 12

*In re Ferrero Litig.,*
    794 F. Supp. 2d 1107 (S.D. Cal. June 30, 2011) .............................. 12

*Fortyune v. American Multi-Cinema, Inc.*,
   364 F.3d 1075 (9th Cir. 2004) ............................................................... 2

*Gomez v. J. Jacobo Farm Labor Contr., Inc.*,
   188 F. Supp. 3d 986, 1003-1004 (E.D. Cal. 2016) ..................................... 22, 23

*Gonzales v. CarMax Auto Superstores, LLC*,
   840 F.3d 644 (9th Cir. 2016) ................................................................ 8

*Green v. Sherman*,
   No. 1:15-cv-01548-LJO-MJS (PC),
   2018 U.S. Dist. LEXIS 15964 (E.D. Cal. Jan. 31, 2018) ................................. 18

*Haskins v. Symantec Corp.*,
   No. 13-cv-01834-JST,
   2013 U.S. Dist. LEXIS 169865 (N.D. Cal. Dec. 1, 2013) ........................... 12, 14

*Hawthorne v. Umpqua Bank*,
   No. 11-cv-06700-JST,
   2013 U.S. Dist. LEXIS 153697 (N.D. Cal. Oct. 25, 2013) ............................ 11

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ................................................................ 16

*Holt v. Noble House Hotels & Resort, Ltd.*,
   No. 17cv2246-MMA (BLM),
   2018 U.S. Dist. LEXIS 10955 (S.D. Cal. Jan. 23, 2018).............................. 14

*Holt v. Noble House Hotels & Resort, Ltd.*,
   No. 17cv2246-MMA (BLM),
   2018 U.S. Dist. LEXIS 177940 (S.D. Cal. Oct. 16, 2018) ............................ 1, 5

*In re Steroid Hormone Prod. Cases*,
   181 Cal. App. 4th 145, 104 Cal. Rptr. 3d 329 (2010) ................................. 14

*Jasper v. C.R. Eng., Inc.*,
   No. CV 08-5266-GW(CWx),
   2012 U.S. Dist. LEXIS 186607 (C.D. Cal. Aug. 30, 2012)............................ 4

*Kasky v. Nike, Inc.*,
   27 Cal.4th 939, 119 Cal. Rptr. 2d 296, 45 P.3d 243 (2002) ..................... 14, 16

Kazerouni Law Group, APC
Costa Mesa, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Kazerouni Law Group, APC**
Costa Mesa, California

*Kazi v. State Farm Fire & Cas. Co.*,
  24 Cal. 4th 871 (2001) ................................................................. 13

*Keegan v. American Honda Motor Co., Inc.*,
  284 F.R.D. 504 (C.D. Cal. 2012) ................................................. 15

*Kieffer v. Spencer*,
  153 Cal. App. 3d 954 (1984) ....................................................... 19

*Lazar v. Kroncke*,
  862 F.3d 1186 (9th Cir. 2017) ..................................................... 24

*Long v. County of Los Angeles*,
  442 F.3d 1178 (9th Cir. 2006)........................................................ 3

*Marolda v. Symantec Corp.*,
  672 F.Supp.2d 992 (N.D. Cal. 2009) ............................................. 8

*Mass. Mutual Life Ins. Co. v. Superior Court*,
  97 Cal. App. 4th 1282, 119 Cal.Rptr.2d 190 (2002) .................... 15

*McCabe v. Crawford & Co.*,
  272 F.Supp.2d 736, 749 (N.D. Ill. 2003) ..................................... 22

*McCrary v. Elations Co., LLC*,
  2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) .......... 15-16

*Microsoft Corp. v. Baker*,
  137 S. Ct. 1702, 198 L. Ed. 2d 132 (2017)............................... 16-17

*Nelson v. Pearson Ford Co.*,
  186 Cal. App. 4th 983 (2010) ...................................................... 14

*Nissan Fire & Marine Ins. Co. v. Fritz Companies*,
  210 F.3d 1099 (9th Cir. 2000) ....................................................... 3

*Nyberg v. Portfolio Recovery Assocs., LLC*,
  No. 3:15-cv-01175-PK
  2016 U.S. Dist. LEXIS 71897 (D.Or. June 2, 2016) ..................... 21

*Reilly v. Inquest Technology, Inc.*,
  218 Cal.App.4th 536 (2013) ......................................................... 12

*Ries v. Ariz. Bevs. USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) ...................................................... 20

*Rodman v. Safeway Inc.*,
    125 F. Supp. 3d 922 (N.D. Cal. 2015)

*Ruffin Rd. Venture Lot IV v. Travelers Prop. Cas. Co. of Am.*,
    No. 10-CV-11-JM (WVG),
    2011 U.S. Dist. LEXIS 66095 (S.D. Cal. June 20, 2011) ................................ 3-4

*Savaglio v. Wal-Mart Stores, Inc.*,
    149 Cal.App.4th 588 (2007) ........................................................ 19

*Security Pac. Nat. Bank v. Associated Motor Sales*,
    106 Cal. App. 3d 171 (1989) ........................................................ 15

*Sims v. Peak Legal Advocates*,
    No. SACV 18-1199 JVS (KESx),
    2018 U.S. Dist. LEXIS 196245 (C.D. Cal. Nov. 16, 2018) ............. 20-21, 21, 23

*Soremekun v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007) ......................................................... 3

*Soto v. Superior Telcoms., Inc.*,
    No. 10cv135-IEG (BLM),
    2011 U.S. Dist. LEXIS 145205 (S.D. Cal. Dec. 15, 2011) ................................ 7

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009) .............................................................. 14

*TRW, Inc. v. FTC*,
    647 F.2d 942 (9th Cir. 1981) ........................................................ 19

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) ......................................................... 3

*United Fabrics Int'l, Inc. v. Urban Outfitters, Inc.*,
    No. CV 10-7895 CBM (PLAx),
    2012 U.S. Dist. LEXIS 199090, (C.D. Cal. Apr. 26, 2012) ............................... 4

*Waller v. Truck Ins. Exchange, Inc.*,
    11 Cal.4th 1 (1995) ................................................................ 19

**Kazerouni Law Group, APC**
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

*Wang v. Massey Chevrolet*,
    97 Cal. App. 4th 856, 118 Cal. Rptr. 2d 770 (2002) ......................................... 11

*Wixon v. Wyndham Resort Dev. Corp.*,
    No. C 07-02361 JSW,
    2008 U.S. Dist. LEXIS 120062 (N.D. Cal. Apr. 18, 2008) ............................... 13

**Statutes**

Cal. Code Civ. Proc. § 437(c) ........................................................................................ 7

Cal. Civ. Code § 1738.12 .............................................................................................. 12

Cal. Civ. Code § 1755 ..................................................................................................... 9

Cal. Civ. Code § 1760 ................................................................................................... 11

Cal. Civ. Code § 1761(a) .............................................................................................. 13

Cal. Civ. Code § 1770 ..................................................................................................... 1

Cal. Civ. Code § 1770(a) ............................................................................................. 7-8

Cal. Civ. Code § 1770(1) .............................................................................................. 13

Cal. Civ. Code § 1770(2) .............................................................................................. 13

Cal. Civ. Code § 1770(4) .............................................................................................. 13

Cal. Civ. Code § 1770(5) .............................................................................................. 13

Cal. Civ. Code § 1770(6) .............................................................................................. 13

Cal. Civ. Code § 1770(7) .............................................................................................. 13

Cal. Civ. Code § 1770(8) .............................................................................................. 13

Cal. Civ. Code § 1770(9) .............................................................................................. 13

Cal. Civ. Code § 1770(10) ............................................................................................ 13

Cal. Civ. Code § 1770(20) ............................................................ *passim*

Cal. Civ. Code § 1770(21) ............................................................ 13

Cal. Civ. Code § 1770(25) ............................................................ 13

Cal. Civ. Code § 1770(26) ............................................................ 13

Cal. Civ. Code § 1770(27) ............................................................ 13

Cal. Civ. Code § 1780 ............................................................ 8

Cal. Civ. Code § 1781(a) ............................................................ 7

Cal. Civ. Code § 1781(c) ............................................................ 7

Cal. Civ. Code § 1782 ............................................................ 6, 17

Cal. Civ. Code § 3294 ............................................................ 23

**Rules**

Fed. R. Civ. P., Rule 5.1 ............................................................ 6, 24

Fed. R. Civ. P. 12(b)(6) ............................................................ 2, 18

Fed. R. Civ. P. 23 ............................................................ *passim*

Fed. R. Civ. P. 23(b)(2) ............................................................ 22, 23

Fed. R. Civ. P. 23(b)(3) ............................................................ 14, 22, 23

Fed. R. Civ. P. 56(a) ............................................................ 1, 2

Fed. R. Civ. P. 56(c) ............................................................ 2

47 C.F.R. § 64.1200(f)(1) ............................................................ 9

**Kazerouni Law Group, APC**
Costa Mesa, California

**Other**

Dayna B. Royal,
*The Skinny on the Federal Menu-Labeling Law & Why it Should Survive a First Amendment Challenge,*
10 FIRST AMEND. L. REV. 140, 150-151 (Fall 2011)..........................................10

Merriam-Webster.com, 2018.
https://www.merriam-webster.com/dictionary/advertise
(December 4, 2018)......................................................................... 10, 11

The Law Dictionary, featuring Black's Law Dictionary free online legal dictionary, 2nd ed., https://thelawdictionary.org/advertisement
(November 30, 2018) .........................................................................10

**Kazerouni Law Group, APC**
Costa Mesa, California

## I.   INTRODUCTION

This Court recently granted class certification status to this action brought by plaintiff Kathleen Holt ("Ms. Holt" or "Plaintiff") against defendant Noble House Hotels & Resort, LTD. d/b/a Noble House Hotels & Resort, LTD. LP ("Noble House" or "Defendant"), based on causes of action under California's Consumer Legal Remedies Act California Civil Code § 1770(20), and the California Business and Professions Code § 17200, *et seq*. *Holt v. Noble House Hotels & Resort, Ltd.*, No. 17cv2246-MMA (BLM), 2018 U.S. Dist. LEXIS 177940, at *33 (S.D. Cal. Oct. 16, 2018). The Court certified two classes, an injunctive relief class and a restitution class (together the "Class" or "Class Members").

Pursuant to Fed. R. Civ. P. 56(a), Plaintiff now seeks partial summary judgment as to liability only, on a class basis, for Noble House's violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1770, *et seq*. (the "CLRA"), specifically, a *per se* violation of § 1770(a)(20) for Noble House's failure to advertise the total price of the food and beverage items inclusive of the 3.5% surcharge.

As demonstrated in this Motion for Partial Summary Judgment ("Motion"), there is no dispute regarding the material facts that make up the CLRA claims of Plaintiff and the Class Members because Noble House admits to engaging in the same surcharge practice at the hotels it manages in California. Furthermore, the issue of whether such surcharge practice is a *per se* violation of the CLRA is a question of law for the Court to decide, which question should be resolved in favor of Plaintiff and that Class Members. Defendant is also not entitled to any of its asserted affirmative defenses, and the Court has ordered some of the affirmative defenses dismissed with prejudice.

The Court need not presently know the identity of the Class Members or determine the amount of damages to be awarded to the Class Members in order to

Kazerouni Law Group, APC
Costa Mesa, California

find Defendant's surcharge practice violates the CLRA as a matter of law, and consequently, that Defendant is liable for its conduct in violation of California law.

Therefore, Plaintiff, on behalf of herself and the Class Members, respectfully requests that the Court grant the Motion as to liability of Defendant to Plaintiff and the Class for violations of § 1770(a)(20) of the CLRA.

Pursuant to Chamber Rule IV., Plaintiff submits herewith a separate statement of undisputed material facts (the "SSUMF").

## II.    PROCEDURAL BACKGROUND

This action was removed from state court on November 3, 2017 (Dkt. No. 1), having been filed on September 20, 2017 (*see id*). On January 23, 2018, the Court denied a motion by Plaintiff to remand to state court and also denied a motion to dismiss by Defendant pursuant to Fed. R. Civ. P. 12(b)(6). [Dkt. No. 14.] After granting leave to amend, Plaintiff filed a First Amended Complaint on April 30, 2018. [Dkt. No. 35.] Defendant filed an Answer on May 14, 2018. [Dkt. No. 37.] The Court granted class certification on October 16, 2018. [Dkt. No. 63.] The deadline to file dispositive motions is February 22, 2019. [Dkt. No. 22, ¶ 10.] The Court has dismissed with prejudice the Defendant's fifth, eighth, ninth, sixteenth and twenty-first affirmative defenses. [Dkt. No. 66.]

## III.    LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

Under federal law, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L. Ed. 2d 142 (1970); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004).

Kazerouni Law Group, APC
Costa Mesa, California

The party seeking summary judgment bears the burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If a moving party fails to carry its burden of production, then "the nonmoving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986); *Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn.*, 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

On a summary judgment motion, the Court does not make credibility determinations or weigh conflicting evidence. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255 (1986). The evidence presented by the parties must be admissible, and conclusory, speculative testimony is insufficient to raise genuine issues of material fact and defeat summary judgment. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d at 984 (9th Cir. 2007).

A motion for partial summary judgment may be granted as to liability only, with damages to be determined at a later hearing. *See Ruffin Rd. Venture Lot IV v. Travelers Prop. Cas. Co. of Am.*, No. 10-CV-11-JM (WVG), 2011 U.S. Dist. LEXIS 66095, at *25-26 (S.D. Cal. June 20, 2011) ("Therefore, because a reasonable reading of the Policy does not exclude coverage for the damage to Ruffin Road's HVAC system, the court grants partial summary judgment in favor of Ruffin

Kazerouni Law Group, APC
Costa Mesa, California

Road on the issue of liability only for this claim. Because the parties do not agree on the precise nature of the repairs that will be required, the question of damages for this breach of contract are reserved for trial."); *American Ventures, Inc. v. Post, Buckley, Schuh & Jernigan, Inc.*, No. C92-1817Z, 1993 U.S. Dist. LEXIS 19559, at *24 (W.D. Wash. May 14, 1993) (Granting the "plaintiff's motion for partial summary judgment as to liability" in an action under the Lanham Act and other statutes); *United Fabrics Int'l, Inc. v. Urban Outfitters, Inc.*, No. CV 10-7895 CBM (PLAx), 2012 U.S. Dist. LEXIS 199090, at *17 (C.D. Cal. Apr. 26, 2012) (Granting summary adjudication as to "the issue of liability" and ruling that "[t]he only issues that remain to be tried are that of willfulness and damages."); *Jasper v. C.R. Eng., Inc.*, No. CV 08-5266-GW(CWx), 2012 U.S. Dist. LEXIS 186607, at *53 (C.D. Cal. Aug. 30, 2012) ("The Court would GRANT Plaintiffs' motion for summary judgment as to the reserve account class claim, and would DENY Plaintiffs' motion for summary judgment as to the Driver Legal Plan class claim.").

## IV.   FACTUAL BASIS FOR CLASS CERTIFICATION

As the Court is aware from the class certification briefing, Noble House is a restaurant management company operating restaurants in the State of California, including Acqua California Bistro, the Olive Lounge (a/k/a Olive Bar), Fresco's, and the Aroma coffee shop. [SSUMF No. 1.]

Beginning in February of 2017, Noble House charged a 3.5% surcharge on every food and drink item within four Hilton hotel restaurants in San Diego. [SSUMF No. 2.] The three Hilton hotel restaurants managed by Noble House in California where a menu is used include Acqua California Bistro, the Olive Lounge (a/k/a Olive Bar), and Fresco's. [SSUMF No. 3.] Noble House does not use a menu at the Aroma coffee shop. [SSUMF No. 4.]

Instead of advertising the total cost of menu items inclusive of the surcharge, Noble House placed a notice at the bottom of its menus. [SSUMF No. 5.] The menus at the three restaurants each stated at the bottom, "A 3.5% surcharge will be

Kazerouni Law Group, APC
Costa Mesa, California

added to all guest checks to help cover increasing labor costs and in our support of the recent increases in minimum wage and benefits for our dedicated team members." [SSUMF No. 6.] The same disclosure is also included on the bottom of the bills provided after the meal is completed. [SSUMF No. 7.]

The surcharge disclosure is the same size font as the advertised price of the menu items. [SSUMF No. 8.]

Before February of 2017, Noble House did not have a practice to charge a surcharge for food or drink items. [SSUMF No. 9.] Noble House began charging a 3.5% surcharge following a law increasing the minimum wage. [SSUMF Nos. 25.] *See* SB3, amending Labor Code § 1182.12 (the minimum hourly wage increased for 2017 to $10.50, and is scheduled to rise to $15 an hour over a period of time).

Importantly, the Court has previously acknowledged that "the parties agree that Noble House engages in the same surcharge practice for all restaurants Noble House manages in California for Hilton hotels." *Holt*, 2018 U.S. Dist. LEXIS 177940, at *10, citing Dkt. Nos. 20 and 21. [SSUMF No. 10.]

Credit card receipts for restaurant purchases include information such as the consumer's name and signature, on each and every receipt that is printed, as well as what kind of credit card it is, such as Visa or Mastercard. [SSUMF No. 11.] *See also*, *Holt*, 2018 U.S. Dist. LEXIS 177940, at *30 ("Noble House keeps hard copies of every credit card receipt—which contains customer information like the customer's name, signature, and type of credit card used—for three years.")

Ms. Holt currently is and was California resident throughout the year 2017 (SSUMF No. 12), and was a customer at the Acqua restaurant and paid (by credit card) more for meal due to Defendant's surcharge practice (SSUMF Nos. 13-14).

Nobel House has grossed over $200,000 based on its surcharge practice at the restaurants at the Hilton hotel in San Diego through June 4, 2018 (SSUMF No. 16), affecting hundreds of customers (SSUMF No. 17). And Noble House continues to

charge a 3.5% surcharge at Acqua California Bistro, the Olive Lounge, and Fresco's (SSUMF Nos. 18).

Kathleen Holt filed the lawsuit against Noble House in state court on September 20, 2017 (SSUMF Nos. 19), forty-five days after dining and paying for her meal at the Acqua California Bistro on August 6, 2017 (SSUMF Nos. 13-15).

Plaintiff, through counsel, served on Noble House a demand letter pursuant to Cal. Civ. Code § 1782, dated August 23, 2017 (the "CLRA Demand.") [SSUMF Nos. 20.] Within thirty days of receiving the CLRA Demand, Noble House did not cease charging a 3.5% surcharge or change its menus to advertise the menu item prices inclusive of the 3.5% surcharge. [SSUMF Nos. 21.] Counsel for Defendant served a letter dated September 22, 2017, acknowledging receipt of the CLRA Demand from Plaintiff. [SSUMF Nos. 22.]

Kathleen Holt has not knowingly and voluntarily waived her claims against Noble House under Cal. Civ. Code § 1770(a)(20). [SSUMF Nos. 23.] Noble House has produced no evidence that the Class Members (for both the injunctive relief class and restitution class) knowingly and voluntarily waived their claims against Noble House under Cal. Civ. Code § 1770(a)(20). [SSUMF Nos. 24.]

Noble House has not served a notice of constitutional challenge pursuant to Fed. R. Civ. P., Rule 5.1. [SSUMF Nos. 26.] And the Twentieth Affirmative Defense asserted by Noble House does not specify the specific constitutional provision that allegedly protects Noble House's surcharge practice. [SSUMF Nos. 27.]

The restaurants managed by Noble House in California sell food and beverage items commercially to the public. [SSUMF Nos. 28.] Noble House is not required by law to charge the 3.5% surcharge. [SSUMF Nos. 29.]

///

///

///

///

Kazerouni Law Group, APC
Costa Mesa, California

## V. SUMMARY JUDGMENT MAY BE GRANTED AS TO THE CONSUMER LEGAL REMEDIES ACT CLAIM AS A CLASS ACTION IN FEDERAL COURT

The Court certified this action as a class action pursuant to Fed. R. Civ. P. 23, not under the separate procedure for a class action under the CLRA's provision in Cal. Civ. Code § 1781(a).

California Civil Code § 1781(c) reads in part, "A motion based upon Section 437c of the Code of Civil Procedure shall not be granted in any action commenced as a class action pursuant to subdivision (a)."[1] Moreover, California Civil Code § 1781(a) reads, "Any consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780."

Simply stated, the procedural requirements under California Civil Code § 1781 (including Cal. Civ. Code § 1781(c)) do not apply in this case because the action is in federal court based on diversity jurisdiction (Dkt. No. 35). *See Soto v. Superior Telcoms., Inc.*, No. 10cv135-IEG (BLM), 2011 U.S. Dist. LEXIS 145205, at *22-23 (S.D. Cal. Dec. 15, 2011). The Court may therefore grant summary judgment as to liability only in this action for the CLRA claim.

## VI. DEFENDANT HAS VIOLATED THE CONSUMER LEGAL REMEDIES ACT ON A CLASS BASIS AS A MATTER OF LAW

"The CLRA was enacted in an attempt to alleviate social and economic problems stemming from deceptive business practices, which were identified in the 1969 Report of the National Advisory Commission on Civil Disorders." *Broughton v. Cigna Healthplans*, 21 Cal.4th 1066, 1077 (1999). It proscribes "unfair methods of competition or deceptive acts or practices" in the sale of goods or services to a

---

[1] Cal. Code Civ. Proc. § 437(c) concerns the requirements for a motion for summary judgment in California State Court.

Kazerouni Law Group, APC
Costa Mesa, California

consumer. Cal. Civ. Code § 1770(a). Claims under the CLRA require a showing of causation, reliance and damages. *Faigman v. AT&T Mobility LLC*, 2007 U.S. Dist. LEXIS 52192, at *821 (N.D. Cal. 2007).

The CLRA allows suits by a "consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by [the CLRA]." Cal. Civ. Code § 1780. However, "a plaintiff need not plead fraud." *Marolda v. Symantec Corp.*, 672 F.Supp.2d 992, 1003 (N.D. Cal. 2009) (citation omitted). Further, the Ninth Circuit Court of Appeals has granted summary judgment in favor of a plaintiff for claims under the CLRA. *See e.g.*, *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 655 (9th Cir. 2016) (granting summary judgment to plaintiff on CLRA and UCL claims).

### A.   The Restaurant Menus Did Not Account for the 3.5% Surcharge in the Advertised Prices of Food and Drink Items

Noble House's surcharge practice of charging a 3.5% surcharge on food and drink items without accounting for the surcharge in the advertised price of the items in the restaurant menus is *per se* unlawful under the CLRA, in that it violates Cal. Civ. Code § 1770(a)(20). Under that provision of the CLRA, it is unlawful to:

> Advertis[e] that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product.

In its menus, Noble House includes a disclosure at the bottom that it will charge a 3.5% surcharge, but that is not compliant with the CLRA because the advertised menu items do not indicate the total price of the items when the 3.5% surcharge is taken into account. In other words, the total price is <u>not</u> set forth in the

advertised menu prices. *See* Cal. Civ. Code § 1770(a)(20). Instead, the consumer is only informed of the dollar amount of the surcharge when she receives her bill. [SSUMF Nos. 2, 3, 5, 10 and 15].[2]

**B.    The Restaurant Menu is an Advertisement under the CLRA**

The CLRA does not define "advertisement," but the language of various sections of the statute clearly indicate a broad construction.

The relevant subsection of the statute expressly contemplates advertisements such as shelf tags, displays and media advertising. Cal. Civ. Code § 1770(a)(20). While there is a limited exception from liability in that subsection that is not applicable here (concerning in-store advertising by businesses open only to member or cooperative organizations organized pursuant to Division 3 of the Corporations Code), the statutory sub-section notably refers to "in-store advertising" (Cal. Civ. Code § 1770(a)(20)). Moreover, § 1755 of the CLRA refers to media types such as "newspapers, magazines, broadcast stations, billboards and transit ads" in referring to the standard to be applied to owners or employees of an advertising medium. Cal. Civ. Code § 1755. The restaurant menus are akin to a shelf tag or display indicating the pricing. The menus here indicate to potential customers how much they will be charged for a food or drink item, but not the price inclusive of a 3.5% surcharge. [SSUMF No. 3.]

For other consumer protection statutes, the term "advertisement" has been defined broadly, such as for the Telephone Consumer Protection Act, defining such word to mean "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). Essentially,

Kazerouni Law Group, APC
Costa Mesa, California

---

[2] Noble House intentionally chose not to expressly state the price of the menu items inclusive of the 3.5% surcharge. [SSUMF No. 2, 3, 5, 6, 7, 9 and 25.] There is no law requiring Noble House to charge the 3.5% surcharge. [SSUMF No. 29.]

advertising[3] is a means of communication with someone about a product or service, including restaurant menus. *See e.g.*, Dayna B. Royal, *The Skinny on the Federal Menu-Labeling Law & Why it Should Survive a First Amendment Challenge*, 10 FIRST AMEND. L. REV. 140, 150-151 (Fall 2011) ("Menus and menu boards are vehicles through which restaurants propose a commercial transaction - the purchase of food. Such speech offers food products for specific prices. To assist consumers in deciding whether to accept such offers, and which offers to accept, menus and menu boards contain relevant information about the products offered for sale, including price and basic ingredients.")

According to Merriam-Webster online dictionary, the word "advertise" (a verb) means: "to make something known," "to make publicly and generally known," "to announce publicly …" or "to call public attention to …" ("advertise." Merriam-Webster.com, 2018. https://www.merriam-webster.com/dictionary/advertise (December 4, 2018)).  Additionally, according to Black's Law Dictionary, the word "advertisement" means "Notice given in a manner designed to attract public attention," and gives as an example "information communicated to the public, or to an individual concerned, by means of handbills or the newspaper." ["Advertisement." The Law Dictionary, featuring Black's Law Dictionary free online legal dictionary, 2nd ed. https://thelawdictionary.org/advertisement (November 30, 2018)].

The decision in *Faigman* is instructive because there the court denied a motion to dismiss where the plaintiff alleged reliance on misleading in-store notices

---

[3] *See generally*, *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 2015 U.S. Dist. EXIS 40159 (S.D. Cal. Mar. 19, 2015) (The CLRA was not preempted by federal law because consumer protection laws, *including laws regulating the proper marketing of food* … were within the states' historic police powers and therefore were subject to a presumption against preemption).

Kazerouni Law Group, APC
Costa Mesa, California

concerning rebates which the court referred to as advertisements. *Faigman v. AT&T Mobility LLC*, 2007 U.S. Dist. LEXIS 52192, at *5 (N.D. Cal. July 17, 2007).

Importantly, the CLRA is to be interpreted broadly to protect consumers because it is a remedial statute. Cal. Civ. Code § 1760 ("This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."); *see also*, *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2013 U.S. Dist. LEXIS 153697, at *32 (N.D. Cal. Oct. 25, 2013); *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 869 (2002).

Therefore, the restaurant menus easily constitute advertisements because they are designed to inform the potential consumer of the availability of products that may be purchased and the price of those food and beverage items.

**C.     The Menu Food and Beverage Items are Products Under the CLRA**

The CLRA does not define the word "product," however, the menu items (food and drinks) sold by the restaurant are products under this statute.

According to Merriam-Webster online dictionary, the word "product" (a noun) means: "something produced" or "something (such as a service) that is marketed or sold as a commodity" ["product." Merriam-Webster.com, 2018. https://www.merriam-webster.com/dictionary/product (December 4, 2018)). To produce (a verb) in turn means "to cause to have existence or to happen," "to give being, form or shape" or "to compose, create, or bring out by intellectual or physical effort…" ("produced." Merriam-Webster.com, 2018. https://www.merriam-webster.com/dictionary/product (December 4, 2018)].

The chicken quesadilla, for example, purchased by Ms. Holt, is produced by the Agua restaurant through employment of skilled laborers, in its finished state, in a form desired by Ms. Holt (a consumer) who ordered it from the restaurant menu. [SSUMF Nos. 13-15.]   While the chicken quesadilla may not have been mass-produced for purposes of packing and then shipping to consumers (such as for

retail), it was prepared by the restaurant to be consumed (SSUMF Nos. 13, 15 and 28), and is created to be sold commercially by the restaurant to its customers (SSUMF Nos. 1-3, 10, 13-16), whether the consumer dines in or take the purchased meal to go.

In the case of *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. June 30, 2011), Judge Marilyn L. Huff denied a Rule 12(b)(6) motion to dismiss a CLRA claim involving alleged misrepresentations concerning a food spread (i.e., Nutella), showing that the CLRA applies to food products. Although the Nutella product was apparently prepared for retail sale, there is no principled reason to limit the application of the CLRA to items intended for retail sale, to the exclusion of restaurants and other establishments who prepare and sale food products (such as baked goods). *See e.g.*, *Reilly v. Inquest Technology, Inc.*, 218 Cal.App.4th 536, 550 (2013) (declining to read words into the Independent Wholesale Sales Representatives Contractual Relations Act of 1990 to limit application of "product" to only a finished retail product or consumer good, where that statute referred only to "a product tangible or intangible," Cal. Civ. Code § 1738.12).[4]

On occasion, defendants in CLRA cases have attempt to limit the application of the statute to only certain products, as in *Bogart*. However, the *Bogart* Court held that "pharmaceutical products" were covered by the CLRA, reasoning that "[t]he CLRA was created to protect consumers from unfair and deceptive business practices," and "[i]n liberally construing the CLRA, as California case law requires, the Court finds that birth control pills are tangible chattels bought primarily for personal use. As such, birth control pills are goods which fall within the CLRA's

---

[4] *See Fairbanks v. Superior Court*, 46 Cal.4th 56, 65 (2009) (noting "legislative intent in limiting the definition of 'goods' to include only 'tangible chattels'"). "The 'tangible chattels' language in the CLRA's definitions dates from 1970." *Haskins v. Symantec Corp.*, No. 13-cv-01834-JST, 2013 U.S. Dist. LEXIS 169865, at *28 (N.D. Cal. Dec. 1, 2013), citing Stats.1970, Ch. 1550, § 1.

Kazerouni Law Group, APC
Costa Mesa, California

protections." *Bogart v. Glenmark Generics, Inc.*, No. 14-CV-778 LAB DHB, 2014 U.S. Dist. LEXIS 158055, at *7-8 (S.D. Cal. Nov. 5, 2014).

In ruling that pharmaceutical products were covered by the CLRA under Sections 1770(4) and (7), the *Bogart* Court looked to the defined term "goods"[5] (Cal. Civ. Code § 1761(a)).[6]  Section 1770(20) refers to "products," not "goods," however, if this Court were to look to the defined term "goods" in ruling on whether the restaurant food and drink items are "products" under the CLRA, the food items such as the chicken quesadilla were purchased by Ms. Holt primarily for personal use while dining at the Acqua restaurant where Ms. Holt consumed the food (SSUMD Nos. 13-15), and are therefore goods. As explained above, the CLRA is to be interpreted broadly to protect consumers, which further supports a finding that the food and drink items purchased from the restaurant by Ms. Holt and the Class Members are products under the CLRA.

The food and beverages at the restaurants managed by Noble House are surely tangible chattels[7] because they can be touched, smelled and tasted. *See e.g.*, *Wixon v. Wyndham Resort Dev. Corp.*, No. C 07-02361 JSW, 2008 U.S. Dist. LEXIS 120062, at *14 (N.D. Cal. Apr. 18, 2008) (finding that timeshare points are neither goods nor services because they could not be touched, seen, or smelled).

---

[5] The CLRA frequently refers to "good" or "goods". *See e.g.*, Cal. Civ. Code § 1770(a)(1), (2), (4), (5), (6), (7), (8), (9), (10), (21).  The CLRA also refers to the undefined term "product" in four places. Cal. Civ. Code § 1770(a)(20), (25), (26) and (27).

[6] The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property." Cal. Civ. Code § 1761(a).

[7] In general, "'tangible property' refers to things that can be touched, seen, and smelled." *Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 880 (2001).

Kazerouni Law Group, APC
Costa Mesa, California

Moreover, the *Haskins* Court counseled against a limited definition of tangible chattels. *Haskins v. Symantec Corp.*, 2013 U.S. Dist. LEXIS 169865, at *30 (N.D. Cal. Dec. 1, 2013) ("But by slicing things that thinly, many of even the most tangible of commodities could be characterized as delivery mechanisms for the transmission of intangible things. No one would seriously dispute that a book is a 'tangible chattel,' despite the fact that the physical object itself is merely a delivery mechanism for the transmission of information.")

Lastly, in a prior ruling in this action, this Court has noted that "Noble House further asserts that the surcharge does not violate the CLRA because it 'is not an addition to the price of the 'product' (*i.e.*, the food or beverage), as the statute prohibits; rather it is a separate charge for service.'" *Holt v. Noble House Hotels & Resort, Ltd.*, No. 17cv2246-MMA (BLM), 2018 U.S. Dist. LEXIS 10955, at *12 (S.D. Cal. Jan. 23, 2018). Thus, even Noble House has referred to the food and beverages as "product[s]". Dkt. No. 6-1, 7:20-23.

Consequently, the purchased food and beverage items ordered from the restaurant menus constitute products for purposes of § 1770(20) of the CLRA.

### D.    The Causation and Reliance Requirements are Satisfied

The CLRA prohibits advertising that is false as well as advertising that is true but "is either actually misleading … or has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002).

In the case of Ms. Holt, a surcharge of $1.38 was added to her bill after she ordered a chicken quesadilla from the menu (for $16) at the Acqua restaurant, having relied on the advertised menu pricing (SSUMF Nos. 12-15). Ms. Holt, as the named Plaintiff and Class Representative, therefore actually relied on the pricing in the menu for her order. *See Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1022 (2010) ("Under the CLRA, plaintiffs must show actual reliance on the misrepresentation and harm.") As it concerns the dollar amount of the surcharge imposed on the members of the restitution class (under Fed. R. Civ. P. 23(b)(3)), that

information can be determined at a future date from the credit card receipts (SSUMF No. 11) and other records of Noble House such as their profit and loss statement (SSUMF No. 16). Noble House has admitted that it has increased its revenue by over $200,000 from the surcharge practice through June 4, 2018 (SSUMF No. 16).

In practice, the CLRA does not carry a reliance requirement on a class basis because the materiality of the representations at issue is presumed to give rise to an inference of reliance. *See Keegan v. American Honda Motor Co., Inc*., 284 F.R.D. 504, 541 (C.D. Cal. 2012), citing *In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009) (actual reliance is presumed, or at least inferred, when the omission is material); *Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (2002) (discussing how the existence of a material representation would give rise to an inference of reliance on a class-wide basis); *Arring v. Golden Gate Univ*., 2014 Cal. Super. LEXIS 3761, at *19 (2014) (discussing class requirements under CLRA, which similarly do not require a proof of reliance of every consumer). *See also*, *Security Pac. Nat. Bank v. Associated Motor Sales*, 106 Cal. App. 3d 171, 179-180 (1989) (presumption which shifts the burden of proving evidence entitles plaintiff to summary judgment if defendant fails to produce evidence to rebut the presumption).

Here, reliance as to the Class Member is presumed in this CLRA action because Defendant's failure to state the true (total) price of the menu items is material. Materiality is determined by an objective test: "a misrepresentation is deemed material if 'a reasonable man' would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157, 104 Cal. Rptr. 3d 329 (2010) (quoting *Engalla v. Permanente Medical Group, Inc*., 15 Cal.4th 951, 977 (1997) (internal quotation marks omitted)); *see also*, *McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443, at *14 (C.D. Cal. Jan. 13, 2014) (court found in UCL/CLRA case that "the determination of materiality, and thus reliance, is

Kazerouni Law Group, APC
Costa Mesa, California

determined using objective criteria that apply to the entire class and do not require individualized determination").

In *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), the Ninth Circuit of Appeals, in stating that "price advertisements matter," explained that "[a]pplying *Kwikset* in a straightforward manner, we hold that when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury." The Court then went on state that "[t]he district court's conclusion that Hinojos failed to establish standing under the CLRA because he did not suffer 'any damage' is erroneous for the same reasons that its determinations regarding UCL and FAL standing were wrong." *Id*. at 1108.

Moreover, "[u]nder California law, class members in CLRA and UCL actions are not required to prove their individual reliance on the allegedly misleading statements. Instead, the standard in actions under both the CLRA and UCL is whether 'members of the public are likely to be deceived.'" *Bradach v. Pharmavite, LLC*, 735 F.App'x 251, 254 (9th Cir. 2018); quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th at 951 (2002), *as modified* (May 22, 2002).

In the present action, reasonable members of the public were likely deceived, in that before February of 2017, Noble House did not have a practice to charge a surcharge for food or drink items (SSUMF No. 9). Furthermore, reasonable members of the public would have attached importance to the advertised price of the menu items at the restaurants managed by Noble House, which menus here admittedly did not account for the increase that would be applied from a 3.5% surcharge (SSUMF Nos. 3-10).

The actual price of the menus items ordered is unquestionably material. *See Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 198 L. Ed. 2d 132

Kazerouni Law Group, APC
Costa Mesa, California

(2017) (finding materiality not at stake under the CLRA because "the price of [the item is] an undeniably material term"); *see also*, *Brockey v. Moore*, 107 Cal.App.4th 86, 100 (2003) (affirming that "the primary evidence in a false advertising case is the advertising itself"). Noble House did not want to increase its advertised prices for fear of negative customer reactions, which is why Noble House decided to provide a disclosure at the bottom of the menus[8] rather than clearly and expressly stating the higher pricing for the food and drink items (SSUMF Nos. 3-10).

Lastly, notwithstanding the disclosure at the bottom of the restaurant menus, the surcharge practice of Noble House is a *per se* violation of the CLRA because the total price of the menu items was not actually advertised as required. *See* Cal. Civ. Code § 1770(a)(20), requiring "the total price is set forth in the advertisement" (emphasis added). Essentially, the California legislature considered the failure to state the total price in the advertising in such circumstances to be deceptive or confusing, because as the statute is written, a mere disclosure under this statute is insufficient without the consumer also being informed of the total price in a larger size font.

Therefore, the reliance (materiality) and causation requirements under the CLRA are satisfied.

**E. Noble House Did Not Comply with Plaintiff's Demand Pursuant to Cal. Civ. Code § 1782**

Noble House did not comply with Plaintiff's notice under Cal. Civ. Code § 1782, dated August 23, 2017, as Noble House did not discontinue its illegal surcharge practice or correct it menus. [SSUMF Nos. 20-22.] *See,* Answer to FAC, ¶ 91 (Dkt. No. 37) (Noble House has admitting the CLRA notice was served).

---

[8] Noble House has admitted that the surcharge disclosure was the same font size and as the menu pricing. Dkt. No. 50, 2:17-23 (Def.'s Opp. to Mtn for Class Cert). Under the CLRA, the advertised total price is supposed to be in larger print than other representations concerning the pricing information. *See* Cal. Civ. Code § 1770(a)(20), stating, "in a size larger than any other price in that advertisement…"

Kazerouni Law Group, APC
Costa Mesa, California

**VII.   DEFENDANT IS NOT ENTITLED TO AN AFFIRMATIVE DEFENSE**

Noble House has asserted twenty-one affirmative defenses in its Answer to the First Amended Complaint, none of which is applicable here. Dkt. No. 37. Also, after Noble House did not oppose Plaintiff's Motion for Judgment on the Pleadings Re: Defendant's Affirmative Defenses (Dkt. No. 65), the Court ruled that Defendant's fifth, eighth, ninth, sixteenth and twenty-first affirmative defenses be dismissed with prejudice (Dkt. No. 66). Therefore, the Fifth, Eighth, Ninth, Sixteenth and Twenty-First Affirmative defense have been dismissed with prejudice.

Importantly, Noble House bears the burden of proof for its asserted affirmative defense. *See e.g.*, *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006) (noting that a defendant bears the burden of proof at summary judgment with respect to affirmative defenses); *c.f. Digital Control Inc. v. McLaughlin Mfg. Co., Inc.*, 248 F. Supp. 2d 1019, 1023-24 (W.D. Wash. 2003) ("Since the affirmative defense of obviousness is Defendant's burden, by failing to challenge the issue on summary judgment, Defendant fails to raise a genuine issue of material fact."); *Green v. Sherman*, No. 1:15-cv-01548-LJO-MJS (PC), 2018 U.S. Dist. LEXIS 15964, at *4 (E.D. Cal. Jan. 31, 2018) ("Thus, it is the Defendant's burden to prove that Plaintiff has not exhausted his administrative remedies.").

**A.     First Affirmative Defense**

The Court has already denied Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on January 23, 2018. Dkt. No. 14. Noble House has violated the CLRA as a matter of law, as explained above. But more importantly, failure to state a cause of action is not a proper affirmative defense. *See Consumer Fin. Prot. Bureau v. Glob. Fin. Support, Inc.*, 2016 U.S. Dist. LEXIS 22644, at *14-15 (S.D. Cal. Feb. 24, 2016) (striking defendant's affirmative defense which alleged that plaintiff's complaint failed to state a claim upon which relief can be granted because

Kazerouni Law Group, APC
Costa Mesa, California

"failure to state a claim under Rule 12(b)(6) is properly brought on a motion to dismiss and not as an affirmative defense"); *ABC Distrib. v. Living Essentials LLC*, No. 15-cv-02064 NC, 2016 U.S. Dist. LEXIS 185992, at *5 (N.D. Cal. Apr. 26, 2016) (holding that "failure to state a claim" "is not an affirmative defense").

## B.    Second Affirmative Defense

Defendant asserted, without factual support, a defense of waiver and estoppel. With regard to the waiver defense, "'waiver' means the intentional relinquishment or abandonment of a known right." *Bickel v. City of Piedmont*, 16 Cal.4th 1040, 1048 (1997); *see also*, *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 31 (1995). Waiver requires an existing right, the waiving party's knowledge of that right, and the party's "actual intention to relinquish the right." (Bickel, at p. 1053.) "'Waiver always rests upon intent.'" *City of Ukiah v. Fones*, 64 Cal.2d 104, 107 (1996). The intention may be express, based on the waiving party's words, or implied, based on conduct that is "'so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.'" *Savaglio v. Wal-Mart Stores, Inc.*, 149 Cal.App.4th 588, 598 (2007); *Waller*, at *33–34.

Estoppel requires the following factors: 1) plaintiff knew the facts; 2) defendant did not know the facts; 3) plaintiff intended that the defendant act upon her conduct or defendant had a right to believe it was so intended; and 4) defendant relied upon the conduct to its injury. *TRW, Inc. v. FTC*, 647 F.2d 942, 950-51 (9th Cir. 1981); *Kieffer v. Spencer*, 153 Cal. App. 3d 954, 963 (1984).

Defendant has produced no evidence that Plaintiff or the Class Members knowingly and voluntarily waived their CLRA claims against Defendant (SSUMF No. 24) and Ms. Holt did not waive her claims (SSUMF No. 23). *See e.g.*, *Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 941 (N.D. Cal. 2015) (finding no evidence of waiver in the summary judgment record).

The estoppel defense[9] simply could not apply because Noble House was clearly aware of its intentional surcharge practice. [SSUMF No. 2, 3, 5, 6, and 25]. Moreover, Ms. Holt has testified that she was unaware of the surcharge practice at the Acqua restaurant until she received her bill after eating her meal on August 6, 2017. [SSUMF No. 15.]  Such defenses of waiver and estoppel are without merit.

## C.    Third Affirmative Defense

The Court has already determined that Ms. Holt has Article III standing to pursue her CLRA claim. Dkt. No. 63. [SSUMF Nos. 2-18]. Ms. Holt also has statutory standing under the CLRA, as the requirements for a CLRA claim are met, as explained above. [SSUMF Nos. 13-15]. *See also*, *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 530 (N.D. Cal. 2012) (finding standing where the plaintiffs specifically recalled the misleading advertising claim and indicated it was material to their purchase).

Moreover, asserting lack of standing is not an affirmative defense. *ABC Distrib. v. Living Essentials LLC*, 2016 U.S. Dist. LEXIS 185992, at *6 (In referring to an assertion of lack of standing, the Court held that, "[t]his is not an affirmative defense, so the motion to strike is granted without leave to amend.") Therefore, this attempt at an affirmative defense has no merit.

## D.    Fourth Affirmative Defense

The Fourth Affirmative Defense appears to be directed towards the § 17200 claims, specifically the unfair prong, but this motion does not seek partial summary judgment as to the UCL claim.  It is also not a true affirmative defense with regard to any of the claims asserted by Plaintiff individually and on a class basis under the CLRA or the UCL. *See e.g.*, *Sims v. Peak Legal Advocates*, No. SACV 18-1199

---

[9] Interestingly, the Ninth Circuit has found the affirmative defense of estoppel to be adequately pled only where the defendant had "allege[d] all the elements." *Allen v. A.H. Robins Co., Inc.,* 752 F.2d 1365, 1371 n. 3 (9th Cir.1985).

Kazerouni Law Group, APC
Costa Mesa, California

JVS (KESx), 2018 U.S. Dist. LEXIS 196245, at *5 (C.D. Cal. Nov. 16, 2018) (finding asserted defense that plaintiff was not entitled to punitive damages not to be an affirmative defense but rather an assertion that the plaintiff has not proved an essential element of her claim). It is merely redundant of other denials that the surcharge practice is unfair or that affected persons are not likely to be deceived. *See ABC Distrib.,* 2016 U.S. Dist. LEXIS 185992, at *5-6. Dkt. No. 37, ¶¶ 1-3, 8, 14, 25, 35, and 43.

### E.     Sixth Affirmative Defense

Defendant's surcharge practice was the actual and proximate cause of the harm to Ms. Holt and the Class Members, as explained above when discussing causation under the CLRA. [SSUMF Nos. 13-18.] It is also not a true affirmative defense with regard to any of the claims asserted by Plaintiff individually and on a class basis under the CLRA or the UCL because it merely denies that Plaintiff has satisfied an element of her claims. *See e.g.*, *Sims,* 2018 U.S. Dist. LEXIS 196245, at *5; *see also*, *ABC Distrib.,* 2016 U.S. Dist. LEXIS 185992, at *6.

### F.     Seventh Affirmative Defense

Defendant has no evidence to support a defense of unclean hands with regard to Ms. Holt and the Class Members as to their CLRA claims against Defendant. Ms. Holt has testified that she was unaware of the surcharge practice at the Acqua restaurant until she received her bill after the meal on August 6, 2017. [SSUMF No. 15.] Additionally, an unclean hands defense is inapplicable to violations of the CLRA. Unclean hands is an equitable doctrine. *See, e.g., Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985). Just as the unclean hands defense is inapplicable to statutes such as the FDCPA (regulating debt collectors), it is also inapplicable to the CLRA (regulating sellers). *See generally*, *Nyberg v. Portfolio Recovery Assocs., LLC*, No. 3:15-cv-01175-PK, 2016 U.S. Dist. LEXIS 71897, at *16 (D.Or. June 2, 2016). Ms. Holt's intentions in bringing the lawsuit are wholly irrelevant to the questions of whether Noble House violated the CLRA *per se* by

Kazerouni Law Group, APC
Costa Mesa, California

failing to states the total price of the menu items inclusive of the surcharge – in other words, whether Noble House is liable to Plaintiff and the Classes for damages. *See generally*, *McCabe v. Crawford & Co.*, 272 F.Supp.2d 736, 749 (N.D. Ill. 2003) ("Whatever McCabe's intentions might have been in bringing this lawsuit, they are irrelevant in determining whether Crawford is liable for violating the FDCPA.").

### G.   Tenth Affirmative Defense

This defense is without merit because Noble House is the entity responsible for the surcharge practice and has obtained money from Ms. Holt and the Class Members from such practice. [SSUMF Nos. 1-18.]

### H.   Eleventh Affirmative Defense

This defense is without merit because Noble House is the entity responsible for the intentional implementation of the surcharge practice following an increase in the minimum wage (SSUMF No. 1-17), and has obtained money from Ms. Holt and the Class Members from such practice (SSUMF Nos. 11-16).

### I.   Twelfth Affirmative Defense

The Court has already certified this action as a class action under the CLRA under Fed. R. Civ. P. 23(b)(2) and (b)(3). [Dkt. No. 63.] Noble House has not obtained decertification, or even moved for decertification. Additionally, this action is pending in federal court, and the purported defense by Noble House cites the inapplicable statute for class certification under California state law.

More importantly, denying the requirements of class certification are met is not a true affirmative defense and is merely redundant of class treatment denials (Dkt. No. 37, ¶¶ 93-104). *See Gomez v. J. Jacobo Farm Labor Contr., Inc.*, 188 F. Supp. 3d 986, 1003-1004 (E.D. Cal. 2016) ("Because it is clear from Bedrosian's argument that those defenses are redundant of Bedrosian's other denials and not properly raised as affirmative defenses, the remainder of Bedrosian's twenty-second and twenty-fifth affirmative defenses will be stricken with prejudice."); *see also*, *ABC Distrib.,* 2016 U.S. Dist. LEXIS 185992, at *7 (holding that class certification

1  denials are not an affirmative defense). Thus, this purported defense thus presents
2  no impediment to granting partial summary judgment as to liability only.

3      **J.      Thirteenth, Fourteenth, Fifteenth Affirmative Defenses**

4      These defenses fail for the same reason the Twelfth Affirmative Defense is
5  not an affirmative defense. *See ABC Distrib.,* 2016 U.S. Dist. LEXIS 185992, at *7.

6      **K.      Seventeenth Affirmative Defense**

7      The Court has already certified this action as a class action under the CLRA
8  under Fed. R. Civ. P. 23(b)(2) and (b)(3). [Dkt. No. 63.] *See ABC Distrib.,* 2016
9  U.S. Dist. LEXIS 185992, at *7. Also, Ms. Holt and the Class Members have lost
10 money as a result of Defendant's surcharge practice. [SSUMF Nos. 11-17.]

11     **L.      Eighteenth Affirmative Defense**

12     There is nothing to suggest that the claims of Ms. Holt or the Class Members
13 are somehow barred by the doctrine of after-acquired evidence. Additionally, this
14 motion seeking partial summary judgment as to liability only, meaning that the
15 damages issue is to be determined at a later time.

16     **M.      Nineteenth Affirmative Defense**

17     Plaintiff does not seek punitive damages under Cal. Civ. Code § 3294 with
18 respect to the CLRA claims. The First Amended Complaint seeks, and the CLRA
19 expressly provides for, punitive damages in Cal. Civ. Code § 1770(a). Dkt. No. 29-
20 4, p. 20. In any event, this motion is limited to liability, with the question of
21 damages to be determined at a later date. Also, this is not a true affirmative defense
22 because it does not go to the issue of liability but rather the extent of damages. *See
23 e.g.*, *Sims,* 2018 U.S. Dist. LEXIS 196245, at *5 (finding asserted defense that
24 plaintiff was not entitled to punitive damages not to be an affirmative defense but
25 rather an assertion that the plaintiff has not proved an essential element of her
26 claim); *see also*, *Gomez,* 188 F. Supp. 3d at 1004; *ABC Distrib.,* 2016 U.S. Dist.
27 LEXIS 185992, at *7.

28 *///*

Kazerouni Law Group, APC
Costa Mesa, California

### N.    Twentieth Affirmative Defense

There is no evidence that Defendant has served the required notice of constitutional challenge pursuant to Fed. R. Civ. P., Rule 5.1. This Rule requires, in part, that a party challenging the constitutionality of a federal or state statute in a suit that does not include governmental parties must (1) "file a notice of constitutional question stating the question and identifying the paper that raises it" and (2) "serve the notice and paper on the Attorney General of the United States either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose." Fed. R. Civ. P. 5.1(a). Defendant has not complied with this rule and therefore may not challenge the constitutionality of the CLRA.

Noble House should not be permitted to bring a constitutional challenge after failing to comply with Rule 5.1 for more than six months, showing lack of diligence. *See Ballentine v. Las Vegas Metro. Police Dep't*, No. 2:14-cv-01584-APG-GWF, 2017 U.S. Dist. LEXIS 133777, at *21 (D. Nev. Aug. 21, 2017). The Answer to the First Amended Complaint was filed May 14, 2018 (Dkt. No. 37).

Lastly, Defendant has waived the defense by not specifying the constitutional violation and only vaguely asserting that "Noble House's actions were privileged under and/or protected by the United States and California Constitution" (Dkt. No. 37, p. 14, ¶ 20), which is another way of saying the CLRA violates unspecified constitutional rights. *See generally*, *Lazar v. Kroncke*, 862 F.3d 1186, 1202 (9th Cir. 2017) (finding a Dormant Commerce Clause challenge waived for lack of specificity).  The deadline to amend the pleading passed many months ago on April 13, 2018. [Dkt. No. 22, ¶ 2.]

## VIII.  CONCLUSION

In conclusion, there is no dispute of material fact as to Noble's House's illegal surcharge practice in California on a class-wide basis, and furthermore, such surcharge practice violates the CLRA as a matter of law. Noble House is not entitled

Kazerouni Law Group, APC
Costa Mesa, California

to any of its asserted affirmative defenses. Consequently, partial summary judgment in favor of Plaintiff and the Class Members should be granted as to Noble House's liability only, for violations of § 1770(a)(20) of the CLRA. The issue of damages can and should be reserved for a later hearing or trial.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

Date: December 27, 2018

By:/s/ Abbas Kazerounian
 Abbas Kazerounian
 *Attorneys for Plaintiff*