1   Heidi B. Bradley (SBN: 243403)
    bradleyh@lanepowell.com
2   Darin M. Sands (SBN: 257363)
    sandsd@lanepowell.com
3   LANE POWELL PC
    1420 Fifth Avenue, Suite 4200
4   P.O. Box 91302
    Seattle, WA  98111-9402
5   Telephone: 206.223.7000
    Facsimile: 206.223.7107
6
7   Attorneys for Defendant Noble
    House Hotels & Resort, Ltd.

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10                        SAN DIEGO DIVISION

11  Kathleen Holt, individually and on behalf  )  Civil No. 3:17-cv-02246-MMA-BLM
12  of all others similarly situated,          )
                                               )  **DEFENDANT NOBLE HOUSE'S**
13                           Plaintiff,         )  **MEMORANDUM OF POINTS AND**
                                               )  **AUTHORITIES IN SUPPORT OF**
14       v.                                     )  **OPPOSITION TO PLAINTIFF'S**
                                               )  **MOTION FOR PARTIAL**
15  Noble House Hotels & Resort, LTD. d/b/a    )  **SUMMARY JUDGMENT AND**
    Noble House Hotels & Resort, LTD. LP;      )  **CROSS-MOTION FOR SUMMARY**
16  and Does 1 to 25, inclusive,               )  **JUDGMENT ON ALL ISSUES**
                                               )
17                           Defendants.        )  Date:  March 11, 2019
                                               )  Time:  2:30 p.m.
18                                             )  Courtroom:  3D
                                               )  Judge:  Hon. Michael M. Anello
19                                             )
20  ─────────────────────────────────────────  )

21
22
23
24
25
26
27
28

─────────────────────────────────────────────────────────────────
      Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary
           Judgment and Cross-Motion for Summary Judgment on All Issues

# TABLE OF CONTENTS

I.    INTRODUCTION & RELIEF REQUESTED.................................................1

II.   UNDISPUTED MATERIAL FACTS...........................................................2

    A  Factual Background. .......................................................................2

    B.  Procedural Background.....................................................................4

III.  ISSUES PRESENTED ..............................................................................6

IV.  APPLICABLE LEGAL STANDARDS .....................................................6

    A.  Standard for Relief. .........................................................................6

    B.  Relevant Statutes. ...........................................................................6

V.   LEGAL ARGUMENT AND ANALYSIS...................................................7

    A.  The Surcharge Is Not *Per Se* Unlawful...........................................7

        1.  Section 1770(a)(20) Does Not Prohibit the Surcharge. .........7

            a.  *Section 1770(a)(20)'s Plain Language Does Not Prohibit the Surcharge.* .....................................................................8

            b.  *Section 1770(a)(20)'s Legislative History Does Not Prohibit the Surcharge.* .............................................................10

        2.  The Surcharge is Protected by Safe Harbors. .....................12

        3.  Applying Section 1770(a)(20) to Prohibit the Surcharge Would Violate Noble House's First Amendment Free Speech Rights. .......................15

    B.  Noble House's Surcharge is Adequately Disclosed.................................16

        1.  The Surcharge is Disclosed to Customers Clearly and Conspicuously Upon Arrival, Before Ordering, and Before Payment. .......................18

        2.  The Surcharge Disclosure is Truthful and Complete. .........................23

VI.  CONCLUSION ...........................................................................24

i

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on All Issues

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) ............................................................................ 12

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ..................................... 6

*Barber v. Nestle USA, Inc.*,
   154 F. Supp. 3d 954, 958 (C.D. Cal. 2015), *aff'd,* 730 Fed. Appx.
   464 (9th Cir. 2018) ........................................................................................... 12

*Bogart v. Glenmark Generics, Inc., USA*,
   14-CV-778 LAB DHB, 2014 WL 5800577 (S.D. Cal. Nov. 7,
   2014) ................................................................................................................. 10

*Brod v. Sioux Honey Ass'n, Co-op*,
   927 F.Supp.2d 811 (N.D. Cal. 2013) ................................................................ 23

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163, 973 P.2d 527, 83 Cal. Rptr. 2d 548 (1999) ........................... 12

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ..................................... 6

*Cortina v. Goya Foods, Inc.*,
   94 F. Supp. 3d 1174 (S.D. Cal. 2015) .............................................................. 10

*Dana's R.R. Supply v. Attorney Gen., Florida*,
   807 F.3d 1235 (11th Cir. 2015) ........................................................................ 16

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) .......................................................................... 12

*Dimond v. Darden Restaurants, Inc.*,
   13 CIV. 5244 KPF, 2014 WL 3377105 (S.D.N.Y. July 9, 2014) ............... 19, 20

*Expressions Hair Design v. Schneiderman*,
   137 S. Ct. 1144, 197 L. Ed. 2d 442 (2017) ...................................................... 16

ii

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary
Judgment and Cross-Motion for Summary Judgment on All Issues

*Faigman v. AT & T Mobility LLC*,
    C 06-04622 MHP, 2007 WL 2088561 (N.D. Cal. July 18, 2007) ..................... 10

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) ............................................................. 10

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ............................................................... 18, 19, 21

*Italian Colors Rest. v. Becerra*,
    878 F.3d 1165 (9th Cir. 2018) ........................................................ 9, 15, 16, 21

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486 (2003) .................................. 17, 23

*Lazar v. Hertz Corp.*,
    69 Cal. App. 4th 1494 (1999) ............................................................................. 7

*Lewis v. Hertz Corp.*,
    181 A.D.2d 493, 581 N.Y.S.2d 305 (1st Dep't 1992) ....................................... 20

*Lopez v. Nissan N. Am., Inc.*,
    201 Cal. App. 4th 572, 135 Cal. Rptr. 3d 116 (2011) ........................................ 12

*Michaelson v. Ritz-Carlton Hotel Co.*,
    No. 02CC00141 (Super. Ct. of Cal., Cty. of Orange Nov. 21, 2002) ............ 9, 10

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ........................................................................... 17

*Reilly v. Inquest Tech., Inc.*,
    218 Cal. App. 4th 536, 160 Cal. Rptr. 3d 236 (2013) ...................................... 10

*Riverview Fire Prot. Dist. v. Workers' Comp. Appeals Bd.*,
    23 Cal. App. 4th 1120, 28 Cal. Rptr. 2d 601 (1994) .......................................... 8

*Rodriguez v. Cheesecake Factory Inc.*,
    16CV2006JMAAKT, 2017 WL 6541439 (E.D.N.Y. Aug. 11, 2017) ............... 23

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010) .......................................................................... 17

*Sand v. Ticketmaster–N.Y., Inc.*,
    207 A.D.2d 687, 616 N.Y.S.2d 362 (1st Dep't 1994) ....................................... 20

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary
Judgment and Cross-Motion for Summary Judgment on All Issues

*Searle v. Wyndham Internat., Inc.*,
    102 Cal. App. 4th 1327, 126 Cal. Rptr. 2d 231 (2002) .......................................... 9

*Shvarts v. Budget Grp., Inc.*,
    81 Cal. App. 4th 1153, 97 Cal. Rptr. 2d 722 (2000) .......................................... 21

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F.Supp.2d 942 (S.D. Cal. 2014) .................................................... 17

*Vespi v. Galaxy Taco*,
    No. 2017-17791, No. 02CC00141 .................................................... 13

*Vespi v. Galaxy Taco*,
    No. 2017-17791 (Super. Ct. of Cal., Cty. of San Diego Nov. 16,
    2018) ...................................................................................*passim*

*Wixon v. Wyndham Resort Dev. Corp.*,
    C07-02361 JSW, 2008 WL 1777590 (N.D. Cal. Apr. 18, 2008) ...................... 10

**Statutes**

Cal. Bus. & Prof. Code § 17200 .................................................... 16

Cal. Bus. & Prof. Code § 17500 .................................................... 16

Cal. Civ. Code § 1761 .................................................................. 8

Cal. Civ. Code § 1770(a)(9) .................................................... 7, 16

Cal. Civ. Code § 1770(a)(20) .................................................*passim*

California Labor Code § 350(e) .................................................... 14

Consumers Legal Remedies Act .............................................*passim*

Code Regs. § 927-1 .................................................................. 14

Code Regs., tit. 18, § 1603(h) .................................................. 12, 13

False Advertising Law ........................................... 7, 12, 16, 17

Santa Monica Municipal Code § 4.62.040(b) .............................. 14

1984 Stat. Ch. 1171 .......................................................... 10, 11

Unfair Competition Law ............................................. 7, 12, 16, 17

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary
Judgment and Cross-Motion for Summary Judgment on All Issues

**Rules**

California Rule of Court 8.1115(a) ........................................................... 20

Civil Chambers Rules § IV ....................................................................... 20

Fed. R. Civ. P. 5.1 .................................................................................... 15

Fed. R. Civ. P. 56 ....................................................................................... 6

Rule 23(b) .................................................................................................... 4

**Other Authorities**

U.S. Constitution ........................................................................... 7, 15, 16

A.B. 2979 (Molina), 1984 Stat. Ch. 1171, Senate Committee on
    Judiciary, Consumer Protection: Deceptive Pricing Practices, at 2
    (August 6, 1984) ............................................................................ 10, 11

Cal. Assembly Office of Research, Concurrence in Senate
    Amendments to Assem. Bill 2979 (Molina), Aug. 17, 1984 ............... 11

Diane Harkey, *Surcharges Aren't Sweet, and No One Likes the Bad
    Taste of Unemployment*, Board of Equalization,
    https://www.boe.ca.gov/harkey/op-eds/201701-1OP.htm. (last
    visited January 18, 2019) .................................................................... 13

Hearing on A.B. 2979 before the Assembly Committee on Consumer
    Protection and Toxic Materials (Cal. April 3, 1984) ........................... 11

San Diego City Attorney's Office, *A Report to the People of San
    Diego,* City of San Diego Official Website (January 2018),
    https://www.sandiego.gov/sites/default/files/ careport2017.pdf ......... 14

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary
Judgment and Cross-Motion for Summary Judgment on All Issues

## I.    **INTRODUCTION & RELIEF REQUESTED**

After San Diego raised the minimum wage January of 2017, Defendant Noble House Hotels & Resorts, LTD. ("**Noble House**") added a 3.5% service charge (the "**Surcharge**") to all bills at its restaurants to cover the increased cost of providing service to its customers.  Scores of other San Diego restaurants implemented similar surcharges following the minimum wage increase.  In order to make customers aware of the surcharge and the reason for the increase in the cost of service, Noble House chose to prominently disclose the Surcharge to its customers in a variety of ways. This included signs prominently displayed at entrance points, menus with clear and conspicuous disclosures on the first page, and bills with the Surcharge separately itemized and explained again.

On August 6, 2017, Plaintiff Kathleen Holt ("**Plaintiff**") dined at one of Noble House's restaurants with a dining companion, Robert Hyde, an attorney whose law firm had already filed nine lawsuits against other San Diego restaurants challenging their surcharge practices.  Plaintiff does not dispute that she received the surcharge disclosure on the menu, or that she paid the check for herself and Mr. Hyde, which included a $1.38 Surcharge.

Plaintiff now represents certified classes advancing two general legal theories against Noble House:  that any Surcharge, regardless of how prominently or clearly it is displayed to customers, is *per se* illegal, and that even if the Surcharge is not *per se* illegal, it was inadequately disclosed in a way that would leave a reasonable customer unaware that they would be subject to the Surcharge.

There are no disputed issues of material fact that would prevent the Court from entering summary judgment in Noble House's favor on any of Plaintiff's claims. Plaintiff contends that she and every member of the class received the same Surcharge Disclosures, and she does not dispute that the Surcharge was implemented in precisely the way it was disclosed to customers at the Restaurants.  Each of Plaintiff's claims fails as a matter of law.  *First*, surcharges like the one at issue in

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on All Issues

this case are not illegal under California law; rather, the plain language of the statute on which Plaintiff relies makes clear that it does not apply to restaurant surcharges for service. Moreover, such surcharges have been acknowledged and approved by the California State Board of Equalization, which permits such surcharges, so long as they are adequately disclosed. Every California enforcer and court to address the issue has reached the same conclusion. *Second*, the Surcharge is adequately disclosed. Noble House provides all customers with a truthful and complete explanation of the Surcharge at the point of entry, the point of ordering, and again at the point of payment. A reasonable customer could not be deceived or misled by the Surcharge.

Accordingly, Plaintiff's Motion for Partial Summary Judgment regarding the *per se* illegality of Noble House's surcharge practice should be denied, and summary judgment should be granted in Noble House's favor on all of Plaintiff's claims.

## II.   UNDISPUTED MATERIAL FACTS

### A.   Factual Background.

Noble House operates Acqua California Bistro, Fresco's, the Olive Bar, and Aroma Coffee Shop located in the Hilton San Diego Resort & Spa (each a "**Restaurant**").[1] SOF-1. In February 2017, Noble House began adding a 3.5% Surcharge to all bills at the Restaurants to help cover increased labor costs. SOF-2. In order to make customers aware of the Surcharge and the reason for the increase in the cost of service, Noble House chose to prominently and repeatedly disclose the Surcharge in at least three ways (each a "**Surcharge Disclosure**"):

<u>Signs</u>. At the entryway host stand, in lounge and bar areas, and around dining areas, the Restaurants display signs ("**Signs**") containing nothing but Noble House's standard Surcharge Disclosure language: "*A 3.5% surcharge will be added to all Guest checks to help cover increasing labor costs and in our support of the recent*

---

[1] Pursuant to the Court's Civil Chambers Rules § IV, Noble House's Statement of Undisputed Material Facts is set forth in a separate pleading filed concurrently herewith (each a "**SOF**").

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on All Issues

*increases in minimum wage and benefits for our dedicated Team Members*."  SOF-4 (emphasis added).

<u>Menus</u>.  On the first page of the Restaurants' menus (the "**Menu**"), Noble House's standard Surcharge Disclosure language appears in offset text,[2] in the same size font as is used to list food and beverage items:  "***A 3.5% surcharge will be added to all Guest checks to help cover increasing labor costs and in our support of the recent increases in minimum wage and benefits for our dedicated Team Members***."  SOF-5 (emphasis added).

<u>Bills</u>.  On every bill the Restaurants issue (the "**Bill**"), there is (i) a line item showing the exact amount of the Surcharge, indicating that the Surcharge is added after the subtotal is calculated but before taxes are applied, (ii) offset text, in the same size font as is used to list the other items on the Bill, stating Noble House's standard Surcharge Disclosure language:  "***A 3.5% surcharge has been added to all Guest checks to help cover increasing labor costs and in our support of the recent increases in minimum wage and benefits for our dedicated Team Members***," (emphasis added) and (iii) a separate line after the total amount due marked "GRATUITY" (emphasis in original) with a blank space for patrons to leave an optional, customary tip.  SOF-6.

On August 6, 2017, Plaintiff dined at one of the Restaurants, Acqua California Bistro, with her friend and attorney in this case, Robert Hyde.  SOF-9.  Prior to dining with Plaintiff at Acqua California Bistro, Hyde had already filed nine nearly identical suits against other San Diego restaurants alleging claims nearly identical to those alleged in this case.  SOF-15.  He went on to file at least five more such suits against other restaurants.  *Id*.

During Plaintiff's visit with Hyde, Signs prominently displayed at the entryway host stand, in lounge and bar areas, and around dining areas contained the

---

[2] The Surcharge Disclosures on Acqua California Bistro and Olive Bar's Menus appear in red text, whereas the Surcharge Disclosure on Fresco's Menu appears in black text.  SOF-5.  Aroma Coffee Shop does not use a menu.  *Id*.

3

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary
Judgment and Cross-Motion for Summary Judgment on All Issues

Surcharge Disclosures.  SOF-4.  Plaintiff ordered from a Menu that included the Surcharge Disclosure on the first page, in offset red text in the same size font as food and beverage items, as the Menus always do.  SOF-10; *see also* SOF-5.  Plaintiff paid for both meals on a single Bill that included the Surcharge as a separate post-subtotal pre-tax line item ($1.38), exactly 3.5% of her subtotal for "items ordered" ($39.50), along with a Surcharge Disclosure in offset text in the same size font as is used to list the other items on the Bill, as the Bills always do.  SOF-11; *see also* SOF 6.

Despite the fact that she was dining with a friend who had just filed nine lawsuits challenging restaurant surcharges, Plaintiff testified that she first discovered the Surcharge when she received her Bill, after eating her meal but prior to paying.  SOF-12.  Plaintiff paid her Bill, including the $1.38 Surcharge, without discussing the Surcharge with any Restaurant employees or otherwise complaining about the Surcharge.  SOF-13.  At the end of that meal, Plaintiff retained Hyde to file this lawsuit against Noble House.  SOF-14.

**B.**     **Procedural Background.**

In September 2017, Plaintiff filed her class action complaint (as amended, the "**Complaint**") against Noble House in San Diego Superior Court, alleging Surcharge-related claims under three related consumer protection statutes.  ECF No. 1.  In November, 2017, Noble House removed the case to this Court, and moved to dismiss the case.  ECF No. 1, 6.  That motion was denied because the Court determined that granting the motion would require factual findings regarding the disclosures made by Noble House to customers, which were referenced in, but not attached to, the Complaint.  ECF No. 14.

On October 16, 2018, the Court granted Plaintiff's motion for class certification, certifying two classes: (1) a Rule 23(b)(2) class consisting of "[a]ll persons who were charged a surcharge on their bill, between February 1, 2017 and October 16, 2018, at a restaurant in California managed by [Noble House]," and (2) a Rule 23(b)(3) class consisting of "[a]ll residents of California who were charged a

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on All Issues

surcharge on their bill at" one of three Hilton San Diego Resort and Spa restaurants between February 1, 2017 and September 20, 2017 who paid with a credit card. ECF No. 63.

On December 27, 2018, Plaintiff moved for partial summary judgment on her claim under Cal. Civ. Code § 1770(a)(20) ("**Plaintiff's MPSJ**"). ECF No. 69. Pursuant to the parties' stipulated briefing schedule, Noble House hereby files this opposition to Plaintiff's MPSJ *and* cross-motion for summary judgment on all legal issues, including not only whether the Surcharge is inherently unlawful, but also whether Noble House adequately discloses the Surcharge.

This is not an isolated case; rather, it is one of fifteen copy-and-paste class action complaints filed by Plaintiff's counsel in San Diego Superior Court against local restaurants that add surcharges to their patrons' bills. SOF-15. All of the complaints, including the Complaint against Noble House, allege similar violations of California consumer protection laws predicated on the same general legal theories: (i) that restaurant surcharges are inherently unlawful, and (ii) that the individual restaurants do not adequately disclosing their surcharges. *Id*.

After Noble House removed its case to this Court, the other fourteen state court cases were reassigned to Judge Timothy Taylor to be jointly administered as "related" cases (the "**State Court Action**"), and Judge Taylor stayed all but two of the cases, designating *Vespi v. Galaxy Taco* and *Fischer v. El Camino Hospitality* as "test cases" to try common issues of law and fact, including whether restaurant surcharges are inherently unlawful, and whether those two "test case" restaurants adequately disclosed their surcharges. *See Vespi v. Galaxy Taco*, No. 2017-17791, at 1-2 (Super. Ct. of Cal., Cty. of San Diego Nov. 16, 2018).

The State Court Action defendants moved for summary judgment (or the equivalent) on all legal issues, and on November 16, 2018, Judge Taylor granted defendants' motion, effectively disposing of all claims in the test case against Galaxy Taco (the "**State Court Ruling**"). *Id*. As Judge Taylor held, "The undisputed

5

evidence establishes that the surcharge is not unlawful as matter of law, that defendant made adequate and non-misleading disclosures about the surcharge, and that plaintiff did not rely on a misleading statement in the surcharge disclosure." *Id.* at 8.

### III.   ISSUES PRESENTED

1.   Whether the Surcharge is inherently unlawful.

2.   Whether the Surcharge is adequately disclosed.

### IV.   APPLICABLE LEGAL STANDARDS

**A.   Standard for Relief.**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248. The party opposing summary judgment cannot "rest upon the mere allegations or denials of [its] pleading" but must instead produce evidence that "sets forth specific facts showing that there is a genuine issue for trial." Fed .R. Civ. P. 56(e)).

**B.   Relevant Statutes.**

In her Complaint, Plaintiff advances two general legal theories: (1) that the Surcharge is inherently unlawful and a *per se* violation of Cal. Civ. Code §

1770(a)(20) ("**Section 1770(a)(20)**"), and (2) that the Surcharge Disclosures are deceptive and misleading, and violate three related consumer protection statutes: California's Consumers Legal Remedies Act ("**CLRA**"), False Advertising Law ("**FAL**"), and Unfair Competition Law ("**UCL**").  Given the undisputed facts now established in this case, Plaintiff cannot prevail as a matter of law on any of her asserted claims.

## V.   LEGAL ARGUMENT AND ANALYSIS

### A.   The Surcharge Is Not Per Se Unlawful.

Plaintiff's theory that the Surcharge is *per se* unlawful is entirely predicated on Plaintiff's argument that the Surcharge violates Section 1770(a)(20) of the CLRA.[3]  Plaintiff's attempt to bring the Surcharge within the scope of Section 1770(a)(20) fails because (1) the statute does not apply to the Surcharge, which reflects a charge for service distinct from the price for food or drinks reflected on the Menu; (2) disclosed surcharges are a common practice throughout California, and they have been specifically recognized by state regulators and enforcers as proper; and (3) ruling in favor of Plaintiff's interpretation of Section 1770(a)(20) would violate Noble House's free speech rights under the U.S. Constitution.

1.   Section 1770(a)(20) Does Not Prohibit the Surcharge.

Section 1770(a)(20) prohibits "advertising that a product is being offered at a specific price plus a specific percentage of that price."  Cal. Civ. Code § 1770(a)(20).  Plaintiff alleges that Noble House's Menu and Surcharge violate Section 1770(a)(20) because it separates the Surcharge from the prices offered for food and drinks on the Menu itself.  Even assuming *arguendo* that the Menu is an "advertisement" and the

---

[3] Plaintiff's claim under the UCL's "unlawful" prong also calls into question whether the Surcharge is inherently unlawful; however, that claim is entirely dependent on Plaintiff establishing a predicate violation of Section 1770(a)(20).  *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999).  The balance of Plaintiff's claims (CLRA Section 1770(a)(9), FAL, and UCL "unfair" and "deceptive" prongs) do not focus on whether the Surcharge is inherently unlawful, instead they focus on the whether the Surcharge is adequately disclosed (*i.e.*, whether the Surcharge is unfair, deceptive, misleading, or untrue) under the reasonable customer standard.

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary
Judgment and Cross-Motion for Summary Judgment on All Issues

food and beverage items listed on the Menu are "products" and/or "goods," (which California courts have held they are not)[4] Plaintiff's attempt to bring the Surcharge within the scope of the Section 1770(a)(20) fails because the Surcharge is not an addition to the price of the alleged "product" (*i.e.*, the individual food or beverage item), as the statute prohibits; rather, the Surcharge is a separate charge for service. Section 1770(a)(20) prevents retailers from double-pricing individual products; it cannot be read to encompass separate charges expressly attributable to the provision of ancillary services.  Indeed, listing a mandatory service charge separate from food and beverage prices allows patrons the opportunity to fully understand exactly what it is they are paying for.

In construing a statute, California courts "first look to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction." *Riverview Fire Prot. Dist. v. Workers' Comp. Appeals Bd.*, 23 Cal. App. 4th 1120, 1126, 28 Cal. Rptr. 2d 601, 605 (1994).  Plaintiff cannot establish that Section 1770(a)(20) prohibits the Surcharge under either a plain reading of the statute or by evoking its legislative history.

a.     *Section 1770(a)(20)'s Plain Language Does Not Prohibit the Surcharge*.

Plaintiff entirely ignores the fundamental distinction between "products"/"goods" and "services" at play:  the Restaurants charge fixed prices for their food and beverage items (each allegedly a "good" or "product"), and a separate price for the corresponding service provided by the Restaurant's employees ("services").

This distinction is expressly recognized by the CLRA itself:  "goods" and "services" are defined separately, with "services" specifically defined to include "services furnished *in connection with* the sale or repair of goods."  Cal. Civ. Code §

---

[4] *See, e.g.*, *Vespi v. Galaxy Taco*, No. 2017-17791 at 9 (holding that a restaurant's menu is not "advertising" and its food items are not "products" within the scope of the CLRA).

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on All Issues

1761 (emphasis added).  The Surcharge is not an additional charge for individual food and beverage items, it is a separate charge altogether for "services furnished in connection with the sale" of those items.  The total amount paid by each customer, as itemized on the Bill, is ultimately a combination of (i) itemized charges for food and beverage items, (ii) the Surcharge for services provided in connection with the meal, (iii) two government-mandated taxes, and (iv) an optional gratuity.

Plaintiff cannot identify a single case where a mandatory fixed-percentage service charge was ruled unlawful *per se*, under Section 1770(a)(20) or otherwise. *See* ECF No. 69-1 at pp. 8-14.  Indeed, the California courts that have considered the issue have unanimously concluded that Section 1770(a)(20) does <u>not</u> apply to such surcharges (and none of those decisions have been overturned on appeal).  *See Vespi v. Galaxy Taco*, No. 2017-17791 at 8 (holding that "the surcharge is not unlawful as a matter of law" because "[t]here is no statute or case law that provides that the surcharge is unlawful as a matter of law"); *Michaelson v. Ritz-Carlton Hotel Co.*, No. 02CC00141 (Super. Ct. of Cal., Cty. of Orange Nov. 21, 2002) ("Simply put, the court is not persuaded that there is anything wrong with charging one amount for the food or beverage [and] another amount for the service… The business practice challenged in this case is not the least bit unfair, unlawful, or fraudulent.").

Moreover, California and Ninth Circuit courts of appeal have approved similar fixed-percent surcharges. *See*, *e.g.*, *Searle v. Wyndham Internat., Inc.*, 102 Cal. App. 4th 1327, 1334, 126 Cal. Rptr. 2d 231 (2002) (approving hotel's practice of adding a mandatory fixed-percent surcharge to all room service bills because customers receive adequate notice); *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1178 (9th Cir. 2018) (holding that retailers' practice of adding a mandatory fixed-percent surcharge to bills when customers pay with credit cards was "not unlawful," but suggesting that "California could require retailers to disclose their surcharges both before and at the point of sale.").

Plaintiff's MPSJ is full of citations to cases that have defined "advertisements"

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on All Issues

and "products" in readily distinguishable contexts—none address the legality of surcharges, let alone a service charge added by a restaurant or other hospitality business. *See Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174 (S.D. Cal. 2015) (claims regarding a beverage producer's labeling practices), *Faigman v. AT & T Mobility LLC*, C 06-04622 MHP, 2007 WL 2088561 (N.D. Cal. July 18, 2007) (claims against a mobile phone producer's rebate practices); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1110 (S.D. Cal. 2011) (claims regarding a condiment producer's labeling practices); *Reilly v. Inquest Tech., Inc.*, 218 Cal. App. 4th 536, 541, 160 Cal. Rptr. 3d 236, 239 (2013) (dispute regarding wholesale computer parts and components); *Bogart v. Glenmark Generics, Inc., USA*, 14-CV-778 LAB DHB, 2014 WL 5800577, at *1 (S.D. Cal. Nov. 7, 2014) (claims regarding defective birth control pills); *Wixon v. Wyndham Resort Dev. Corp.*, C07-02361 JSW, 2008 WL 1777590, at *1 (N.D. Cal. Apr. 18, 2008) (claims regarding time share credit program); *but see Vespi v. Galaxy Taco*, No. 2017-17791 at 9 (holding that a restaurant's menu is not "advertising" and its food items are not "products" within the scope of the CLRA). All of the cases relied on by Plaintiff deal with the pricing of single "products," and none support the proposition that a separate surcharge for services are in any way improper under California law. *Compare with Michaelson v. Ritz-Carlton Hotel Co.*, No. 02CC00141 (Section 1770(a)(20) does not apply to surcharges because "there is [nothing] wrong with charging one amount for the food or beverage [and] another amount for the service")

b.  *Section 1770(a)(20)'s Legislative History Does Not Prohibit the Surcharge.*

To the extent there is any ambiguity in the language of Section 1770(a)(20), the statute's legislative history demonstrates that it was not enacted to prohibit separate charges like the Surcharge.

The statute was enacted in 1984 "to stop reported deceptive advertising practices by several supermarkets in Southern California." A.B. 2979 (Molina), 1984

Stat. Ch. 1171, Senate Committee on Judiciary, Consumer Protection: Deceptive Pricing Practices, at 2 (August 6, 1984).  The California Attorney General sponsored the bill "in response to complaints about some food stores which advertise the sale of their products at a prominently marked base price plus a much less prominently disclosed percentage markup, usually 10% more. Often these stores are located in areas where many residents are non-English speaking or are less sophisticated." *Id.*; Consumer Protection; Prohibited Deceptive "Price + Percentage" Advertising Practice: Hearing on A.B. 2979 before the Assembly Committee on Consumer Protection and Toxic Materials (Cal. April 3, 1984).  The legislature's intent was clear: the wrong that Section 1770(a)(20) was enacted to remedy was misleading advertising relating to staple "products" sold in economically disadvantaged communities, often where English is a second language.

To that end, Section 1770(a)(20) is narrowly tailored "in response to" a "percentage markup" charged by "food stores" that is "much less prominently disclosed," "designed to, and does, mislead consumers" and has "no legitimate basis."  Cal. Assembly Office of Research, Concurrence in Senate Amendments to Assem. Bill 2979 (Molina), Aug. 17, 1984.  A supermarket advertisement for a single food item is significantly different from the service charge challenged here, because the Surcharge has a legitimate basis (service furnished in connection with a meal) and is not designed to deceive or mislead customers (Surcharge Disclosures are clearly and conspicuously displayed on the Signs, Menu, and Bill).

A restaurant patron not only receives food, but also the service that goes into preparing and delivering that food to the customer, among other service aspects of a typical meal.  Given this distinction, and the type of deception Section 1770(a)(20) was drafted to address, it would contradict the legislature's intent to extend this statute to the Surcharge by declaring food or beverage items and related service charges to be a single "product."  The Surcharge is not a charge for a product, as explained by the Surcharge Disclosure.

11

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on All Issues

2.    The Surcharge is Protected by Safe Harbors.

Plaintiff's Section 1770(a)(20) claim also fails because California regulators recognize restaurants' right to apply a mandatory fixed-percent service charge to patrons' bills.

Under the well-recognized "safe harbor" doctrine in California law, when the legislature or state regulator considers a particular practice and deems it proper, businesses are entitled to rely on that determination and CLRA, FAL, and UCL claims like those alleged by Plaintiff cannot be used as a vehicle to override that determination.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182, 973 P.2d 527, 83 Cal. Rptr. 2d 548 (1999) ("If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination."); *Barber v. Nestle USA, Inc.*, 154 F. Supp. 3d 954, 958 (C.D. Cal. 2015), *aff'd,* 730 Fed. Appx. 464 (9th Cir. 2018) ("*Cel–Tech* applied the safe harbor doctrine only to UCL claims, but other courts have recognized that the doctrine equally applies to claims under the CLRA and FAL."). Further, it is well established that regulations can create safe harbors.  *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1166 n. 3 (9th Cir. 2012) (collecting California cases); *Lopez v. Nissan N. Am., Inc.,* 201 Cal. App. 4th 572, 592, 135 Cal. Rptr. 3d 116 (2011) (safe harbor doctrine applies to bar claims when the allegedly fraudulent and unfair practice "complies with specific California regulations."); *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011) (compliance with California regulations created "safe harbor from liability under these broad consumer protection statutes.")

Here, California's State Board of Equalization (the "**BOE**") enacted a regulation governing the taxation of mandatory surcharges including "service charges, or any other separately stated payment for services associated with the purchase of meals, food, or drinks" ("**Section 1603(h)**").  Code Regs., tit. 18, §

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on All Issues

1603(h).   Section 1603(h) provides that when a restaurant's "*menu*, brochures, advertisements or other printed materials contain statements that notify customers that… service charges *will* or may be added," the "amount automatically added by the [restaurant] to the bill" is subject to tax.  *Id*. (emphasis added).

In February 2017, the same month the Restaurants began adding the Surcharge, the BOE issued "Special Notice: Sales Tax Applies to Restaurant Surcharges" explaining Section 1603(h) in plain English (the "**Special Notice**").  SOF-19.  The Special Notice is expressly intended to address the "[m]any restaurant owners/operators [that] add a surcharge to their receipts to cover required employer costs, such as increases to minimum wage, healthcare contributions, and paid sick leave."  *Id*.  In the Special Notice, the BOE advises California restaurants that "[i]f you add a separate surcharge to the customers' bills, sales tax applies to the surcharge amount," and provides an example bill that includes a line item for a 3% "Restaurant Surcharge" followed by a line item for sales tax.  *Id*.[5]

The BOE's regulations and guidelines for how to implement mandatory service charges are an express acknowledgement of the propriety of such surcharges when they are disclosed on menus and itemized on bills, as is uniform practice for the Restaurants.  *See Vespi v. Galaxy Taco*, No. 2017-17791, No. 02CC00141 at 8-9 ("the [BOE's Special Notice]… does not advise of unlawful conduct" rather "the fact the Special Notice was sent out establishes that an arm of the state government was aware of the surcharge practice, and there was no effort by any arm of government to stop the practice.").  The Surcharge is implemented exactly as contemplated under Section 1603(h) and the Special Notice:   each Menu contains the Surcharge

---

[5] In addition to Section 1603(h) and the Special Notice, BOE Vice Chair Diane Harkey defended the practice of San Diego restaurants adding surcharges: "Following San Francisco and Los Angeles, San Diego is one of the last big cities in California to see restaurants add a surcharge to cope with the rising cost of government mandates… When they are implemented correctly, surcharges are a legal way for restaurants to honor the desire of the voters for a higher minimum wage, while ensuring that owners can pay their employees the higher wage and still remain in business."  Diane Harkey, *Surcharges Aren't Sweet, and No One Likes the Bad Taste of Unemployment*, Board of Equalization, https://www.boe.ca.gov/harkey/op-eds/201701-1OP.htm. (last visited January 18, 2019).

13

Disclosure, and each Bill contains a Surcharge line item that is subject to tax.

In addition to the BOE, numerous California employment regulations also recognize the permissibility of surcharges, and provide further compelling support for a safe harbor for businesses relying on such regulation. The Division of Labor Standards Enforcement enacted 22 Code Regs. § 927-1, providing that mandatory service charges distributed to employees at the employer's discretion are not "tips and wages." Similarly, the California Labor Code § 350(e) distinguishes amounts owed to a restaurant for "services rendered" from "goods, food, drink, or articles sold to the patron."

Local governments, too, have enacted codes and ordinances permitting restaurant surcharges, subject to certain local requirements. *See*, *e.g.*, Santa Monica Municipal Code § 4.62.040(b) ("All Service Charges must be disclosed to consumers with Clear and Conspicuous notice prior to the time that the customer makes a purchase or selection…"). In short, regulatory bodies from the statewide level down to the local level have considered surcharges, deemed them proper, and provided guidance for their implementation. A ruling to the contrary would throw the state regulatory framework into extreme disarray and create conflicting guidance to businesses simply trying to comply with the law—the very result that the legislative safe harbor is intended to avoid.[6]

Moreover, since January 2017, San Diego City Attorney Mara Elliott (the "**SDCA**") has led a highly-publicized investigation into San Diego restaurants that add surcharges, and has taken action against restaurants that fail to adequately disclose their surcharges, first by providing informal notice to the restaurants, then by filing a formal lawsuit if a restaurant fails to improve its disclosure practices.[7]

---

[6] For example, in 2018 the California Restaurant Association published guidance for California restaurants that add surcharges to cover increased labor expenses. SOF-22.

[7] San Diego City Attorney's Office, *A Report to the People of San Diego,* City of San Diego Official Website (January 2018), https://www.sandiego.gov/sites/default/files/careport2017.pdf ("We quickly warned the public that restaurants were adding a 'surcharge' to bills without advising consumers in advance of the charge, or truthfully

14

The SDCA has not challenged restaurant surcharges that were adequately disclosed, and has never challenged Noble House's disclosure practices. *Cf. Vespi v. Galaxy Taco*, No. 2017-17791 at 9 (even for restaurants that received a notice from the SDCA, "the absence of follow up to the letters" suggests the subject surcharges are lawful).

### 3. Applying Section 1770(a)(20) to Prohibit the Surcharge Would Violate Noble House's First Amendment Free Speech Rights.

Adoption of Plaintiff's strained reading of Section 1770(a)(20) to prohibit restaurant surcharges would run afoul not only of the legislative safe harbors, but also of the constitutional protections for commercial speech. As the Ninth Circuit articulated in a 2018 case involving credit card surcharges, a restriction on commercial speech is unconstitutional if the speech "is neither misleading nor related to unlawful activity" and the restriction is "more extensive than necessary" to serve the government's "substantial interest." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018) (citations omitted).[8]

In *Italian Colors*, the Ninth Circuit declared an anti-surcharge statute involving credit card fees failed the intermediate scrutiny test applied to commercial speech, and was unconstitutional when applied as an outright prohibition regardless of whether the surcharge in question is adequately disclosed. *Id.* at 1179 ("In sum, Section 1748.1 restricts plaintiffs' non-misleading commercial speech."). In short, the Ninth Circuit concluded that the State of California had an obligation to tailor its

---

explaining what the charge meant… Although most restaurants were responsive to our threat to sue any business that unlawfully deceived the public, we continue to get complaints, and are in the process of prosecuting a non-compliant restaurant owner.").

[8] Plaintiff asserts that Noble House has failed to comply with Fed. R. Civ. P. 5.1, which requires parties to file a notice of constitution questions when challenging the constitutionality of a state statute. However, Noble House does not challenge the constitutionality of Section 1770(a)(20) outright, but rather notes that applying Section 1770(a)(20) to prohibit all restaurant surcharges (a purpose for which the statue was never intended) would raise serious constitutional concerns. Moreover, a notice need only be filed "promptly" after raising a challenge, and a constitutional claim or defense cannot be waived for failing to file such a notice so long as the claim or defense is "otherwise timely asserted."

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on All Issues

enforcement of its anti-surcharge statute to instances where the portrayal of the surcharges at issue were actually misleading.   Enforcing a *per se* ban on all surcharges, including non-misleading surcharges, simply "because of the potential for misleading information in other cases" cannot withstand constitutional scrutiny. *Id.* at 1178.

If Section 1770(a)(20) were interpreted to create a *per se* prohibition of all surcharges, regardless of whether the disclosures of the particular surcharges challenged by plaintiff were misleading, it could no better withstand constitutional scrutiny than the surcharge statute at issue in *Italian Colors*.   As the Ninth Circuit posited, the better, constitutionally permissible solution to regulating surcharges is that "California could require retailers to disclose their surcharges both before and at the point of sale… These alternatives would restrict less speech and would more directly advance California's asserted interest in preventing consumer deception." *Italian Colors*, 878 F.3d at 1178.[9]

After *Italian Colors*, the Court cannot resolve this case by reading Section 1770(a)(20) to institute a ban on all surcharges.   To do so would violate the First Amendment.   Instead, it must first determine whether the Surcharge Disclosures at issue in this case are misleading.   If they are not misleading, all Plaintiff's claims must fail as a matter of law.

**B.      Noble House's Surcharge is Adequately Disclosed.**

In the alternative to her *per se* illegality theory, Plaintiff alleges that Noble House's Surcharge Disclosures are unfair, deceptive, or misleading and violate the UCL, FAL and CLRA.   *See generally* Cal. Bus. & Prof. Code § 17200 (UCL prongs prohibit "unfair" or "fraudulent" business practices); Cal. Bus. & Prof. Code § 17500

---

[9] The United Stated Supreme Court and the Eleventh Circuit share similar First Amendment concerns regarding anti-surcharge laws.  *See Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1151, 197 L. Ed. 2d 442 (2017) ("In regulating the communication of prices rather than prices themselves, [New York's anti-surcharge statute] regulates speech."); *Dana's R.R. Supply v. Attorney Gen., Florida*, 807 F.3d 1235, 1249 (11th Cir. 2015) ("Turning to the commercial-speech analysis, we make short shrift of Florida's no-surcharge law.").

16

(FAL prohibits "untrue or misleading" statements); Cal. Civ. Code § 1770(a)(9) (CLRA prohibits "unfair or deceptive acts or practices" including false advertising). "Courts often analyze these statutes together because they share similar attributes." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F.Supp.2d 942, 985 (S.D. Cal. 2014). "[V]iolations of the UCL, FAL, and CLRA are evaluated from the vantage point of a 'reasonable consumer.'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (citation omitted). Under that test, Plaintiff bears the burden of establishing that "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508, 129 Cal. Rptr. 2d 486 (2003) (emphasis added); *see also Reid v. Johnson & Johnson*, 780 F.3d at 958 (reasonable consumer test requires plaintiffs to "show that members of the public are likely to be deceived."). Importantly, whether a disclosure is adequate is a question of law for the Court to decide, <u>not</u> a question of fact for a jury. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010) ("Clarity and conspicuousness is a question of law.")

Plaintiff's exact theory about why the Surcharge is purportedly unfair, deceptive, false, or misleading has changed throughout the case. At the outset, Plaintiff implied that the Surcharge was not disclosed to customers at any point prior to ordering. *See*, *e.g.*, Complaint at ¶ 30 ("The surcharge is added *after* the consumer is finished eating and drinking at Defendant's restaurants, when it is too late for the consumer to make an informed decision about the increased amount on the total bill."). More recently, Plaintiff has accepted that Noble House discloses the Surcharge in a uniform manner before customers order. *See*, *e.g.*, ECF No. 69-2, Plaintiff's Statement of Undisputed Material Facts No. 5 and No. 10 ("Noble House placed a disclosure at the bottom of its menus concerning the 3.5% surcharge" and Noble House's "surcharge practice is the same at Acqua California Bistro, the Olive Lounge, and Fresco's."). While there is no dispute of fact as to what Noble House

does to disclose the Surcharge to customers, Plaintiff continues to attack the adequacy of the Surcharge Disclosures in two ways, neither of which hold water under the reasonable customer standard.

First, Plaintiff alleges that the Surcharge is disclosed in such a way that a reasonable restaurant patron would likely fail to see the Surcharge Disclosure prior to ordering his or her meal or paying.  This theory fails because the undisputed facts now before the Court demonstrate that the Restaurants disclose the Surcharge to customers clearly and conspicuously upon arrival (Signs), before ordering (Menus), and again before payment (Bills).

Second, Plaintiff alleges that even if the Surcharge is adequately presented to customers, it is misleading or outright untrue, which requires Plaintiff to show that the Surcharge Disclosure would mislead the reasonable restaurant patron or materially misrepresent the Surcharge altogether.   Plaintiff cannot establish a misleading or untrue statement because the Surcharge Disclosure is truthful and complete.

    1.   <u>The Surcharge is Disclosed to Customers Clearly and Conspicuously Upon Arrival, Before Ordering, and Before Payment</u>.

Noble House goes to great lengths to ensure that its customers receive meaningful notice of the Surcharge.  *See* SOF-3–8.  The Signs, Menu, and Bill are designed to ensure that customers are provided with a Surcharge Disclosure upon arriving at the Restaurant, before ordering a meal, and again before paying.  *Id*. Plaintiff's claims alleging "unfair" or "deceptive" business practices must fail as a matter of law because the Surcharge Disclosures on the Signs, Menu, and Bill are adequate:  a reasonable customer is likely to read a Surcharge Disclosure before ordering, and before paying.

In an analogous Ninth Circuit case arising under the same California statutes relied on by Plaintiff here, Time, Inc. sent personalized mailers for the "Million Dollar Dream Sweepstakes" to millions of people.  *Freeman v. Time, Inc.*, 68 F.3d

18

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on All Issues

285, 287 (9th Cir. 1995). The mailers each "contain[ed] statements in large type representing that [the recipient] won the sweepstakes, qualified by language in smaller type indicating that [the recipient] would win only if he returned a winning prize number." *Freeman v. Time, Inc.*, 68 F.3d 285, 287 (9th Cir. 1995). One of the recipients of the mailers sued Time, Inc., asserting that the mailer violates California's statutes prohibiting unfair and deceptive practices and false and misleading advertising. *Freeman v. Time, Inc.*, 68 F.3d 285, 287 (9th Cir. 1995) (citing CLRA, FAL, and UCL). The trial court rejected Freeman's claims as a matter of law based on nothing more than a review of the mailer's content. *Freeman v. Time, Inc.*, 68 F.3d 285, 288 (9th Cir. 1995).

Affirming the trial court's dismissal of Freeman's claims, the Ninth Circuit held that Freeman could not meet his burden of showing that "members of the public are likely to be deceived" because a "reasonable person" would have read the entire mailer and understood the small-type qualifying language. *Freeman v. Time, Inc.*, 68 F.3d 285, 289-290 (9th Cir. 1995). The Ninth Circuit read the mailer "as a whole," stressing that the "reasonable person" standard must be applied "in the context of the entire document," and concluded that a reasonable person was not likely to be deceived by the mailer because (i) the mailer contained language explaining that certain conditions had to be met for the recipient to win the sweepstakes, (ii) none of that disclosure language was "hidden or unreasonably small," (iii) that disclosure language appeared close to the representations it qualified, and (iv) "no reasonable reader could ignore" that disclosure language, rather a reasonable person "would be put on notice… by doing sufficient reading." *Id*. On that same basis, the Ninth Circuit concluded that the mailer was not false or misleading "when read reasonably and in context." *Id*.

A Southern District of New York case regarding whether a group of restaurants adequately disclosed a mandatory service charge on their menus is also instructive. *Dimond v. Darden Restaurants, Inc.*, 13 CIV. 5244 KPF, 2014 WL 3377105, at *1

(S.D.N.Y. July 9, 2014).  In *Dimond*, Olive Garden and Red Lobster restaurants in New York City applied an 18% surcharge that was disclosed on the restaurants' menus and bills:  "The menus at many of the Restaurants state that '[a]n 18% gratuity will be added to all guest checks.'" *Id*. (internal citations omitted).  A customer sued, alleging claims under New York's consumer protection statutes, including allegations that the surcharge as disclosed on the menus and the bills violated New York's prohibitions on unfair and deceptive practices and false and misleading advertising. *Id*.

In summarily rejecting Dimond's claims based solely on its review of the restaurants' surcharge disclosure on their menus and bills, the *Dimond* court relied heavily on an "on point" unpublished California decision holding that a mandatory fixed-percent service charge "did not violate a California state consumer protection law that prohibited business practices that were 'unlawful, unfair, or fraudulent'" because the subject menu included a disclosure stating that a 16% surcharge "will be added to food and beverage prices."[10]  *Dimond v. Darden Restaurants, Inc.*, 13 CIV. 5244 KPF, 2014 WL 3377105, at *8 (S.D.N.Y. July 9, 2014).  Following the same reasonable consumer standard employed by California courts, the *Dimond* court reasoned that the 18% surcharge was not deceptive or misleading because "the terms and conditions were completely and conspicuously indicated on the menu so that each patron was expressly informed as to the cost of dining at the Restaurants prior to voluntarily placing his or her order." *Dimond v. Darden Restaurants, Inc.*, 13 CIV. 5244 KPF, 2014 WL 3377105, at *8 (S.D.N.Y. July 9, 2014).[11]

---

[10] In compliance with California Rule of Court 8.1115(a), Noble House does not cite to or rely upon the unpublished California appellate decision that formed the primary basis for *Dimond*'s analysis and holding; rather, Noble House cites *Dimond* as authority that should be given persuasive weight due to the *Dimond* court's acknowledgement of the similarities between New York and California law with regard to determining whether a business practice is unfair or deceptive.

[11] Courts across the country have similarly rejected challenges to surcharges where those charges are adequately disclosed.  *See, e.g., Sand v. Ticketmaster–N.Y., Inc.*, 207 A.D.2d 687, 687, 616 N.Y.S.2d 362 (1st Dep't 1994) ("such fees are always disclosed… the challenged business practices do not violate the prohibition against deceptive business practices… since the record shows that these practices are fully

20

The undisputed facts demonstrate that the Surcharge Disclosures on the Signs, the Menu, and the Bill are each clear and conspicuous.  The framed Signs contain nothing but the Surcharge Disclosure, and are prominently displayed at the host stand as well as other areas of the Restaurants, especially areas where customers are most likely to wait before being seated for a meal.  The Menu contains a Surcharge Disclosure on the first page in offset text that is the same size font as the other Menu items.  As the Ninth Circuit has held, a reasonable customer is presumed to have read the entire Menu, making the reasonable customer no less likely to read the Surcharge Disclosure than he or she is to read the various food and beverage items on the Menu. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289-290 (9th Cir. 1995).   The same is true for the Bill, which contains a Surcharge Disclosure in offset text that is the same size font as the other items on the Bill, such that the reasonable customer is likely to read the Surcharge Disclosure again when he or she reads the entire Bill.  There is nothing unfair or deceptive about these disclosure practices.

While *Italian Colors* involved surcharges imposed by merchants for using credit cards rather than surcharges imposed by restaurants for service, the Ninth Circuit's conclusion that the credit card surcharges at issue in *Italian Colors* were "not misleading" is highly relevant to the Court's analysis of the Surcharge in this case:  "To be sure, credit card surcharges can be deceptive, especially if they are imposed surreptitiously at the point of sale… But nothing in the record suggests that plaintiffs desire to impose credit card surcharges in this way. To the contrary, plaintiffs' declarations all state that plaintiffs want to *communicate*, not conceal, credit card surcharges."  *Italian Colors*, 878 F.3d at 1176-77.  Here too, Noble House's intention has always been to communicate, not conceal, the Surcharge.  *See*

disclosed prior to [the sale of tickets].") (internal quotation marks omitted); *Lewis v. Hertz Corp.*, 181 A.D.2d 493, 494, 581 N.Y.S.2d 305 (1st Dep't 1992) ("[T]he challenged business practices [do not] violate the prohibition against deceptive business practices… since the record shows that these practices are fully disclosed."); *Shvarts v. Budget Grp., Inc.*, 81 Cal. App. 4th 1153, 1160, 97 Cal. Rptr. 2d 722 (2000) (public not "likely to be deceived" by a uniform rental agreement that included disclosures regarding fuel surcharges).

SOF-3–8.  Noble House's disclosure practices (Signs, Menu, Bill) align with its good faith intent.

In the State Court Action, after holding that restaurant surcharges are not inherently unlawful, Judge Taylor closely examined Galaxy Taco's surcharge disclosures, finding that the restaurant "made adequate and non-misleading disclosures about the surcharge, thus all claims in the [complaint] fail."  *Vespi v. Galaxy Taco*, No. 2017-17791 at 10.  In support of his conclusion that the surcharge was adequately disclosed and non-misleading, Judge Taylor considered that (1) Galaxy Taco "posts in clear, unambiguous language" a disclosure notice in a sign at the point of entry and on its menu "notifying the guests that a 3% surcharge will be added," (2) Galaxy Taco's surcharge disclosure language was similar to language used at "restaurants in San Francisco and Los Angeles which had been charging a surcharge 'for quite a long time,'" (3) Galaxy Taco "did not calculate and impose the surcharge as a percentage of each item's price, but instead added 3% to the subtotal of the entire bill, pre-tax," and (4) when the plaintiff visited Galaxy Taco, there was a "framed surcharge notice on the host stand" and the plaintiff "ordered from a menu that had a surcharge notice in blue color" offset at the bottom of the menu.  *Id.*

Noble House's Surcharge and related disclosure practices at issue in this case align perfectly with Galaxy Taco's surcharge disclosure practices and the State Court Ruling.  First, like Galaxy Taco, Noble House has a framed Sign at its host stand disclosing the Surcharge; in fact, Noble House places additional Signs in bar, lounge, and dining areas.  SOF-4.  Second, Noble House's Surcharge Disclosure language ("A 3.5% surcharge will be added to all Guest checks to help cover increasing labor costs and in our support of the recent increases in minimum wage and benefits for our dedicated Team Members") is similar to Galaxy Taco's surcharge disclosure language ("A 3.5% surcharge will be added to each bill to help cover increasing operations and labor costs").  SOF-5.  Third, like Galaxy Taco, Noble House "d[oes] not calculate and impose the surcharge as a percentage of each item's price, but

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on All Issues

instead add[s] 3[.5]% to the subtotal of the entire bill, pre-tax." SOF-6.  Fourth, both the plaintiff in *Galaxy Taco* and Plaintiff here ordered from a menu that contained a surcharge disclosure offset in colorful text in the same size font as the other items on the Menu.  *Compare* SOF-5 (Menu) with SOF-18 (Galaxy Taco menu).

      2.     The Surcharge Disclosure is Truthful and Complete.

To establish that the Surcharge Disclosure is false or misleading, Plaintiff bears the burden of showing "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *see also Brod v. Sioux Honey Ass'n, Co-op*, 927 F.Supp.2d 811, 828 (N.D. Cal. 2013) (plaintiff must show "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.").  Plaintiff's claims predicated on the Surcharge Disclosure being false or misleading fail as a matter of law because the Surcharge Disclosure is truthful and complete.

First, the Surcharge Disclosure does not contain any false statements; rather, it truthfully explains how the Surcharge is added ("A 3.5% surcharge will be added to all Guest checks") and what the Surcharge is for ("to help cover increasing labor costs and in our support of the recent increases in minimum wage and benefits for our dedicated Team Members").  The *truth* of the Surcharge Disclosure is not subject to reasonable dispute; it is disclosed as a separate 3.5% charge and it is imposed as a separate 3.5% charge.  *See*, *e.g.*, SOF-6 (Plaintiff's Bill lists the Surcharge in the amount of $1.38, exactly 3.5% of her $39.50 subtotal for "items ordered").  And there is no dispute that Plaintiff was charged the 3.5% surcharge just as it was disclosed on the Signs, Menu, and Bill.

Second, the Surcharge Disclosure's express notice that a 3.5% charge will be added to all customers' bills also defeats Plaintiff's allegations that the Surcharge Disclosure is misleading.  A reasonable customer is not likely to misunderstand what

"[a] 3.5% surcharge will be added to all Guest checks" means. *See Rodriguez v. Cheesecake Factory Inc.*, 16CV2006JMAAKT, 2017 WL 6541439, at *4 (E.D.N.Y. Aug. 11, 2017) (plaintiff's claim that defendant-restaurant's disclosure of a fixed-percent charge was "materially misleading" failed because "Only the most rudimentary math skills would be necessary… it is simply not plausible that reasonable consumers lack these skills."); *see also Vespi v. Galaxy Taco*, No. 2017-17791 at 10 (Galaxy Taco's surcharge disclosure was "adequate and not mis-leading"); SOF-18 (Galaxy Taco menu with surcharge disclosure stating "A 3.5% surcharge will be added to each bill to help cover increasing operations and labor costs").

## VI. <u>CONCLUSION</u>

For all of the foregoing reasons, Noble House respectfully requests that the Court deny Plaintiff's MPSJ, and grant summary judgment in Noble House's favor.

DATED:  January 18, 2019

LANE POWELL PC

By   */s/Heidi B. Bradley*
Heidi B. Bradley (SBN: 243403)
Darin M. Sands (SBN: 257363)
Telephone: 206.223.7000
Facsimile: 206.223.7107
Attorneys for Defendant Noble House Hotels & Resort, Ltd.

Defendant Noble House's Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on All Issues