1  **KAZEROUNI LAW GROUP, APC**
2  Abbas Kazerounian, Esq. (SBN: 249203)
   ak@kazlg.com
3  245 Fischer Avenue, Suite D1
   Costa Mesa, California 92626
4  Telephone: (800) 400-6808
   Facsimile: (800) 520-5523
5
6  [Additional Attorneys On Signature Page]
7
   Attorneys for Plaintiff,
8  Kathleen Holt
9
10         **UNITED STATES DISTRICT COURT**
11        **SOUTHERN DISTRICT OF CALIFORNIA**

12

| KATHLEEN HOLT, individually and on behalf of all others similarly situated, | Case No.: 17-CV-02246-MMA-BLM |
|---|---|
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT NOBLE HOUSE'S CROSS-MOTION FOR SUMMARY JUDGMENT ON ALL ISSUES** |
| v. | |
| NOBLE HOUSE HOTELS & RESORT, LTD. d/b/a NOBLE HOUSE HOTELS & RESORT, LTD. LP; and DOES 1 to 25, inclusive, | **Date:** March 11, 2019 **Time:** 2:30 p.m. **Place:** Courtroom 3D **Judge:** Hon. Michael M. Anello |
| Defendants. | [Filed concurrently with Declaration of Abbas Kazerounian; Declaration of Jason A. Ibey; Declaration of Joshua B. Swigart; Declaration of Robert L. Hyde; Declaration of Kathleen Holt] |

*(left margin, vertical)* **Kazerouni Law Group, APC** Costa Mesa, California

## **TABLE OF CONTENTS**

Pᴀɢᴇ

**TABLE OF AUTHORITIES**…………………………………………..……...iii

**I. INTRODUCTION** ........................................................................... 1

**II. THE COURT SHOULD DISREGARD DEFENDANT'S UNFOUNDED SUGGESTION THAT PLAINTIFF MIGHT HAVE BEEN AWARE OF THE SURCHARGE PRACTICE PRIOR TO DINING AT THE RESTAURANT** ................................................................... 2

**III. DEFENDANT MISCHARACTERIZES THE SURCHARGE AS A "SERVICE" SURCHARGE RATHER THAN A SURCHARGE ON THE RESTAURANT FOOD AND BEVERAGES** ........................... 3

A. The Menu Items Are Products or Goods Covered by the CLRA ............... 3

B. The Restaurant Surcharge Imposed by Noble House is a Surcharge on the Food and Drinks, Not a Separate Service Surcharge ........................... 7

C. The Case Law Relied Upon by Defendant Is Misplaced ........................... 9

D. The Restaurant Menus Are Advertisements ............................................... 9

**IV. THE SURCHARGE PRACTICE IS A *PER SE* VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT** ................................. 12

**V. WHETHER THE ADVERTISED MENU PRICING IS FALSE OR MISLEADING IS A QUESTION OF FACT** ........................... 14

A. The Real Question Is Whether The Advertised Pricing of the Food and Beverages Is False or Misleading ............................................................ 14

B. Ms. Holt Was Reasonably Misled by Defendant's Surcharge Practice, As Would Be the Case for a Reasonable Consumer ................................ 14

1. Defendant's Reliance on *Freeman* is Misplaced in Light of the Particular Facts and Context ................................................................ 17

**VI. DEFENDANT IS NOT ENTITLED TO AN AFFIRMATIVE DEFENSE** ........................................................................................ 19

A. Defendant Is Not Entitled to the Claimed Safe Harbor Defense ............... 19

1. Defendant Has Waived the Safe Harbor Defense By Not Asserting It in Its Answer ................................................................................... 19

2. If the Court Considers the Safe Harbor Defense, the Court Should Rule That It Is Without Merit ............................................................. 20

B. Defendant's First Amendment Argument Fails ......................................... 22

**VII. CONCLUSION** ............................................................................... 25

Kazerouni Law Group, APC
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Arizona v. California,*
   530 U.S. 392 (2000) ............................................................ 20

*Ballentine v. Las Vegas Metro. Police Dep't,*
   2017 U.S. Dist. LEXIS 133777 (D. Nev. 2017) ................................ 23

*Berger v. Home Depot USA, Inc.,*
   741 F.3d 1061 (9th Cir. 2014) ............................................... 19

*Bogart v. Glenmark Generics, Inc.,*
   2014 U.S. Dist. LEXIS 158055 (S.D. Cal. 2014) ............................... 5

*Brockey v. Moore.,*
   107 Cal. App. 4th 86 (2003) ................................................ 19

*Chapman v. Skype Inc.,*
   220 Cal. App. 4th 217 (Cal. Ct. App. 2013) ................................. 17

*Cortina v. Goya Foods, Inc.,*
   94 F. Supp. 3d 1174 (S.D. Cal. 2015) ....................................... 10

*Engalla v. Permanente Medical Group, Inc.,*
   15 Cal. 4th 951 (1997) ..................................................... 17

*Faigman v. AT&T Mobility LLC,*
   2007 U.S. Dist. LEXIS 52192 (N.D. Cal. 2007) ............................... 11

*Freeman v. Time, Inc.,*
   68 F.3d 285 99th Cir. 1995) ............................................ 17, 18

*Gaines v. Stolc.,*
   2012 U.S. Dist. LEXIS 19412 (C.D. Cal. 2012) ............................... 20

*Gullins v. Car Max Auto Superstores Cal., LLC,*
   2015 U.S. Dist. LEXIS 83070 (C.D. Cal. 2015) ............................... 17

*Haskins v. Symantec Corp.,*
   U.S. Dist. LEXIS 169865 (N.D. Cal. 2013) ................................. 5, 6

*Hawthorne v. Umpqua Bank*,
    2013 U.S. Dist. LEXIS 152697 (N.D. Cal. 2013) ............................................ 11

*Holt v. Noble House Hotels & Resort, Ltd.*,
    2018 U.S. Dist. LEXIS 10955 (S.D. Cal. Jan. 23, 2018) ...................................... 6

*Holt v. Noble House Hotels & Resort, Ltd.*,
    2018 U.S. Dist. LEXIS 177940 (S.D. Cal. Oct. 16, 2018)............................*passim*

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) .................................................................. 4

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ........................................................................................ 17

*Italian Colors Rest. v. Becerra*,
    878 F.3d 1165 (9th Cir. 2018) ....................................................................... 24, 25

*Jones v. Miles*,
    656 F.2d 103 (1981) ............................................................................................ 20

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (Cal. 2002) ............................................................................... 17

*Kazi v. State Farm Fire & Cas. Co.*,
    24 Cal. 4th 871 (2001).......................................................................................... 6

*Lavie v. Proctor & Gamble Co*,
    105 Cal. App. 4th 496 (Cal. Ct. App. 2003) ....................................................... 17

*Lazar v. Kroncke.*,
    862 F.3d 1186 (9th Cir. 2017)............................................................................ 23

*Microsoft Corp. v. Baker*,
    135 S. Ct. 1702 (2017) ....................................................................................... 19

*Morrison v. Mahoney*,
    399 F.3d 1042 (9th Cir. 2005)............................................................................ 20

*Navellier v. Sletten*,
    262 F.3d 923 (9th Cir. 2001).............................................................................. 13

**Kazerouni Law Group, APC**
Costa Mesa, California

*Pelman v. McDonald's Corp.*,
  237 F. Supp. 2d 512 (S.D.N.Y. 2003) ........................................................ 4

*Reilly v. Inquest Technology, Inc.*,
218 Cal. App. 4th 536 (2013) ..................................................................... 5

*Ries v. Ariz. Bevs. USA LLC*,
  2013 U.S. Dist. LEXIS 46013 (N.D. Cal. 2013) ................................... 17

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) .................................................................... 13

*Searle v. Wyndham Int'l*,
  102 Cal. App. 4th 1327 (Cal. Ct. App. 2002) .................................... 9, 25

*Visa Int'l Serv. Ass'n v. Bankcard Holders of Am.*,
784 F.2d 1472 (9th Cir. 1986) .................................................................... 8

*Wang v. Massey Chevrolet*,
  97 Cal. App. 4th 856 (2002) ..................................................................... 11

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008) .................................................................... 17

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) .................................................................. 17

*Wixon v. Wyndham Resort Dev. Corp.*,
  2008 U.S. Dist. LEXIS 120062 (N.D. Cal. 2008) ................................... 6

*Zamani v. Carnes*,
  491 F. 3d 990 (9th Cir. 2007) ................................................................... 13

**STATUTES**

Cal. Labor Code § 350(e) ............................................................................. 21

22 Code Regs. § 927-1 .................................................................................. 21

47 C.F.R. § 64.1200(f)(1) ............................................................................ 10

Santa Monica Municipal Code § 4.62.040(b) ............................................. 22

Minn. Stat. § 325G.051(1)(a) ...................................................................... 14

**Kazerouni Law Group, APC**
Costa Mesa, California

CONSUMERS LEGAL REMEDIES ACT

Cal. Civ. Code §§ 1750, *et seq.*............................................................*passim*

Cal. Civ. Code § 1755.................................................................. 10

Cal. Civ. Code § 1760.................................................................. 11

Cal. Civ. Code § 1761(a) ............................................................... 5

Cal. Civ. Code § 1770(a) ............................................................... 5

Cal. Civ. Code § 1770(a)(1)............................................................ 5

Cal. Civ. Code § 1770(a)(2)............................................................ 5

Cal. Civ. Code § 1770(a)(4)............................................................ 5

Cal. Civ. Code § 1770(a)(5)............................................................ 5

Cal. Civ. Code § 1770(a)(6)............................................................ 5

Cal. Civ. Code § 1770(a)(7)............................................................ 5

Cal. Civ. Code § 1770(a)(8)............................................................ 5

Cal. Civ. Code § 1770(a)(9)............................................................ 5

Cal. Civ. Code § 1770(a)(10)........................................................... 5

Cal. Civ. Code § 1770(a)(20)....................................................*passim*

Cal. Civ. Code § 1770(a)(21)........................................................... 5

Cal. Civ. Code § 1770(a)(25)........................................................... 5

Cal. Civ. Code § 1770(a)(26)........................................................... 5

Cal. Civ. Code § 1770(a)(27)........................................................... 5


CALIFORNIA'S UNFAIR COMPETITION LAW

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ....................................... 1, 17


CALIFORNIA'S FALSE ADVERTISING LAW

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ....................................... 1, 17

Kazerouni Law Group, APC
Costa Mesa, California

# RULES

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 5.1 ................................................................................. 23

Fed. R. Civ. P. 30(b)(6) .......................................................................... 7

Fed. R. Civ. P. 56(d). ................................................................ 8, 21, 22

## OTHER

Dayna B. Royal, *The Skinny on the Federal Menu-Labeling Law & Why it Should Survive a First Amendment Challenge*,
   10 FIRST AMEND. L. REV. 140 (Fall 2011) ................................... 10, 18

**Kazerouni Law Group, APC**
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

# I.    INTRODUCTION

Following the filing by plaintiff Kathleen Holt ("Ms. Holt" or "Plaintiff") of her motion for partial summary judgment as to liability for violations of the Consumer Legal Remedies Act ("MPSJ," Dkt. No. 69) against defendant Noble House Hotels & Resort, LTD. ("Noble House" or "Defendant"), Noble House filed a Cross-Motion for Summary Judgment on All Issues ("Cross-MSJ," Dkt. No. 75).

Plaintiff filed suit against Noble House due to its unlawful restaurant surcharge practice which was implemented in February of 2017, taking advantage of California consumers by intentionally choosing to include a surcharge disclosure at the bottom of the restaurant menus instead of increasing the advertised prices of the food and drinks items. Following a motion for class certification, the Court has certified two classes, an injunctive relief class and a restitution class. *Holt v. Noble House Hotels & Resort, Ltd.*, No. 17cv2246-MMA (BLM), 2018 U.S. Dist. LEXIS 177940, at *33 (S.D. Cal. Oct. 16, 2018).[1]

The Cross-MSJ should be denied in its entirety. First, Noble House's surcharge practice is a *per se* violation of California's Consumers Legal Remedies Act, California Civil Code § 1770(a)(20). Second, there is a factual question whether Noble House has violated California Business and Professions Code § 17200, *et seq.* and California False Advertising Law § 17500, *et seq.* through false or advertising of the prices of its menu items at the restaurants managed by Noble House, based on the reasonable consumer standard. Third, Noble House is not entitled to the two asserted affirmative defenses because i) Noble House did not plead a safe harbor defense and such defense is without merit, and ii) there is no First Amendment violation where the CLRA passes intermediate scrutiny.

---

[1] Ms. Holt and Class Counsel are continuing the process of obtaining discovery from Noble House as well as third parties in order to provide class notice. *See generally*, 2018 U.S. Dist. LEXIS 177940, at *6, n.2; *see also*, Dkt. No. 74 (order permitting Noble House to delay production of customer credit card receipts until after a ruling on dispositive motions).

Kazerouni Law Group, APC
Costa Mesa, California

Plaintiff concurrently submits a response to Defendant's separate statement of undisputed facts.  Plaintiff also submits a statement of further undisputed material facts, in opposition to the Cross-MSJ. Furthermore, Plaintiff concurrently submits evidentiary objections to the separate statement of facts from Defendant, in a separate document, pursuant to Chamber Rule IV. Plaintiff also objects to Defendant's request for judicial notice.

In sum, there is no basis to grant Defendants' Cross-MSJ. Defendant is wrong on the legal issues and there is a factual question as to whether the menu advertising is false or misleading under the UCL and FAL under the reasonable consumer standard. Summary judgment should be granted for Plaintiff as to liability of Defendant under the CLRA as a *per se* violation (*see* Dkt. No. 69-1, 8:12-9:3).

## II.   THE COURT SHOULD DISREGARD DEFENDANT'S UNFOUNDED SUGGESTION THAT PLAINTIFF MIGHT HAVE BEEN AWARE OF THE SURCHARGE PRACTICE PRIOR TO DINING AT THE RESTAURANT

In an effort to distract from the actual legal questions in this case, Noble House argues, based on conjecture, that Ms. Holt might have known about the surcharge practice of Noble House prior to her dining experience on August 6, 2017 because attorney Robert Hyde had been counsel on other lawsuits filed against restaurants for alleged unlawful surcharge practices.[2]

First, in sworn testimony, Ms. Holt testified at deposition, and by declaration, that she was not aware of the surcharge practice until she received her bill after consuming her meal on August 6, 2017. [Statement of Facts ("SOF"), Nos. 12, 28, 31, 32, 33, 34, 42.]   Second, Noble House recently took the extreme step of deposing attorney Robert Hyde (who is one of the named counsel for Ms. Holt in this action, but is not Class Counsel) and again learned from Mr. Hyde under oath

---

[2] Whether Mr. Hyde has been counsel for other parties who filed lawsuits before for after August 6, 2017 for their surcharges practice is irrelevant. Mr. Hyde is not a party to this action, nor can lawsuits filed against restaurants other than those managed by Noble House have any bearing on any defense to Noble House.

that it was Ms. Holt who chose the Acqua restaurant (SOF No. 43), there were no discussions about a surcharge until after the bill was received (SOF No. 48), and Mr. Hyde was not aware of the surcharge practices at the Acqua restaurant prior to Ms. Holt receiving the bill (SOF No. 48).

There is no basis for Defendant's speculation in challenging standing without actually making that argument outright. Plaintiff does have standing to pursue her claims and Defendant has not, and cannot, show otherwise. SOF Nos. 9-11, 28-34, 36, 40. Even this Court has recognized Plaintiff's Article III standing in granting class certification. *Holt*, 2018 U.S. Dist. LEXIS 177940, at *23. Therefore, the Court should disregard Defendant's speculative contention of lack of standing.

## III. DEFENDANT MISCHARACTERIZES THE SURCHARGE AS A "SERVICE" SURCHARGE RATHER THAN A SURCHARGE ON THE RESTAURANT FOOD AND BEVERAGES

Defendant's principal challenge to the claims under § 1770(a)(20) of the CLRA is that it is inapplicable to the type of surcharge here. First, Defendant argues that the restaurant surcharge is a "service surcharge" and not a surcharge on the food and drinks. However, Defendant mischaracterizes the nature of the surcharge. It is a surcharge on the food and drink items, not on services. Next, Defendant argues that § 1770(a)(20) of the CLRA only applies to "products" and not services, and that the food and drink items are not products or goods.  Although Defendant is partially correct in that such section of the CLRA does not apply to services, Defendant is wrong that the food and drinks are not covered by the CLRA as products or goods. Lastly, Defendant makes no meaningful argument that the restaurant menus are not advertisement covered by the CLRA, and has therefore forfeited any right to contend otherwise, and such argument should be deemed conceded by Defendant.

### A. The Menu Items Are Products or Goods Covered by the CLRA

Section § 1770(a)(20) of the CLRA is directly applicable to the restaurant surcharges imposed by Noble House. First, Noble House does not provide any

meaningful contention that the food and drink items are not products or goods covered by this section of the CLRA. Defendant merely cites to an unpublished state court opinion in *Vespi v. Galaxy Taco Inc.* from California Superior Court Judge Timothy Taylor, which unpublished opinion is not citable (*see* Plaintiff's evidentiary objections) and was also wrongly decided. The food items purchased by Ms. Holt (the Chicken Quesadilla, for example) are products under § 1770(a)(20).[3]

The CLRA does not define the word "product," however, the menu items (food and drinks) sold by the restaurant are products under the statute. According to Merriam-Webster online dictionary, the word "product" (a noun) means: "something produced" or "something (such as a service) that is marketed or sold as a commodity" ["product." Merriam-Webster.com, 2018. https://www.merriam-webster.com/dictionary/product (December 4, 2018)). To produce (a verb) in turn means "to cause to have existence or to happen," "to give being, form or shape" or "to compose, create, or bring out by intellectual or physical effort…" ("produced." Merriam-Webster.com, 2018. https://www.merriam-webster.com/dictionary/product (December 4, 2018)].

The chicken quesadilla purchased by Ms. Holt was produced by the Acqua restaurant through employment of skilled laborers, in its finished state, in a form desired by Ms. Holt (a consumer) who ordered it from the restaurant menu (SOF Nos. 1, 8, 9-10, 11, 31, 33, 44, 58). While the quesadilla may not have been mass-produced for purposes of packing and then shipping to consumers (such as for retail), it was prepared by the restaurant to be consumed (Nos. 1, 8, 9-10, 11, 31, 33, 44, 58), and is created to be sold commercially by the restaurant to its customers (SOF Nos. 23, 29, 31, 35, 44), whether the consumer dines in or take the meal to go.

In the case of *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. June 30, 2011), Judge Marilyn L. Huff denied a Rule 12(b)(6) motion to dismiss a CLRA

---

[3] *See generally*, *Pelman v. McDonald's Corp.*, 237 F.Supp.2d 512, 523 (S.D.N.Y. 2003) (referring to McDonalds restaurant food as "products").

Kazerouni Law Group, APC
Costa Mesa, California

claim involving alleged misrepresentations concerning a food spread (i.e., Nutella), showing that the CLRA applies to food products. Although the Nutella product was apparently prepared for retail sale, there is no principled reason to limit the application of the CLRA to items intended for retail sale, to the exclusion of restaurants and other establishments who prepare and sell food products (such as baked goods). *See e.g.*, *Reilly v. Inquest Technology, Inc.,* 218 Cal.App.4th 536, 550 (2013) (declining to read words into the Independent Wholesale Sales Representatives Contractual Relations Act of 1990 to limit application of "product" to only a finished retail product or consumer good, where that statute referred only to "a product tangible or intangible," Cal. Civ. Code § 1738.12).[4]

On occasion, defendants in CLRA cases have attempted to limit the application of the statute to only certain products. *See Bogart v. Glenmark Generics, Inc.*, No. 14-CV-778 LAB DHB, 2014 U.S. Dist. LEXIS 158055, at *7-8 (S.D. Cal. Nov. 5, 2014) However, the *Bogart* Court held that "pharmaceutical products" were covered by the CLRA, reasoning that "[t]he CLRA was created to protect consumers from unfair and deceptive business practices," and "[i]n liberally construing the CLRA, as California case law requires, the Court finds that birth control pills are tangible chattels bought primarily for personal use. As such, birth control pills are goods which fall within the CLRA's protections." *Bogart*, 2014 U.S. Dist. LEXIS 158055, at *7-8.

In ruling that pharmaceutical products were covered by the CLRA under Sections 1770(4) and (7), the *Bogart* Court looked to the defined term "goods" (Cal. Civ. Code § 1761(a)).[5] Section 1770(20) refers to "products," not "goods,"[6]

---

[4] "The 'tangible chattels' language in the CLRA's definitions dates from 1970." *Haskins v. Symantec Corp.*, No. 13-cv-01834-JST, 2013 U.S. Dist. LEXIS 169865, at *28 (N.D. Cal. Dec. 1, 2013), citing Stats.1970, Ch. 1550, § 1.

[5] The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes …" Cal. Civ. Code § 1761(a).

[6] The CLRA often refers to "good" or "goods". *See* Cal. Civ. Code § 1770(a)(1),

Kazerouni Law Group, APC
Costa Mesa, California

however, if this Court were to look to the defined term "goods" in ruling on whether the restaurant food and drink items are "products" under the CLRA, the food items such as the chicken quesadilla were purchased by Ms. Holt primarily for personal use while dining at the Acqua restaurant where Ms. Holt consumed the food (SOF Nos. 1, 9, 10, 11, 23, 29, 31, 33, 34, 44), and are therefore goods. As explained above, the CLRA is to be interpreted broadly to protect consumers, which further supports a finding that the food and drink items purchased from the restaurant by Ms. Holt and the Class Members are products under the CLRA.

The food and beverages at the restaurants managed by Noble House are surely tangible chattels (*Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 880 (2001)) because they can be touched, smelled and tasted (SOF Nos. 23, 31, 32, 49). *See e.g.*, *Wixon v. Wyndham Resort Dev. Corp.*, No. C 07-02361 JSW, 2008 U.S. Dist. LEXIS 120062, at *14 (N.D. Cal. Apr. 18, 2008) (finding that timeshare points are neither goods nor services because they could not be touched, seen, or smelled). Moreover, the *Haskins* Court counseled against a limited definition of tangible chattels. *Haskins v. Symantec Corp.*, 2013 U.S. Dist. LEXIS 169865, at *30 (N.D. Cal. Dec. 1, 2013) ("But by slicing things that thinly, many of even the most tangible of commodities could be characterized as delivery mechanisms for the transmission of intangible things. No one would seriously dispute that a book is a 'tangible chattel,' despite the fact that the physical object itself is merely a delivery mechanism for the transmission of information.")

Lastly, in a prior ruling in this action, this Court has noted that "Noble House further asserts that the surcharge does not violate the CLRA because it 'is not an addition to the price of the 'product' (*i.e.*, the food or beverage), as the statute prohibits; rather it is a separate charge for service.'" *Holt v. Noble House Hotels & Resort, Ltd.*, No. 17cv2246-MMA (BLM), 2018 U.S. Dist. LEXIS 10955, at *12

(2), (4), (5), (6), (7), (8), (9), (10), (21).  The CLRA also refers to the undefined term "product" in four places. Cal. Civ. Code § 1770(a)(20), (25), (26) and (27).

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

1  (S.D. Cal. Jan. 23, 2018). Thus, even Noble House has referred to the food and

2  beverages as "product[s]". Dkt. No. 6-1, 7:20-23.

3       Thus, the purchased food and beverage items ordered from the restaurant

4  menus constitute products or goods for purposes of § 1770(20) of the CLRA.

5

6       **B.    The Restaurant Surcharge Imposed by Noble House Is a Surcharge on the Food and Drinks, Not a Separate Service Surcharge**

7       Defendant now contends that the surcharge is a "service charge"[7] that is not

8  covered by the CLRA (Def.'s Memo., 1:3), but Defendant is wrong for several

9  reasons. First, the automatic surcharge imposed applies to the food and beverages

10 listed in the menus, and the ultimate amount of the surcharge is based on the price

11 of the food and beverages ordered (SOF No. 33, 35, 40, 50). The food prices are

12 determined by the food and beverage manager or executive chef (SOF No. 58), the

13 customer bill has a line item for surcharge charges for food or beverages (SOF No.

14 6).  Significantly, the surcharge is not effected by how much time the serve spends

15 at the table, nor on how long it takes to prepare the meal (SOF No. 50). Noble

16 House also admits that the food and beverage items are not services under the

17 CLRA (SOF No. 51), which further shows they are products or goods, as they must

18 be either products/goods or services. The surcharge is simply not based on services.

19 Noble House even charges the surcharge on takeout orders (SOF No. 57).

20      Second, Defendant's Rule 30(b)(6) representative testified that Noble House

21 considered simply raising the prices of the menu items but ultimately decided to not

22 raise prices and instead impose a 3.5% surcharge, which further shows that the

23 surcharge applies to the food and beverage items (SOF No. 23-25).

24      Third, the consumer pays taxes on the 3.5% surcharge (SOF Nos. 11, 13, 31,

25 33), also showing that the surcharge applies to the food and beverage items, not

26 services. When the California State Board of Equalization refers to surcharge added

27

28 [7] In opposing class certification, Noble House never referred to the surcharge as a "service charge" or service surcharge (Dkt. No. 50).

to "any taxable sale" (Dkt. No. 75-26), it is speaking of the sale of food and drink, not the sale of restaurant services.

Lastly, the claimed purpose[8] of the surcharge by Defendant is not relevant because Judge Major ruled in this action that how Noble House uses the revenue from the surcharge is not relevant to a claim or defense. Dkt. No. 47, 8:21-22 ("how Defendant spent the collected surcharge is not relevant to the claims at issue in this litigation.")  However, should this Court determine that the purpose of the surcharge is relevant, Plaintiff should be granted relief under Fed. R. Civ. P. 56(d)[9] to obtain the discovery previously sought by Plaintiff but denied by Judge Major, i.e., financial evidence of how Defendant uses the revenue from the surcharges (*see* Dkt. No. 47). Kazerounian Decl., ¶ 7; *see also*, Dkt. No. 47.

Plaintiff should be permitted to obtain such evidence in order to show how Defendant actually uses the hundreds of thousands of dollars in revenue from the surcharges (SOF No. 35), to see whether it supports or contradicts Defendant's claimed purpose of the surcharge (i.e., whether the revenue from the surcharge is actually used to cover increased wages or Defendant pockets that revenue for itself). Whether Defendant is misleading consumers in this regard goes to whether the advertised menu pricing is false or misleading due to the claimed purpose of the surcharge in the surcharge disclosure itself. Such evidence is also relevant to the utility of Defendant's surcharge practice under the UCL claim.

---

[8] Defendant contends that the purpose of the surcharge is to help cover increasing labor costs and in its support of the recent increases in minimum wage and benefits for their staff. *See* Def.'s Memo., 3:6-7.

[9] Under Fed. R. Civ. P. 56(d), "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *See also*, *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986).

Kazerouni Law Group, APC
Costa Mesa, California

**C.      The Case Law Relied Upon by Defendant is Misplaced**

The case law cited by Defendant in support of the argument that the surcharge practice is lawful is misplaced. First, the *Vespi* state court decision, as mentioned above, is uncitable unpublished opinion. It was also incorrectly decided because i) the menus are advertisements, ii) the food and beverages are products or goods, iii) the menu pricing is misleading, and iv) the tax regulations and the absence of suit against Noble House by the government does not mean a violation of the § 1770(a)(20) of the CLRA did not occur, as argued throughout this brief.

This Court has already distinguished *Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327 (Cal. Ct. App. 2002), in its October 16, 2018 Class Certification Order. 2018 U.S. Dist. LEXIS 177940, at *9, n.3. This Court explained in this very action that *Searle* (and other room service charge cases) are inapposite (*Id.*), as they do not address the particular legal issue at hand, particularly when Noble House does not impose a surcharge on room service (SOF No. 56).

*Michaelson*, which is relied upon by Noble House, which is another uncitable state court opinion (*see* Plaintiff's Evidentiary Objections), is comprised of a single paragraph and concerned a demurrer at the pleading stage. It did not hold that a surcharge practice such as Noble House's is not a violation of the CLRA. Also, at issue was whether it was unfair to charge one price for food/drink, another prices for services, and another for delivery, where the complaint alleged those charges were disclosed.  Thus, *Michaelson* is uncitable and also inapplicable.

Therefore, the 3.5% surcharge is not a service surcharge but rather a surcharge on the menu items sold by Noble House, which means the § 1770(a)(20) of the CLRA does apply to the restaurant surcharge on the products/goods (i.e., the restaurant food and beverages).

**D.      The Restaurant Menus Are Advertisements**

Noble House does not meaningfully argue that the restaurant menus are not advertisements under the CLRA, referencing the unpublished and uncitable *Vespi*

Kazerouni Law Group, APC
Costa Mesa, California

decision.   However, in an abundance of caution, Plaintiff explains below why the menus at the restaurants are advertisements. SOF Nos. 3, 5, 8, 10, 31, 32, 44, 46, 58.

The CLRA does not define "advertisement," but the language of various sections of the statute clearly indicate a broad construction. The relevant subsection of the statute expressly contemplates advertisements such as shelf tags, displays and media advertising. Cal. Civ. Code § 1770(a)(20). While there is a limited exception from liability in that subsection that is not applicable here (concerning in-store advertising by businesses open only to member or cooperative organizations organized pursuant to Division 3 of the Corporations Code), the statutory sub-section notably refers to "in-store advertising" (Cal. Civ. Code § 1770(a)(20)). Moreover, § 1755 of the CLRA refers to media types such as "newspapers, magazines, broadcast stations, billboards and transit ads" in referring to the standard to be applied to owners or employees of an advertising medium. Cal. Civ. Code § 1755. The restaurant menus are akin to a shelf tag or display indicating the pricing. The menus here indicate to potential customers how much they will be charged for a food or drink item, but not the price inclusive of a 3.5% surcharge (SOF Nos. 8, 31).

For other consumer protection statutes, the term "advertisement" has been defined broadly, such as for the Telephone Consumer Protection Act, defining such word to mean "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). Essentially, advertising is a means of communication with someone about a product or service, including restaurant menus. *See e.g.*, Dayna B. Royal, *The Skinny on the Federal Menu-Labeling Law & Why it Should Survive a First Amendment Challenge*, 10 FIRST AMEND. L. REV. 140, 150-151 (Fall 2011) ("Menus and menu boards are vehicles through which restaurants propose a commercial transaction - the purchase of food. Such speech offers food products for specific prices. To assist consumers in deciding whether to accept such offers, and which offers to accept, menus and menu boards contain relevant information about the products offered for sale,

Kazerouni Law Group, APC
Costa Mesa, California

including price and basic ingredients.") [10]

According to Merriam-Webster online dictionary, the word "advertise" (a verb) means: "to make something known," "to make publicly and generally known," "to announce publicly …" or "to call public attention to …" ("advertise." Merriam-Webster.com 2018.[11] Additionally, according to Black's Law Dictionary, the word "advertisement" means "Notice given in a manner designed to attract public attention," and gives as an example "information communicated to the public, or to an individual concerned, by means of handbills or the newspaper." ["Advertisement." The Law Dictionary, featuring Black's Law Dictionary free online legal dictionary, 2nd ed.[12]

The decision in *Faigman* is instructive because there the court denied a motion to dismiss where the plaintiff alleged reliance on misleading in-store notices concerning rebates which the court referred to as advertisements. *Faigman v. AT&T Mobility LLC*, 2007 U.S. Dist. LEXIS 52192, at *5 (N.D. Cal. July 17, 2007).

Lastly, the CLRA is to be interpreted broadly to protect consumers because it is a remedial statute. Cal. Civ. Code § 1760 ("This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."); *see also*, *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2013 U.S. Dist. LEXIS 153697, at *32 (N.D. Cal. Oct. 25, 2013); *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 869 (2002).

---

[10] *See generally*, *Cortina v. Goya Foods, Inc*., 94 F. Supp. 3d 1174, 2015 U.S. Dist. LEXIS 40159 (S.D. Cal. Mar. 19, 2015) (The CLRA was not preempted by federal law because consumer protection laws, *including laws regulating the proper marketing of food* … were within the states' historic police powers and therefore were subject to a presumption against preemption).

[11] https://www.merriam-webster.com/dictionary/advertise (December 4, 2018)).

[12] https://thelawdictionary.org/advertisement (November 30, 2018)].

Kazerouni Law Group, APC
Costa Mesa, California

Therefore, the restaurant menus easily constitute advertisements because they are designed to inform the potential consumer of the availability of products that may be purchased and the price of those food and beverage items.

## IV.   THE SURCHARGE PRACTICE IS A *PER SE* VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT

Taking into consideration the above analysis that shows the restaurant menus are advertisements, the food and drink items are products or goods covered by the CLRA, and the surcharge at issue is not a service surcharge but rather a surcharge on the price of the menu items, the surcharge practice of Defendant is a *per se* violation of § 1770(a)(20) of the CLRA. Defendant clearly and undisputedly did not state the required total price of the menu items inclusive of the 3.5% surcharge, despite that express requirement under the CLRA.[13]

Noble House's surcharge practice of charging a 3.5% surcharge on food and drink items without accounting for the surcharge in the advertised price of the items in the restaurant menus is *per se* unlawful under the CLRA, in that it violates Cal. Civ. Code § 1770(a)(20).  Under that provision of the CLRA, it is unlawful to:

> Advertis[e] that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product.

Cal. Civ. Code § 1770(a)(20).

In its menus, Noble House includes a disclosure at the bottom that it will charge a 3.5% surcharge, but that is not compliant with the CLRA because the

---

[13] Defendant does not argue that the pre-litigation requirement under the CLRA were not met. SOF Nos. 37-39; *see also*, Dkt. Nos. 69-24, 69-25, 69-26.

Kazerouni Law Group, APC
Costa Mesa, California

advertised menu items do not indicate the total price of the items (and in the *same* advertisement) when the 3.5% surcharge is taken into account. The total price is <u>not</u> set forth in the advertised menu prices (SOF No. 24). Cal. Civ. Code § 1770(a)(20).

Although the question of whether the advertised menu pricing is false or misleading is a factual question with regards to the UCL and FAL claims, based on a reasonable consumer standard, the Court may and should find that Defendant violated § 1770(a)(20) of the CLRA as a matter of law, given failure to comply with the requirement to state "<u>the total price is set forth in the advertisement</u> … in a size larger than any other price in that advertisement" (*id.*, emphasis added); for such failure by Noble House is essentially deemed to be false or misleading according to the express text of the statute.

Defendant's efforts to look to legislative history of the CLRA is misplaced for two reasons. First, the Court cannot look to legislative history to interpret the statute (including § 1770(a)(20)) unless Defendant has first argued and shown that some portion of that section is ambiguous, which is a condition precedent. *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 (9th Cir. 2009). Second, by not raising that argument, Defendant has forfeited the opportunity to argue that the CLRA is ambiguous. *See Navellier v. Sletten*, 262 F.3d 923, 948-49 (9th Cir. 2001) (an issue not supported by argument or citations and supporting documents is waived); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

However, if the Court does consider the legislative history, it only supports Plaintiff's position that the California Legislature was seeking to prevent misleading surcharges practices. Contrary to Defendant's contentions, the CLRA is not limited to supermarkets or economically disadvantaged communities (Def.'s Memo., pp. 10-11), nor should that be the case with a broad remedial statute covering any transaction intended to result or resulting in the sale or lease of goods or services to a consumer (Cal. Civ. Code § 1770(a)).

In sum, Defendant has not shown that the California Legislature intended to reduce § 1770(a)(20)'s protection to very limited circumstances not applicable here. That section applies broadly to protect California consumers and covers Noble House's restaurant surcharge practice. Therefore, the Court should reject Defendant's challenge to the CLRA claim and hold that Defendant has committed a *per se* violation of the CLRA.

## V.   WHETHER THE ADVERTISED MENU PRICING IS FALSE OR MISLEADING IS A QUESTION OF FACT

Defendant takes the position that the Court, not a jury, should decide whether Defendant's surcharge practice is false or misleading, and asks the Court to rule in its favor. However, the question of whether the advertisements are false or misleading under the UCL and FAL is a jury question.

### A.   The real question is whether the advertised pricing of the food and beverages is false or misleading

First, Defendant mischaracterizes Plaintiff's UCL and FAL claims when arguing that the surcharge disclosure itself is neither false or misleading. That is not the point.  Plaintiff argues that the advertised menu pricing is false or misleading, in light of the practice to add a 3.5% surcharge where Defendant did not state the total price of each menu item inclusive of the 3.5% surcharge (SOF No. 24, 50).

### B.   Ms. Holt was reasonably misled by Defendant's surcharge practice, as would be the case for a reasonable consumer

Ms. Holt was not aware of such surcharge practice until after she consumed her meal and received the bill that listed an amount of $1.38 as a surcharge (SOF Nos. 30-34). Ms. Holt had dined at the same Acqua restaurant before and was unaware of a surcharge being added to her bill (SOF Nos. 40, 43). Nor did the restaurant employee orally advise Ms. Holt before she ordered her meal that a 3.5% surcharge would be added, or any surcharge for that matter (SOF Nos. 34, 53). *See e.g.*, Minn. Stat. § 325G.051(1)(a) (allowing retailers to impose surcharges provided the "seller informs the purchaser of the surcharge both *orally at the time of sale* and by a sign conspicuously posted on the seller's premises") (emphasis added).

*Kazerouni Law Group, APC*
Costa Mesa, California

The surcharge disclosure language on the Acqua menu is on the first page of the menu but not the second page from which Ms. Holt ordered the Chicken Quesadilla (SOF Nos. 31-32, 34). Ms. Holt expected, and reasonably so, that she would be charged $16.00 for the Chicken Quesadilla ordered from the menu, not that she would have to pay 3.5% more than advertised next to that menu item (SOF No. 26-27, 31-34, 42, 47). Noble House admits that the surcharge practice is a new policy (SOF No. 23, 28, 40), and further that some nearby restaurants do not add a surcharge to the customer's bill (SOF No. 54).

Ms. Holt did not see the disclosure at the bottom of the menu on the first page that indicated a 3.5% surcharge would be added (SOF No. 31, 32, 34). There is no asterisk next to or near the advertised price of $16.00 for the Chicken Quesadilla on the second page of the menu,[14] nor did Noble House make any indication in close proximity to the price of that menu item that a surcharge would be added (SOF Nos. 31, 34). According to a manager at the Acqua restaurant (SOF No. 52), the staff at Acqua are not instructed to orally advise customers of the surcharge (SOF No. 53). Instead, Noble House unreasonably expects customers to be on the lookout for small signage and a disclosure at the bottom of the first page of the Acqua menu for Noble House's recently enacted practice (in February of 2017) of adding a 3.5% surcharge to the customer's bill, charging Ms. Holt $16.56 for the chicken quesadilla (pre-tax) rather than the listed $16. *See* SOF Nos. 3, 8, 27, 28, 31-32, 34, 47, 55.

The surcharge disclosure at the bottom of the first page of the menu (and the small signage in the restaurant) is easily overlooked by reasonable consumers who are accustomed to relying on the advertised prices they see in the printed menus when they sit down to enjoy a meal at the restaurants (SOF No. 3, 8, 24, 25, 27, 28, 32, 47, 55, 60). Noble House cannot even rely upon the signage in the restaurant (SOF No. 3) because the CLRA's § 1770(a)(20) requires the notice of the surcharge and the total price be in the same advertisement (SOF No. 4). Nor can Noble House

---

[14] Mr. Hyde ordered the soup and cheeseburger (SOF No. 49).

Kazerouni Law Group, APC
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

reasonably rely on the (after-the-fact) surcharge disclosure on the customer's bill (SOF No. 12, 13, 33, 34), because at that point the customer has already consumed the meal and would feel obligated to pay the bill as shown, although the customer might choose to forego paying a tip (or tip less) in light of the surcharge (*see* SOF Nos. 47, 55, 60).

A customer cannot simply (and lawfully) chose not to pay the bill if they are unhappy with it, nor might a customer necessarily feel comfortable asking to not to have to pay the surcharge when they see it on their bill, as a restaurant is not typically a place where parties negotiate food prices (SOF No. 33, 47, 55, 60). While Noble House may have an unwritten policy to waive the surcharge if a customer complains, in at one instance a customer complained about not knowing about the surcharge and indicated that the manager would not waive the 3.5% surcharge because it was out of their hands. SOF No. 47; *see also*, SOF Nos. 59-60.

It is important to note that Defendant intentionally chose to include a disclosure at the bottom of the menus[15] instead of simply increasing the advertised prices (SOF No. 24, 25). This was a deliberate decision by Noble House, which Plaintiff believes was in an effort to take advantage of consumers, or at the very least, avoid potential backlash for increasing prices.  Noble House certainly could have simply raised its prices, as a manager for Noble House recently testified that there was a price increase very recently at the Acuqa restaurant based on market changes (SOF No. 46). Additionally, some of Noble House's customers have complained about the surcharge practice (either online or on comment cards) and expressed that Noble House should have raised prices rather than imposing a 3.5%

---

[15] Section 1770(a)(20) of the CLRA also expressly requires that the total price (inclusive of the surcharge) be in a larger font size so that it stands out.  Since Defendant did not state the total price inclusive of the surcharge, it cannot be said that the total price was in a larger font size.

Kazerouni Law Group, APC

Costa Mesa, California

surcharge on their bills (SOF No. 47, 55). At minimum, such customer comments indicate a factual question for a jury with regard to the UCL and FAL claims.

As mentioned above, Noble House recently chose to raise prices based on market changes, but decided instead to impose a 3.5% surcharge rather than raise prices (the advertised menu prices are material[16]) in 2017 following a minimum wage increase (SOF No. 24, 25). The California Supreme Court has ruled that "[s]uch materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable [person] would have been influenced by it.'" *In re Tobacco II Cases*, 46 Cal. 4th at 327; *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 976-77 (Cal. 1997). Thus, the fact finder should consider the import of such deliberate decision by Noble House, which contradicts its claims that it goes to great lengths to give meaningful notice to consumers.

### 1. Defendant's reliance on *Freeman* is misplaced in light of the particular facts and context

The *Freeman* decision relied upon by Noble House is misplaced. *Freeman* is not analogous because Plaintiff's contention here is that reasonable consumers

---

[16] The "reasonable consumer" standard is used to determine whether the CLRA, Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; or False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*. Under the standard, the plaintiff must show that members of the public are "likely to be deceived" as to the price of their order by Defendant's surcharge practices. *See Gullins v. Car Max Auto Superstores Cal., LLC*, 2015 U.S. Dist. LEXIS 83070, *28-29 (C.D. Cal. 2015); *Ries v. Ariz. Bevs. USA LLC*, 2013 U.S. Dist. LEXIS 46013, *11 (N.D. Cal. 2013) (citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). This is determined by considering a reasonable consumer "who is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is 'the ordinary consumer within the target population.'" *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (Cal. Ct. App. 2013); *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003). Moreover, "any violation of the FAL constitutes a violation of the UCL." *Chapman*, 220 Cal. App. 4th at 226; *Williams*, 552 F.3d 934, 938; *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (Cal. 2002).

would have been misled by the advertised menu pricing where Defendant did not raise prices but rather imposes a 3.5% surcharge after failing to provide conspicuous notice of the surcharge practices (SOF Nos. 3, 24, 25, 27, 32, 47, 55).

*Freeman* concerned a very different context in terms of a mailer for a potential sweepstakes (*Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995)), whereas here, consumers are accustomed to relying in the prices listed in the menus for food and drink. *See e.g.*, Dayna B. Royal, *The Skinny on the Federal Menu-Labeling Law & Why it Should Survive a First Amendment Challenge*, 10 FIRST AMEND. L. REV. 140, 150-151 (Fall 2011) ("Menus and menu boards are vehicles through which restaurants propose a commercial transaction - the purchase of food. Such speech offers food products for specific prices.")

Further, a restaurant customer is not required to read through the entire menu before placing an order, nor was the surcharge disclosure on the second page of the Acqua menu from which Ms. Holt ordered the Chicken Quesadilla (SOF No. 31, 32). It is more reasonable to expect that someone who seeks to claim a potential price would read through all of the sweepstakes materials in that context of a "Million Dollar Dream Sweepstakes" (*Freeman*, 68 F.3d at 287). The mailers in *Freeman* were also personalized, addressed to Freeman, whereas the restaurant menus are not personalized – the menus are the same standard menu other customers are given to view at the restaurant so that they may place an order.

The *Freeman* Court also noted the significance of the disclosure language being in close proximity to the representations it qualified. Here, the 3.5% surcharge disclosure at the bottom of the menu was not in close proximity to the items ordered from the Acqua menu by Ms. Holt, particularly where the surcharge disclosure is not on the second page of the Acqua menu (SOF No. 31, 32). Thus, *Freeman* does not support the contention that reasonable restaurant customers would not have been misled by Noble House's surcharge practice.

Kazerouni Law Group, APC
Costa Mesa, California

Therefore, a jury should decide whether, under the circumstances, a reasonable consumer would have been materially misled by Defendant's surcharge practices where the actual price of the menu items (inclusive of a 3.5% surcharge) is not advertised.[17] Stated differently, a jury should decide whether the advertised menu pricing is false or misleading under a reasonable consumer standard for the UCL and FAL claims. However, if the Court determines that it (rather than a jury) may rule on the factual question as to whether the advertised menu pricing is false or misleading under a reasonable consumer standard for the UCL and FAL claims, the Court should rule in favor of Plaintiff for the reasons explained above.

## VI.   DEFENDANT IS NOT ENTITLED TO AN AFFIRMATIVE DEFENSE

In its Answer to the First Amended Complaint, Defendant asserts various defenses (Dkt. No. 37, pp. 12-14). Some of those claimed defenses have been stricken by the Court. Dkt. No. 66. Noble House only argues two defenses in its Cross-MSJ, both of which are without merit as explained below.

### A.   Defendant is Not Entitled to the Claimed Safe Harbor Defense

Without citing to its Answer and identifying a specific affirmative defense in its pleading, Defendant contends that the surcharge practice is not unlawful because it is subject to a safe harbor defense. Def's Memo., pp. 12-14. Such defense has been forfeited because it was not raised in the Answer, and it is also without merit.

#### 1.   Defendant has waived the safe harbor defense by not asserting it in its Answer

As an initial matter, Defendant should not be permitted to argue a safe harbor defense because it was not raised in its Answer to the First Amended Complaint as a

---

[17] Noble House does not argue that the advertised menu prices are not material. Such prices are certainly material. *See Holt*, 2018 U.S. Dist. LEXIS 177940, at *28-30; *see also, Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 198 L. Ed. 2d 132 (2017) (finding materiality not at stake under the CLRA because "the price of [the item is] an undeniably material term"); *Brockey v. Moore*, 107 Cal.App.4th 86, 100 (2003) (affirming that "the primary evidence in a false advertising case is the advertising itself").

Kazerouni Law Group, APC
Costa Mesa, California

defense. "Under the Federal Rules of Civil Procedure, a party, with limited exceptions, is required to raise every defense in its first responsive pleading, and defenses not so raised are deemed waived." *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) (citing Fed. R. Civ. P. 8(c), 12(b), and 12(g)); *Jones v. Miles*, 656 F.2d 103, 107 n.7 ("[A]n affirmative defense is not waived if the party who should have pled the defense introduces evidence in support thereof without objection by the adverse party or . . . the opposing party's own evidence discloses the defense, necessarily indicating his express consent."); *Gaines v. Stolc*., 2012 U.S. Dist. LEXIS 19412, at *6 (C.D. Cal. 2012) ("the Court agrees that Respondent's procedural default defense was waived as Respondent did not assert it in his answer."); *Arizona v. California*, 530 U.S. 392, 408-410 (2000) (holding the preclusion defense could not be considered when it had not been pressed at earlier stages of litigation, having every opportunity to do so).

Nowhere in the Answer does Noble House state the words "safe harbor" (Dkt. No. 37). Additionally, none of the more than twenty purported affirmative defenses (some of which have been stricken, Dkt. No. 66) are based on the claimed *safe harbor* defense. Moreover, Defendant has not sought leave to amend the Answer to add the safe harbor defense, even after some of its defense were stricken (*id*.) Therefore, the Court should find that such defense raised for the first time in Defendant's Cross-MSJ is forfeited.

### 2.   If the Court considers the safe harbor defense, the Court should rule that it is without merit

Should the Court consider the claimed safe harbor defense, the Court should hold that such defense is without merit. Defendant claims that California "enforcers" have "recognized" a restaurant's right to apply a "mandatory fixed-percent service charge to patrons' bills." Neither the California Legislature or state regulator have deemed Defendant's surcharge practice to be legally proper. The statute that covers the surcharge practice is § 1770(a)(20) of the CLRA, which

statute Defendant violated. Even that section of the CLRA allows for a surcharge, but imposes reasonable conditions to avoid misleading advertisements.

Noble House points to a letter issued by the California State Board of Equalization ("BOE") that only addresses issues related to *taxation* of surcharges. The BOE simply issued information regarding whether surcharges that some restaurants had recently begun to add to consumers' bills were subject to sales tax. Specifically, the BOE sought to resolve uncertainty in California's tax code regarding whether sales tax applies to sales at the restaurant. The BOE offers no opinion or advice on the *adequacy of any disclosure* or *legality of the method* by which Defendant collects its Surcharge, and would lack the authority to do so in any case. As such, the BOE did not provide any "regulations and guidelines" related to the collection or disclosure of the Surcharge itself or recognize the propriety of such business practices upon which Defendant could claim to reasonably rely upon.

Second, Defendant should not be permitted to claim, without affording Plaintiff with Rule 56(d) relief, that 22 Code Regs. § 927-1 or California Labor Code § 350(e) provide safe harbor, which apply to "mandatory service charges *distributed to employees*" because pursuant to Judge Major's discovery ruling on the parties' discovery dispute (Dkt. No. 47), *how* Defendant spends the surcharge revenue and whether the Surcharge is kept separate from Defendant's profits is not relevant to a claim for defense. Since Ms. Holt has been precluded from obtaining discovery to confirm or deny how the surcharge revenue is used by Defendant, Defendant should not be permitted to argue in its moving papers that the Surcharge is a "service charge distributed to employees at the employer's discretion" when Plaintiff has been unable to obtain discovery to confirm or dispute Defendant's assertion. *See* Kazeroiunian Decl., ¶ 7. Considering Defendant's evidence on this issue without affording Plaintiff Rule 56(d) relief would violate Plaintiff's procedural due process rights.

Third, Defendant cites to no local or municipal laws in San Diego that have

Kazerouni Law Group, APC
Costa Mesa, California

considered restaurant surcharges and deemed them proper. In fact, San Diego's City Attorney took legal action against restaurants in the San Diego area that began implementing surcharges, which shows that the practice is not universally accepted as Defendant claims. *See* Dkt. No. 75-27, p. 8 of 12. The fact that Defendant's restaurant has not been prosecuted by the City Attorney does not provide it any safe harbor or in any way condone its Surcharge practices; in other words, lack of legal action by the City of San Diego does not make a practice legal, and for Defendant to imply otherwise is improper and misleading. Defendant admits there is no law requiring the surcharge (SOF No. 45).

Fourth, the Santa Monica Municipal Code § 4.62.040(b) cited by Noble House only supports Plaintiff's position that Defendant's particular surcharge practice is a violation of the CLRA. First, even the City of Santa Monica requires a clear and conspicuous disclosures of a surcharge (essentially recognizing that a restaurant surcharge practice can be misleading), and the advertising by Noble House here does not meet that standard with the disclosure at the bottom of the menus and small signage around the restaurant (SOF Nos. 4, 5). Second, the State of California imposes a higher standard than Santa Monica, in that in addition to noting the surcharge, the company must also state the "total" price inclusive of the surcharge in the same advertisement, under § 1770(a)(20) of the CLRA.

Lastly, the guidelines from the California Restaurant Association, which is not a governmental agency, cannot override California state law. Nor could the (voluntary) 2018 guidelines have been relied upon by Noble House in 2017 when it enacted its particular surcharge practice. In sum, there is no safe harbor defense.

## B.    Defendant's First Amendment Argument Fails

Noble House's First Amendment argument plainly fails. Noble House concedes that "Noble House does not challenge the constitutionality of a state statute" but merely states that, in Noble House's opinion, the CLRA "would raise serious constitutional concerns" (Dkt. No. 75-1, p. 15, n.8). The First Amendment

Kazerouni Law Group, APC
Costa Mesa, California

challenge by Defendant comprises only a little more than one page of Defendant's Cross-MSJ. *See* Dkt. No. 75-, 15:6-16:19. This is perhaps the reason that Noble House did not serve the Rule 5.1 notice on the attorney general to give the government an opportunity to defend the constitutionality of the CLRA. Fed. R. Civ. P. 5.1 ("Rule 5.1"). SOF No. 41.

Defendant next suggests, again in a footnote, that it may provide for the notice under Rule 5.1 "promptly" after raising the challenge, but Defendant ignores that it raised the issue in its pleading in May of 2018 (Dkt. No. 37, p. 14, ¶ 20). *See* Fed. R. Civ. P. 5.1 ("A party that files a <u>pleading</u>, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly …") (emphasis added). Nor has Noble House provided evidence that it has actually and recently served the Rule 5.1(a) notice.

With regard to whether such defense has been waived by Defendant, Defendant has waived the defense by not specifying the constitutional violation and only vaguely asserting that "Noble House's actions were privileged under and/or protected by the United States and California Constitution" (Dkt. No. 37, p. 14, ¶ 20), which is another way of Defendant saying the CLRA violates unspecified constitutional rights. *See generally*, *Lazar v. Kroncke*, 862 F.3d 1186, 1202 (9th Cir. 2017) (finding a Dormant Commerce Clause challenge waived for lack of specificity). Additionally, Noble House should not be permitted to bring a constitutional challenge after failing to comply with Rule 5.1 for more than six months, showing lack of diligence, where the Answer to the First Amended Complaint was filed May 14, 2018 (Dkt. No. 37). *See Ballentine v. Las Vegas Metro. Police Dep't*, 2017 U.S. Dist. LEXIS 133777, at *21 (D. Nev. Aug. 21, 2017).

In terms of the merits, there is no First Amendment violation. The CLRA does not outright ban surcharges, nor does it regulate commercial speech in a manner that prevents commercial speech about surcharges. Under § 1770(a)(20) of the CLRA, a

business may both advertise and charge a surcharge under certain conditions, by stating "(A) the total price is set forth in the advertisement … in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product." Cal. Civ. Code § 1770(a)(20).

The CLRA essentially provides that it is inherently misleading conduct to impose a surcharge on products while not also stating in the advertisement the total price inclusive of the surcharge, which is what Defendant is liable for here in terms of its restaurant menus. Thus, the CLRA is in line with commercial speech law permitting regulation of commercial speech that is false or misleading. "The *Central Hudson* test first asks whether the speech is either misleading or related to illegal activity." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018). Even Defendant acknowledges that commercial speech may be regulated where it is misleading or related to unlawful activity. *See* Dkt. No. 75-1, 15:11-13.

Moreover, the CLRA does not impose more extensive than necessary requirements to protect consumers from false or misleading surcharges practices. Nor does Noble House contend that the CLRA's requirements are more extensive than necessary to serve a substantial governmental interest; the restrictions are narrowly drawn to address a deceptive practice. Noble House further does not argue that the government would not have a substantial interest in protecting California consumers in terms of their economic rights and preventing consumer deception.

The facts are distinguishable from *Italian Colors* because the CLRA's Section 1770(a)(20) is not an anti-surcharge statute, as mentioned above. It does not prohibit surcharges by business, including restaurants, but does impose certain reasonable requirements on advertising prices where a surcharge is to be applied. Further, unlike in *Italian Colors*, it is misleading here for Noble House to advertise the menu prices without stating the total price inclusive of the 3.5% surcharge that it intends to (and does) adds to the bill, and instead included a disclosure at the bottom

Kazerouni Law Group, APC
Costa Mesa, California

of the menus, thus altering the typical restaurant experience of looking to the prices next to the food and beverage items to know how much they will cost.

It is wrong for Noble House to characterize the CLRA as a "*per se* ban on all surcharges…" (Dkt. No. 75-1, 16:2-3). Defendant similarly mischaracterized Plaintiff's argument in support of class certification as to the unlawfulness of Defendant's surcharge practice. This Court previously explained that Defendant, when relying on *Searle* and *Italian Colors Rest.*, "misconstrues Plaintiff's claims by focusing on disclosure of the surcharge." *Holt,* 2018 U.S. Dist. LEXIS 177940, at *9. This Court further explained that "Plaintiff does not allege that surcharges in general are *per se* unlawful, but rather that Noble House's practice with respect to its 3.5% surcharge is *per se* unlawful under the CLRA and UCL." *Id.*

Thus, there is no First Amendment violation, including after *Italian Colors*. The CLRA places a reasonable, and constitutional, restriction on commercial advertising where the business chooses to impose a surcharge; the CLRA passes intermediate scrutiny.  In order to avoid a violation of the CLRA where it desired to impose a surcharge of 3.5%, all Defendant needed to do was either: i) state the total price inclusive of the 3.5% surcharge – and in larger font size or ii) increase its advertises prices in the menus by 3.5%.  Defendant did neither of these two things. The result is a false or misleading advertisement.

## VII.  CONCLUSION

In conclusion, the Court should deny Noble House's Cross-Motion for Summary Judgment. The Court should instead find in favor of Plaintiff on summary judgment as to liability of Noble House under § 1770(a)(20) of the CLRA.

With regard to the UCL and FAL claims, there is a factual question of whether a reasonable consumer would have been misled by Defendant's advertising of the menu prices, based on its surcharge practices.

///

///

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

Date: February 11, 2019

By:/s/ Abbas Kazerounian
    Abbas Kazerounian
    *Attorneys for Plaintiff*