**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey Esq. (SBN: 284607)
jason@kazlg.com
Clark R. Conforti, Esq. (SBN: 317698)
clark@kazlg.com
Nicholas R. Barthel, Esq. (SBN: 319105)
nicholas@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Attorneys On Signature Page]

*Attorneys for Plaintiff,*
Kathleen Holt

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KATHLEEN HOLT**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**NOBLE HOUSE HOTELS & RESORT, LTD. d/b/a NOBLE HOUSE HOTELS & RESORT, LTD. LP; and DOES 1 to 25, inclusive**,<br><br>Defendants. | **Case No.:** 17-cv-02246-MMA-BLM<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**<br><br>**Date:** March 11, 2019<br>**Time:** 2:30 p.m.<br>**Place:** Courtroom 3D<br>**Judge:** Hon. Michael M. Anello |

## I. INTRODUCTION

On December 27, 2018, plaintiff Kathleen Holt ("Plaintiff") filed Plaintiff's Motion for Partial Summary Judgment as to Liability against defendant NOBLE HOUSE HOTELS & RESORT, LTD ("Defendant"). [Dkt. No. 69]. Defendant filed its Response in Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment on All Issues. [Dkt. No. 75]. Plaintiff now files her reply in support of Plaintiff's Motion for Partial Summary Judgment As to Liability.[1]

## II. ARGUMENT

Plaintiff's Motion for Partial Summary Judgment as to Liability should be granted for the following reasons: (1) Defendant violated the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* as a matter of law on a class basis; (2) Defendant's surcharge practices are not protected by any "safe harbor"; (3) Defendant is not entitled to, and provides no supporting evidence for, any alleged affirmative defenses; and (4) Defendant failed to file a statement of disputed facts or address Plaintiff's Separate Statement of Undisputed Material Facts ("SSUMF") [Dkt. 69-2], thereby admitting Plaintiff's SSUMF.

### A. The Surcharge Is *Per Se* Unlawful

#### 1. *The Addition of Defendant's Surcharge to Every Food and Beverage Item on the Menu Violates the Plain Language of the Section 1770(a)(20).*

Defendant's attempts to avoid the plain language of the Consumer Legal Remedies Act "(CLRA")" and to evoke limited excerpts from the legislative history[2] are unavailing, as are its attempts to now characterize the Surcharge as an

---

[1] Defendant's brief (Dkt. No. 75) is confusing because it is unclear which arguments Defendant intended to use for its opposition and those for its cross-motion for summary judgment. This appears to be an improper tactic in order to limit Plaintiff's ability to address all of the Defendant's within only 10 pages of reply, and thus, numerous arguments are addressed briefly.

[2] It is apparent that the statute was intended to apply to food and beverages, even

Case No.: 17-cv-02246-MMA-BLM         1 of 11         *Holt v. Noble House Hotels & Resort, LTD.*
**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

"ancillary service," which is directly contradicted by Defendant's own admissions. [Dkt. No. 81-29, Defendant's Response to RFA (Set Three), Nos. 23, 24]. More importantly, Defendant fails to argue that the statute is vague or ambiguous, and thus, no legislative history analysis is warranted.[3] *Matter of Transwest Resort Properties, Inc.,* 881 F.3d 724, 727 (9th Cir. 2018) ("[O]nly where the statutory test is ambiguous do we 'look to other interpretative tools, including the legislative history,' in order to determine the statute's meaning.") (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.* 545 U.S. 546, 567 (2005)).

Here, no ambiguity exists. The CLRA does not define "goods" differently from "products" as Defendant argues, because the statute does not provide a separate definition for the word "product," while it provides a definition of the word "good." Cal. Civ. Code § 1761(a) (defining goods as "tangible chattels"). Thus, the words "good" and "product" were intended to be used interchangeably, given that the § 1770(a) starts with a statement that the whole section applies to the lease or sale of "goods" and "services." § 1770(a). If the Legislature intended to narrow the word "product," it would have done so and would have provided a separate narrow definition.

Assuming, *arguendo*, that the language of the CLRA were ambiguous (which it is not), the statute expressly states that it "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers

---

from the excerpts provided by Defendant. *See* Cal. Assembly Office of Research, Concurrence in Senate Amendments to Assem. Bill 2979 (Molina), Aug. 17, 1984 (stating that the statute was initially designed to prevent consumer fraud by food stores); *see also, In re Ferrero Litig.,* 794 F.Supp. 2d 1107, 1118 (S.D. Cal. 2011) (denying 12(b)(6) in a CLRA matter involving a food spread).

[3] "'Very strong' evidence or explicit language from the legislative history is necessary to overcome the plain meaning naturally to be drawn from the language of the statute." *In re Seidel*, 752 F.2d 1382, 1385 (9th Cir. 1985); *Guru Nanak Sikh Soc'y v. County of Sutter*, 326 F. Supp. 1128, 1139 (E.D. Cal. 2003).

against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. Thus, considering the broad and express language of the statute itself, the CLRA must be liberally construed *in favor of* the consumer and Defendant cannot introduce its own unsupported and drastically narrowed interpretation which contradicts the express provisions of the statute.

### 2. <u>The Surcharge Is A Charge In Addition To The Price of The Individual Menu Items, Not A Charge For "Ancillary Services" Furnished In Connection With The Sale of Those Items</u>

Defendant's claim that the Surcharge is a "mandatory service charge *separate from* food and beverage prices" and that the Surcharge practice is not "double-pricing individual products" fails for a number of reasons.

First, Defendant admitted in discovery that the surcharge is not for a service. [Dkt. No. 81-29, Def.'s Response to RFA (Set Three), No. 24]. Second, the Surcharge is completely dependent upon, and directly tied to, the menu price of the ordered food or beverage item. [SSUMF Nos. 1-3, 10, 13-16; Dkt. No. 69-4, ("Dennis Depo., No. 1"), 22:8-22]. In fact, here is no variation for larger dishes or complicated orders, and no difference in the Surcharge if the menu items are ordered for take-out or consumed in the restaurant. [Dkt. No. 81-8 ("Dennis Depo., No. 2"), 41:22-42:7]. Third, it appears that Defendant characterizes its surcharge as a "service" is due to an action of "selling" rather than preparing a meal. [Dkt. No. 81-8, Dennis Depo No. 2, 67:5-68:13]. Therefore, Defendant's attempt to distinguish food prepared at the restaurant and food prepared at a retail store is unavailing.

Indeed, Defendant admits that the CLRA applies to food and beverages by citing the statute's legislative history. *See* Dkt. 75-1, 11:13-22 (arguing that Section 1770(a)(20) was intended to apply to percentage markups charged by "*food stores*" and to avoid a mark up for "a single food item."). Therefore,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1

Defendant's only prerogative is to distinguish a restaurant from a food store, even though in food stores a number of items are similarly made (for instance, a cooked chicken or soup in Albertson's stores).

Thus, Defendant's 3.5% surcharge added to the price of every food and beverage item at the end of the transaction, violates the plain language of Section 1770(a)(20) because Defendant failed to disclose the total price of each item in its menu. SSUMF ¶¶ 2-3, 16, 18.

### 3. *Defendant's Menus Are Advertisements Under The CLRA*

Defendant fails to develop any meaningful argument that its menus,[4] in which Defendant states the price of food and drinks and provides a brief description of its items, are not advertisements. [Dkt. 69-6, 69-21, 69-22]. Although the CLRA does not provide a definition of an "advertisement", it applies to a wide range of media types, including "but not limited to shelf tags, displays, and media advertising." Cal. Civ. Code § 1770(a)(20). The menu is a "display" (similar to shelf tags which consumers see when they enter stores) consisting of descriptions and names of products and goods offered to consumers. *See Id.; see also,* Dayna B. Royal, *The Skinny on the Federal Menu Labeling Law & Why it Should Survive a First Amendment Challenge,* 10 FIRST AMEND. L. REV. 140, 150-151 (Fall 2011)("Menus and menu boards are vehicles through which restaurants propose a commercial transaction – the purchase of food"). The CLRA's liberal construction and application has led courts to deem a wide range of communications as advertisements. *See e.g., In re Ferrero Litig.*, 794 F. Supp. 2d at 1118 (applying CLRA to food products); *Bogart v. Glenmark Generics, Inc.*, 2014 U.S. Dist. LEXIS 158055, at *7-8 (S.D. Cal. 2014) (applying CLRA to birth

---

[4] Interestingly, in Defendant's motion to dismiss (Dkt. No. 6-1), Defendant argued that the restaurant "intended to sell its 'goods' (i.e. food and drink) and separate 'services' exactly as advertised on the Menu . . .." (emphasis removed).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1

control); *Wang v. Massey Chevrolet,* 97 Cal.App.4th 856, 869 (2002) (broadly interpreting the statute).

It is evident that Defendant has no binding nor persuasive authority to contend otherwise, other than improperly citing two unpublished state cases (*Vespi* and *Michaelson*), which have no precedential value.[5] *See Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1126 fn. 8 (9th Cir. 2005) (disregarding unpublished appellate opinion because "the court's task is to "predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance"); *Rennick v. O.P.T.I.O.N. Care, Inc*. 77 F.3d 309, 317 (9th Cir. 1996) (same); *see also, Taylor v. Quall*, 458 F. Supp. 2d 1065, 1068 (C.D. Cal. 2006) (rejecting citation to two unpublished California Court of Appeal decisions); *Antablian v. State Bd. of Equalization*, 140 B.R. 534, 536-537 (Bankr. C.D. Cal. 1992) (recognizing that the court could not reasonably rely on an unpublished California state-court decision as an indication of how a California appellate court would rule). Thus, Defendant's menu is a communication to consumers that advertises a price at which Defendant offers a menu item to the consumer and promotes various dishes available at the restaurant.

**4. *Defendant's Surcharge Practices Are Not Protected By Any "Safe Harbor"***

"When specific legislation provides a 'safe harbor,' plaintiffs may not use

---

[5] Defendant misleadingly argues that California "courts have held" that food and beverage items listed on the menu are not "products" and/or "goods" or surcharges are "not illegal," repeatedly citing to <u>unpublished</u> California <u>state</u> court cases, which is not only improper but also sanctionable conduct – such citations and references should be completely disregarded. *See Neary v. Regents of University of California*, 3 Cal. 4th 273, 282 (Cal. 1992) ("[T]rial courts make no binding precedents"); *Alicia T v. County of Los Angeles*, 222 Cal. App. 3d 869, 885-86 (Ct. App. 1990) (monetary sanctions imposed to discourage violation of citation rules); *see also,* Cal. R. 8.1115(a) (unpublished opinions are not to be "cited or relied upon.")

the general unfair competition law to assault the harbor.'" *Hauk v JP Morgan Chase Bank United States,* 552 F.3d 1114, 1122 (9th Cir. 2009) (*citing Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (Cal. 1999)). However, the safe harbor rule does not prohibit an action "merely because some other statute on the subject does not, itself, provide for the action or prohibit the challenged conduct." *Cal-Tech Commc'ns, Inc.*, 20 Cal. 4th at 183. The safe harbor statute or regulation "must actually 'bar' the action or clearly permit the conduct." *Id*.

Here, Defendant misleadingly argues that its unlawful conduct is authorized by every "California enforcer and court" who have "recognized" a restaurant's right to apply a "mandatory fixed-percent service charge to patrons' bills." Def.'s Oppo., 2:5-6, 12:3-5. First, Defendant's "safe harbor" argument is waived due to its failure to assert this affirmative defense in its Answer, [Dkt. Nos. 15, 37]. *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008)(holding that failure to raise an affirmative defense constitutes a waiver of such defense); Fed. R. Civ. P. 8(b),(c). Second, as fully discussed above, Defendant's surcharge is not a "service" charge, as Defendant had previously admitted that it applies to every food/beverage item, and is not a payment for service. [Dkt. No. 81-26, Def.'s Response to RFA (Set Two), No. 14].

Third, neither the California Legislature nor state regulator have deemed Defendant's Surcharge practices proper. Defendant points to a notice issued in February 2017 by the California State Board of Equalization ("BOE") that only addresses issues related to *taxation* of service charges. Nowhere in the BOE letter does BOE authorize Defendant's conduct, nor clearly permit the conduct – i.e. failure to disclose the total price of the menu items inclusive of the surcharge on the menu. [Dkt. No. 75-26]. The BOE offers no opinion or advice on the *adequacy of any disclosure* or *legality of the method* by which Defendant collects its

Surcharge, and would lack the authority to do so in any case. As such, the BOE did not, and could not, provide any "regulations and guidelines" related to the collection or disclosure of the Surcharge itself or recognize the propriety of such business practices upon which Defendant could claim to reasonably rely.

Fourth, Defendant cannot claim that 22 Code Regs. § 927-1 or California Labor Code § 350(e) provide safe harbor, which apply to "mandatory service charges *distributed to employees*" because pursuant to Judge Major's ruling on the parties' discovery dispute[6], *how* Defendant spends the Surcharge profits and whether the Surcharge is kept separate from Defendant's profits is not at issue and not relevant to Plaintiff's claims. [Dkt. No. 47]. Since Plaintiff has been precluded from obtaining discovery to confirm or deny how the Surcharge is spent, Defendant cannot now simply assert in its moving papers that the Surcharge is a "service charge distributed to employees at the employer's discretion" when Plaintiff cannot obtain discovery to confirm or dispute Defendant's assertion.

Finally, Defendant cites no local or municipal laws *in San Diego* that have considered surcharges and deemed them proper. Since the San Diego's City Attorney ("SDCA") has taken legal action against multiple restaurants in the San Diego area that began implementing similar surcharges, the practice is not as universally accepted as Defendant claims. SDCA's lack of prosecution of Defendant's restaurants does not provide it any safe harbor or in any way condone its unlawful practices. Thus, there is no statute or regulation that "clearly permit" Defendant's conduct. *See Cal-Tech Commc'ns, Inc.*, 20 Cal. 4th at 183.

### B. EVEN IF DISCLOSED, DEFENDANT'S SURCHARGE IS LIKELY TO DECEIVE OR MISLEAD MEMBERS OF THE PUBLIC.

Defendant attempts to mischaracterize Plaintiff's claims regarding its alleged Surcharge disclosure. [Def.'s Oppo., pp. 18-24]. Here, Plaintiff argues that

---

[6] *See* Order Granting In Part Plaintiff's Motion to Compel Discovery Responses From Defendant, at pp. 9-11. [Dkt. No. 47].

Defendant's *menu prices* materially misrepresent the prices of Defendant's menu items because the listed prices fail to include the surcharge. SSMUF, ¶ 3.

The "reasonable consumer" standard is used to determine whether a violation of the CLRA, Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; or False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* exists. Under the standard, Plaintiff must show that members of the public are "likely to be deceived" as to the price of their order by Defendant's surcharge practices. *See Ries v. Ariz. Bevs. USA LLC*, 2013 U.S. Dist. LEXIS 46013, *11 (N.D. Cal. 2013) (citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). This is determined by considering a reasonable consumer "who is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is 'the ordinary consumer within the target population.'" *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (Ct. App. 2013); *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Ct. App. 2003). Moreover, "any violation of the FAL constitutes a violation of the UCL." *Chapman*, 220 Cal. App. 4th at 226; *see Williams*, 552 F.3d 934, 938; *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (Cal. 2002).

As stated above, many consumers, including Plaintiff, do not see any disclosure prior to ordering their food and later presented with an inflated bill at checkout. Even assuming that a consumer did see the Surcharge disclosure, a question of fact exists as to whether members of the public are likely to be deceived by Defendant's surcharge practices and alleged disclosures. *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1258 (Ct. App. 2009) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298 (Cal. 2009)). Since a reasonable person "would attach importance to [the] existence or nonexistence [of the Surcharge]" in determining a course of action in the transaction, Plaintiff is

entitled to "a presumption or at least an inference, or reliance" on the material misrepresentation[7] of Defendant's menu prices caused by its surcharge practices.

Defendant's reliance on *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) is misguided. The facts in *Freeman* do not involve a menu, but rather a sweepstakes promotion, which is readily distinguishable from a consumer ordering a menu item at a restaurant. Likewise, Defendant's reliance on *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105 (S.D.N.Y. 2014) is unpersuasive because that case involved questions of New York law and, more importantly, under the New York law, plaintiff could not sue for deceptive practices where defendant "fully disclosed terms and conditions of an alleged deceptive transaction that caused harm to plaintiff." *Id.* Here, Plaintiff did not discover the surcharge until after she had already consumed her meal, and could no longer leave the restaurant without paying for the Surcharge. [SSUMF No. 15].

Moreover, not only does Defendant fail to provide the total price of the menu items inclusive of Surcharge, but it also admits that the surcharge is the *same size* font as the menu prices, when Section 1770(a)(20) specifically requires that the *total price* set forth in the advertisement must be *larger* than any other price in that advertisement. [SSUMF ¶ 8]. Defendant also has no plans to discontinue the Surcharge, and thereby continues to expose consumers to its unlawful business practices. Therefore, even if Defendant is found to have not *per se* violated the CLRA, the issue of whether Defendant's Surcharge is likely to mislead the public is a question of fact that must be decided by a jury.

///

---

[7] The California Supreme Court has ruled that "[s]uch materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable [person] would have been influenced by it.'" *In re Tobacco II Cases*, 46 Cal. 4th at 327; *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 976-77 (Cal. 1997).

### C. DEFENDANT'S SURCHARGE PRACTICES ARE NOT PROTECTED BY THE FIRST AMENDMENT AND DEFENDANT OFFERS NO EVIDENCE TO SUPPORT ANY OF ITS ALLEGED AFFIRMATIVE DEFENSES

Defendant does not challenge the constitutionality of the CLRA, and instead merely states that it "would raise serious constitutional concerns." [Dkt. 75-1, p. 15, fn. 8]. In any event, Defendant failed to serve the required Rule 5.1 notice on the attorney general to give the government an opportunity to defend the constitutionality of the CLRA. [SSUMF ¶ 26]. Further, Defendant's proposed defense is waived due to its failure to assert this affirmative defense in its Answer, [Dkt. Nos. 15, 37]. *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008). Thus, this defense is inapplicable. In any event, Defendant has failed to show that the CLRA, which does not ban surcharges, does not pass intermediate scrutiny.

### D. DEFENDANT FAILED TO FILE A SEPARATE STATEMENT OF DISPUTED MATERIAL FACTS AS REQUIRED BY FED. R. CIV. P. 56 AND THE COURT'S CHAMBER RULES

Since Defendant failed to oppose or object Plaintiff's Separate Statement of Undisputed Facts, this Court may deem Plaintiff's facts admitted for the purpose of Plaintiff's motion for summary judgment. *See United States v. Baisden*, 2013 U.S. Dist. LEXIS 41787, *17-19 (E.D. Cal. 2013) (A party may not create a "genuine" issue of "material" fact simply by making assertions in its legal memoranda); *Beard v. Banks*, 548 U.S. 521, 527 (2006); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); Fed. R. Civ. P. 56(e)(2). Thus, Plaintiff's facts should be deemed admitted for Defendant's failure to present any evidence to the contrary. The Court should find that all of Defendant's asserted affirmative defenses are without merit.

## III. CONCLUSION

For the reasons stated above and in Plaintiff's moving papers, Plaintiff respectfully requests that this Court grant her Motion for Partial Summary Judgment as to Liability. Plaintiff will litigate any remaining issues not suitable for summary judgment at trial.

| | | |
|---|---|---|
| Dated: February 11, 2019 | | Respectfully submitted, |
| | | **KAZEROUNI LAW GROUP, APC** |
| | By: | */s/ Abbas Kazerounian* |
| | | ABBAS KAZEROUNIAN, ESQ. |
| | | *Attorneys For Plaintiff* |

*Additional Counsel for Plaintiff:*
**HYDE & SWIGART, APC**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Yana A. Hart, Esq. (SBN: 306499)
yana@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022