Heidi B. Bradley (SBN: 243403)
bradleyh@lanepowell.com
Darin M. Sands (SBN: 257363)
sandsd@lanepowell.com
LANE POWELL PC
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA  98111-9402
Telephone: 206.223.7000
Facsimile: 206.223.7107

Attorneys for Defendant Noble
House Hotels & Resort, Ltd.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| Kathleen Holt, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Noble House Hotels & Resort, LTD. d/b/a Noble House Hotels & Resort, LTD. LP; and Does 1 to 25, inclusive,<br><br>Defendants. | Civil No. 3:17-cv-02246-MMA-BLM<br><br>**DEFENDANT NOBLE HOUSE'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT ON ALL ISSUES**<br><br>Date:  March 11, 2019<br>Time:  2:30 p.m.<br>Courtroom:  3D<br>Judge:  Hon. Michael M. Anello |

## I.     INTRODUCTION

The material facts are undisputed. The parties agree that Noble House adds a 3.5% surcharge to all bills, as disclosed to its customers on signs, menus, and bills. The statutes at issue are clear. California permits such surcharges as long as they are adequately disclosed, and Noble House's disclosure practices satisfy the "reasonable consumer" test. For the reasons stated in Noble House's cross-motion for summary judgment and this reply in support thereof, Plaintiff's claims fail as a matter of law.[1]

## II.     UNDISPUTED MATERIAL FACTS

Plaintiff admits that Noble House displays a Surcharge Disclosure on signs, menus and bills: "***A 3.5% surcharge will be added to all Guest checks to help cover increasing labor costs and in our support of the recent increases in minimum wage and benefits for our dedicated Team Members.***" (emphasis added)  *See* ECF No. 81-1 (Response to Defendant's Statement of Undisputed Material Facts "SOF") 3-6.

At the entry host stand, in lounge and bar areas, and around dining areas, the Restaurants display signed ("**Signs**") containing nothing but Noble House's standard Surcharge Disclosure language. SOF-4 (citing Dennis Decl., Ex. A, the Sign on display at Acqua California Bistro's entry host stand).

On the first page[2] of the Restaurants' menus (the "**Menu**"), Noble House's standard Surcharge Disclosure language appears in offset text, in the same font size as is used to list food and beverage items. SOF-5 (citing Dennis Decl., Ex. C-E, Menus for Acqua California Bistro, Fresco's, and Olive Bar). The Surcharge Disclosures on Acqua California Bistro and Olive Bar's Menus appear in red text, whereas the Surcharge Disclosure on Fresco's Menu appears in black text. *Id.*

On every bill the Restaurants issue (the "**Bill**"), there is (i) a line item showing the exact amount of the Surcharge, indicating that the Surcharge is added after the

---

[1] Capitalized terms not defined in this Reply have the same meaning set forth in Noble House's Cross-Motion for Summary Judgment. ECF No. 75-1.
[2] With regard to Olive Bar's Menu, Plaintiff disputes whether the standard Surcharge Disclosure language is "on the first page." SOF-5. This dispute is immaterial: all Menus are booklets such that the opening page contains a Surcharge Disclosure.

1

subtotal is calculated but before taxes are applied, (ii) offset text, in the same size font as is used to list the other items on the Bill, stating Noble House's standard Surcharge Disclosure language, and (iii) a separate line after the total amount due marked "GRATUITY" (emphasis in original) with a blank space for patrons to leave an optional customary tip. SOF-6 (citing Dennis Decl., Ex. F, Plaintiff's Bill).

### III. LEGAL ARGUMENT AND ANALYSIS

#### A. The Surcharge Is Not *Per Se* Unlawful.

Plaintiff's theory that the Surcharge is *per se* unlawful requires a reading of Section 1770(a)(20) and the Surcharge Disclosures that creates confusion where none exists, radically departing from the interpretation of the statute endorsed by both California State courts to address the issue. *See generally* ECF No. 81 ("**Opposition**" or "**Opp.**"). Plaintiff's effort to undermine the legal reasoning and relevance of *Vespi v. Galaxy Taco* (the "**State Court Ruling**") fails.

##### 1. Plaintiff Fails to Distinguish the State Court Ruling.

The State Court Ruling is analogous to this case in nearly every conceivable way. Judge Taylor applied the same statutes at issue in this case (including Section 1770(a)(20)) to Galaxy Taco's nearly identical surcharge and menu disclosure,[3] and ruled that "[t]here is no statute or case law that provides that the surcharge is unlawful as a matter of law." *Vespi v. Galaxy Taco*, No. 2017-17791 at 8; *see also id.* at 10 ("Galaxy Taco "did not calculate and impose the surcharge as a percentage of each item's price, but instead added 3% to the subtotal of the entire bill, pre-tax.").[4]

Despite Plaintiff's own admissions regarding the State Court Ruling's procedural posture, material facts, and legal conclusions, Plaintiff vaguely objects to

---

[3] Galaxy Taco's menu states, "A 3.5% surcharge will be added to each bill to help cover increasing operations and labor costs." *See* SOF 14-18 (citing Bradley Decl. ¶ 8, Ex. G (State Court Ruling) and ¶ 14, Ex. M (Galaxy Taco Menu)).

[4] Plaintiff's reliance on California Rule of Court 8.1115(a) to avoid the State Court Ruling and *Michaelson* is unavailing. The rule only prohibits citing to or relying on unpublished opinions "of a California Court of Appeal or superior court appellate division"; it does not prohibit citing to or relying on unpublished California Superior Court opinions. *Smith v. Intuit Inc.*, 5:12-CV-00222 EJD, 2012 WL 3945485, at *4 n. 1 (N.D. Cal. Sept. 10, 2012).

it as "irrelevant." *See* SOF-14-18; ECF No. 81-2. While not binding authority, the State Court Ruling's application of the same state statutes to nearly identical facts should be afforded persuasive weight to the same extent the Court would afford any California court's application of California law to analogous facts. Federal courts have a "duty" to "ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236-37 (1940) (consistency between state and federal courts "would be thwarted if the federal courts were free to choose their own rules of decision whenever the highest court of the state has not 'spoken.'").

The same is true for *Michaelson*, which Plaintiff summarily dismisses as "inapplicable" merely because it is "comprised of a single paragraph and concerned a demurrer at the pleading stage." Opp. at 9:15-21. Other than the State Court Ruling, *Michaelson* is the only Section 1770(a)(20) case to date. Plaintiff best summarizes *Michaelson*'s relevance: "at issue was whether it was unfair to charge one price for food/drink, another prices [sic] for services, and another for delivery." *Id*. Indeed, *Michaelson* expressly states that the court was "not persuaded that there is anything wrong with charging one amount for the food or beverage [and] another amount for the service," concluding that "[t]he business practice challenged in this case is not the least bit unfair, unlawful, or fraudulent." *Michaelson v. Ritz-Carlton Hotel Co.*, No. 02CC00141 (Super. Ct. of Cal., Cty. of Orange Nov. 21, 2002).[5]

2. <u>Plaintiff's Statutory Analysis of 1770(a)(20) is Unsupported by Caselaw or Principles of Statutory Construction</u>.

Plaintiff labels the State Court Ruling "wrongly decided" but offers no compelling response to its conclusion that Section 1770(a)(20) does not create *per se* liability for restaurant surcharges. Opp. at 4:5. Section 1770(a)(20) prohibits

---

[5] Plaintiff also attempts to distinguish *Michaelson* on the basis that the complaint at issue in *Michaelson* "alleged those charges were disclosed." Opp. at 9:20-21. Such a distinction is no longer effective at the summary judgment stage, as the material facts regarding Noble House's disclosure practices are undisputed (*i.e.*, Plaintiff admits that the Surcharge is disclosed on the Signs, Menu, and Bill). *See* SOF-3-6.

3

Defendant Noble House's Reply in Support of
Cross-Motion for Summary Judgment on All Issues

"advertising that a product is being offered at a specific price plus a specific percentage of that price." Cal. Civ. Code § 1770(a)(20). Plaintiff's theory of *per se* liability begins with the argument that restaurant food and drink items are "products" within the scope of Section 1770(a)(20). The CLRA does not define "products," but does define "goods." *See id*. § 1761(a). For that reason, Plaintiff encourages the Court to "look to the defined term 'goods' in ruling on whether the restaurant food and drink items are 'products' under the CLRA." Opp. at 6:1-2. This argument fails.

First, Plaintiff does not cite any CLRA case where a restaurant's food or drink items were deemed *either* "goods" *or* "products." The only CLRA cases Plaintiff cites involve completely irrelevant mass-marketed items, including "Nutella" spread, birth control pills, and computer antivirus software, none of which discuss Section 1770(a)(20), separate service charges, or restaurants or other hospitality businesses. *See* Opp. at 3-11. Mass-marketed items are irrelevant to a business like a restaurant that furnishes services in connection with meals. This is why Judge Taylor rejected the same analysis Plaintiff relies on in this case, holding instead that restaurant menu items are not "goods" or "products" under the CLRA. *Vespi v. Galaxy Taco*, No. 2017-17791, at 9-10 (Super. Ct. of Cal., Cty. of San Diego Nov. 16, 2018).

Second, even assuming *arguendo* that restaurant food and drink items are "goods" and/or "products" under the CLRA, Plaintiff's Opposition ignores the CLRA's separate definition of "services," which includes "work, labor, and services for other than a commercial or business use, *including services furnished in connection with the sale or repair of goods*." Cal. Civ. Code § 1761(b) (emphasis added). Just as prices listed on a menu correspond to the individual food or drink items they appear with, the fixed-percent Surcharge disclosed on the Menu corresponds to its own, separate pricing disclosure (the Surcharge Disclosure). *See* SOF-5 (Menus); *see also* SOF-4 (Signs), SOF-6 (Bill). Thus, even if the Court were to accept Plaintiff's argument that restaurant food and beverage items are "goods," the Surcharge would fall squarely within the CLRA's separate definition of

4

"services," which expressly separates "services furnished in connection with the sale… of goods" from the individual "goods" themselves.

### 3. Plaintiff Does Not Contest That Section 1770(a)(20)'s Legislative History Does Not Support Her Interpretation Of The Statute.

Noble House relies on three authorities that provide direct insight into the intent of Section 1770(a)(20). *See* ECF No. 75-1 at 10:22-11:28. Collectively, those authorities make clear that the statute was enacted to target retail pricing practices that are readily distinguishable from charges for services furnished in connection with a restaurant meal. *Id*. Plaintiff's offers no competing legislative history.[6]

### 4. Plaintiff's Effort to Dismiss the Safe Harbor Doctrine Fails.

#### a. *The California Board of Equalization, San Diego City Attorney, and City of Santa Monica Permit Restaurant Surcharges*.

Plaintiff does not dispute the existence or substantive applicability of the "safe harbor" doctrine in this case. Nor does Plaintiff attempt to directly distinguish the application of the doctrine in the State Court Ruling where the state court recognized that although "the [BOE's Special Notice]… does not advise of unlawful conduct," "the fact the Special Notice was sent out establishes that an arm of the state government was aware of the surcharge practice, and there was no effort by any arm of government to stop the practice." *Vespi*, No. 2017-17791 at 9. Instead, Plaintiff attempts to minimize the state regulatory acceptance of restaurant surcharges, and to foreclose Noble House from even availing itself of the doctrine by pointing to Noble House's affirmative defenses. Both arguments fail.

Plaintiff first tries to dismiss the Special Notice as mere tax advice. Opp. at 21:3-13. The State Court Ruling appropriately rejected that same argument,

---

[6] Plaintiff alleges that Noble House "has forfeited the opportunity to argue that the CLRA is ambiguous" by failing to establish ambiguity. Opp. at 13:12-21. Noble House has long argued that the plain language of the statute does not prohibit the Surcharge. Legislative history only becomes relevant if the Court concludes the language is ambiguous, but if it does, the legislative history weighs against combining a restaurant's food or beverage items and its separate charge for services furnished in connection with the meal into a single "product" under Section 1770(a)(20).

5

concluding instead that Section 1603(h) and the Special Notice create a safe harbor that encompasses the Surcharge by expressly addressing and accommodating the "[m]any restaurant owners/operators [that] add a surcharge to their receipts to cover required employer costs, such as increases to minimum wage, healthcare contributions, and paid sick leave." *See* Bradley Decl., Ex. E (Special Notice).[7]

Plaintiff also attempts to underplay the role that the San Diego City Attorney's two-year investigation and the Santa Monica Municipal Code play in the Court's analysis. While neither is dispositive of any issue in this case, both support Noble House's contention that the Surcharge is not *per se* unlawful, but instead need only be adequately and fairly disclosed. Plaintiff fails to cite *any* government action to enforce Section 1770(a)(20) against a restaurant in the statute's thirty-four-year existence, which is especially telling when the City Attorney has publicized her active surcharge disclosure enforcement campaign *and* the California Restaurant Association has issued guidance publicizing this industry-common practice and suggesting disclosure methods (all of which Noble House's disclosure practices exceed). *See* Bradley Decl., Ex. H, I. This harmony between the restaurant industry, government enforcement agencies, and the State Court Ruling, predicated on an understanding that fixed-percent surcharges are not *per se* unlawful but must be adequately disclosed, would be directly undermined by a contrary ruling in this case. *See also Vespi*, No. 2017-17791 at 9 ("absence" of City Attorney action supports conclusion that a restaurant's surcharge is lawful).

        b.    *Noble House Has Not Waived A Safe Harbor Defense*.

Plaintiff's procedural argument also fails because the safe harbor doctrine was neither "forfeited" by Noble House nor "raised for the first time" in Noble House's summary judgment brief, as Plaintiff alleges. *See* Opp. at 20:19-20.

---

[7] Plaintiff's discovery-based argument is misplaced. Judge Major rejected Plaintiff's attempt to compel discovery regarding disposition of the Surcharge as irrelevant because Noble House charges the Surcharge as stated in the Surcharge Disclosure (3.5% added to each Bill) and Noble House does not represent the Surcharge to be a "tip" or "gratuity" paid directly to its employees. *See* ECF No. 47 at 6:10-8:24.

First, Noble House's first and fourth affirmative defenses assert that Plaintiff fails to state a claim upon which relief can be granted, and that the alleged practices at issue are not unfair or likely to deceive. Both go to the heart of the safe harbor doctrine, which rests on the assumption that a practice accepted and accommodated by state regulators cannot serve as the basis for a claim under the CLRA, FAL, or UCL. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011).

Second, a waiver of an affirmative defense due to its absence from an answer can only occur where there is prejudice to the plaintiff. *See*, *e.g.*, *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010). Plaintiff does not even attempt to articulate what her prejudice would be in this case, nor could she. Noble House asserted the same safe harbor defense in its motion to dismiss at the outset of this case, which the Court rejected because any safe harbor could only protect "disclosed surcharges" and "Plaintiff has not alleged that the surcharge is disclosed on the menu, and the Court declines to make a factual finding based on factual allegations not included in Plaintiff's complaint." *See* ECF No. 6, 14. Plaintiff cannot act surprised by Noble House's renewed reliance on the safe harbor doctrine at the summary judgment stage, now that the material facts (the Signs, Menu, and Bill) can speak for themselves and the Court can make the requisite factual finding that the Surcharge is "disclosed" and eligible for safe harbor protection.

5. <u>Plaintiff's Interpretation of Section 1770(a)(20) Conflicts with the First Amendment's Commercial Speech Protections</u>.

The Court should interpret Section 1770(a)(20) to avoid conflicts with the Constitution. *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568 (1988). Plaintiff argues that Section 1770(a)(20) allows restaurants to charge fixed-percent surcharge for services, but only if the surcharge is communicated in specific terms. Opp. at 23:26-24:5. The Ninth Circuit recently deemed a statute unconstitutional because it allowed merchants to charge a fixed-percentage surcharge for credit cards, but only if the surcharge was communicated in

7

specific terms. *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1179 (9th Cir. 2018). The message is clear: a restaurant that discloses its surcharge truthfully and adequately (*e.g.*, before and at the point of sale) must be free to communicate the surcharge to its customers in its own terms. *See id.* at 1176-79.[8] The *per se* rule that Plaintiff advocates would directly conflict with Supreme Court and Ninth Circuit First Amendment jurisprudence.

## B. The Court can Conclude as a Matter of Law that Noble House's Surcharge was Adequately Disclosed.

Plaintiff's remaining CLRA, FAL, and UCL claims all allege that the Surcharge is unfair, deceptive, false, or misleading. Courts analyze such claims together under the "reasonable consumer" standard. *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). Under the reasonable consumer test, Plaintiff bears the burden of establishing that "it is *probable* that a *significant portion* of the general consuming public or of targeted consumers, *acting reasonably in the circumstances*, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508, 129 Cal. Rptr. 2d 486 (2003) (emphasis added). The only facts material to the reasonable consumer test are the facts establishing the subject act or practice; when those facts are undisputed, courts rule on whether the reasonable consumer is likely to be deceived as a matter of law. *See*, *e.g*, *Rooney v. Cumberland Packing Corp.*, 12-CV-0033-H DHB, 2012 WL 1512106, at *1 (S.D. Cal. Apr. 16, 2012).

Here, the material facts regarding Noble House's disclosure practices (*i.e.*, the Signs, Menu, and Bill) are undisputed. *See* SOF 3-6. The record is ripe for the Court to conclude as a matter of law that an ordinary Restaurant customer, acting reasonably while dining at one of the Restaurants, is not likely to be deceived by Noble House's disclosure practices.

---

[8] Plaintiff's reliance on Fed. R. Civ. P. Rule 5.1 is misplaced. Noble House does not ask this Court to declare Section 1770(a)(20) unconstitutional, but instead to simply apply a fundamental rule of statutory interpretation to avoid constitutional conflict.

8

Defendant Noble House's Reply in Support of
Cross-Motion for Summary Judgment on All Issues

Plaintiff's "reasonable consumer" analysis bears no resemblance to the standard employed by Ninth Circuit and California courts in consumer disclosure cases. *See generally* Opp. at 14:7-19:9. Instead, relies almost exclusively on her own testimony and baseless conjecture about how restaurant patrons behave to contend the Surcharge Disclosures are improper. *Id.* Plaintiff's own experience is irrelevant at this stage, as "'anecdotal evidence alone is insufficient to prove that the public is likely to be misled' under the reasonable consumer standard." *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1145 (N.D. Cal. 2005) (citations omitted). Instead, the "reasonable consumer" is a hypothetical creation of law: "neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is 'the ordinary consumer within the target population.'" *See Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (Cal. Ct. App. 2013).[9]

Plaintiff relies on her own testimony to contend that a reasonable Restaurant customer would not see the Surcharge Disclosures on the Signs or Menus *at all* prior to ordering a meal. Plaintiff's generalized conclusion that the "reasonable consumer" would not "read through the entire menu before placing an order" is contradicted by a wealth of Ninth Circuit law approving consumer disclosures that were included *somewhere* in the subject label, contract, or other document, and were not otherwise hidden. *See*, *e.g.*, *Freeman v. Time, Inc.*, 68 F.3d 285, 289-290 (9th Cir. 1995) (reasonable consumer is presumed to have done a "sufficient reading"); *McKinniss v. Gen. Mills, Inc.*, CV 07-2521GAFFMOX, 2007 WL 4762172, at *3 (C.D. Cal. Sept. 18, 2007) (reasonable consumer is "expected to peruse the product's contents simply by reading the side of the box containing the ingredient list.") (citing *Freeman*'s "sufficient reading" standard); *Shvarts v. Budget Grp., Inc.*, 81 Cal. App.

---

[9] Plaintiff relies on the existence of "some" online customer complaints to argue that the Court should defer to a jury to conduct the "reasonable consumer" analysis as a question of fact. *See*, *e.g.*, Opp. at 17:1-2. Anecdotal evidence is irrelevant to determining whether a significant portion of the public is likely to be deceived. Moreover, many of the complaints cited by Plaintiff demonstrate that the customers did receive notice of the Surcharge prior to ordering but simply did not like the Surcharge. Whether the "reasonable consumer" likes or dislikes the substance of the disclosure cannot render the disclosure "deceptive" as a matter of law.

4th 1153, 1160, 97 Cal. Rptr. 2d 722 (2000) (public not "likely to be deceived" by a uniform rental agreement that included disclosures regarding fuel surcharges).

*Dimond*, *Michaelson*, and the State Court Ruling instruct that the most important factor in the reasonable consumer test is whether the Surcharge is disclosed on the Signs and Menus. *See Dimond v. Darden Restaurants, Inc.*, 13 CIV. 5244 KPF, 2014 WL 3377105, at *8 (S.D.N.Y. July 9, 2014) (applying California's consumer protection standards and holding that restaurant menus with disclosures stating an 18% surcharge "will be added to all guest checks" were not deceptive, false, or misleading because the surcharge was "completely and conspicuously indicated on the menu so that each patron was expressly informed as to the cost of dining at the Restaurants prior to voluntarily placing his or her order."); *Vespi v. Galaxy Taco*, No. 2017-17791 at 10 (restaurant "made adequate and non-misleading disclosures about the surcharge, thus all claims in the [complaint] fail."); *Michaelson*, No. 02CC00141 ("charging one amount for the food or beverage [and] another amount for the service… is not the least bit unfair, unlawful, or fraudulent" "so long as those charges are disclosed to the customer."). Plaintiff admits that Noble House discloses the Surcharge on the Signs and Menus.

Importantly, Plaintiff's Opposition does not contend that the Surcharge Disclosure *language itself* is false or misleading. As discussed above, Noble House provides the "reasonable consumer" with Surcharge Disclosures on the Signs and Menu prior to ordering a meal; therefore, Plaintiff's claims fail as a matter of law.

## IV.  CONCLUSION

For all of the foregoing reasons, Noble House respectfully requests that the Court grant summary judgment in Noble House's favor.

DATED:  February 21, 2019

LANE POWELL PC

By  */s/Heidi B. Bradley*
Heidi B. Bradley (SBN: 243403)
Darin M. Sands (SBN: 257363)
Attorneys for Defendant Noble House

10