UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN HOLT, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>NOBLE HOUSE HOTELS & RESORT, LTD,<br><br>Defendant. | Case No.: 17cv2246-MMA (BLM)<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND**<br><br>[Doc. No. 69]<br><br>**(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 75] |

Plaintiff Kathleen Holt ("Plaintiff") individually and on behalf of all others similarly situated, filed this class action against Defendant Noble House Hotels & Resort, LTD ("Noble House") alleging causes of action for violations of California's False Advertising Law ("FAL"),[1] California Business and Professions Code sections 17500, *et seq.*; California's Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200, *et seq.*; and California's Consumers Legal Remedy Act ("CLRA"), California Business and Professions Code sections 1750, *et seq.* Doc. No. 35 ("FAC").

---

[1] The FAL claim is raised by Plaintiff in her individual capacity only. *See* Doc. No. 63 at 1.

Plaintiff filed a motion for partial summary judgment. Doc. No. 69-1 ("PMSJ"). Noble House filed its response in opposition and cross motion for summary judgment on all claims. Doc. No. 75-1 ("DMSJ"). Plaintiff opposed Noble House's cross motion for summary judgment and replied to Noble House's opposition [Doc. No. 81 ("P Oppo"); Doc. No. 82 ("P Reply")], and Noble House replied to Plaintiff's opposition [Doc. No. 84 ("D Reply")]. The Court finds these matters suitable for determination on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1.d.1. For the following reasons, the Court **DENIES** Plaintiff's motion for partial summary judgment and **GRANTS** Noble House's motion for summary judgment.

## MATERIAL FACTS[2]

Noble House operates four restaurants located in the Hilton San Diego Resort & Spa in San Diego, California: (1) Acqua California Bistro ("Acqua"); (2) Olive Bar; (3) Fresco's; and (4) Aroma Coffee Shop ("Aroma"). Doc. No. 75-37, Defendant's Statement of Facts ("DSOF") at 2; Doc. No. 75-38, Defendant's Objections to Plaintiff's Statement of Facts ("D Obj.") at 2; Doc. No. 81-1, Plaintiff's Response to Defendant's Statement of Facts ("PRDSOF"); *see* Doc. No. 69-2, Plaintiff's Statement of Facts ("PSOF") at 2. In February 2017, Noble House began adding a 3.5% surcharge to all bills at the four restaurants. DSOF at 2; PSOF at 2; PRDSOF at 2. Noble House displays a surcharge disclosure on signs, on menus for Acqua, Olive Bar, and Fresco's, and bills. DSOF at 2-3; PSOF at 3, 5; PRDSOF at 3. Aroma does not use a menu. DSOF at 3; PSOF at 3. The surcharge disclosure reads: "A 3.5% surcharge will be added to all guest checks to help cover increasing labor costs and in our support of the recent increases in minimum wage and benefits for our dedicated team members." DSOF at 2-3; PSOF at 3-4; PRDSOF at 6. Signs with this disclosure are placed at the entry host stand, in lounge

---

[2] These material facts are taken from the parties' separate statements of undisputed facts and pertinent cited exhibits. Disputed material facts are discussed in further detail where relevant to the Court's analysis. Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

and bar areas, and around dining areas. DSOF at 2-3; PRDSOF at 6. On the menus, the disclosure is the same size font as the menu items and appears in red text on the Acqua and Olive Bar menus and in black text on the Fresco's menus. DSOF at 3; PSOF at 5. The same surcharge disclosure is also included on the restaurant bills. DSOF at 3-4; PSOF at 4; PRDSOF at 7. The bills contain a line item showing the exact amount of the surcharge, indicating that the surcharge is added after the subtotal is calculated but before taxes are applied. DSOF at 3-4; PRDSOF at 7-8. The surcharge disclosure appears in offset text and in the same size font as is used to list the other items on the bills. DSOF at 3-4; PRDSOF at 7-8. The surcharge practice is the same at Acqua, Olive Bar, and Fresco's. DSOF at 4; PSOF at 5; PRDSOF at 11.

## LEGAL STANDARD

### A. Motion for Summary Judgment

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'set[s] forth specific facts showing that there is a

3

genuine issue for trial.'" *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008), cert. denied, 555 U.S. 827 (2008) (quoting Fed. R. Civ. P. 56(e)).

B. **The CLRA, UCL, and FAL**

The underlying purpose of the CLRA is "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. The CLRA "shall be liberally construed and applied to promote its underlying purpose." *Id.* California Civil Code § 1770 lists unlawful practices under the CLRA. *See* Cal. Civ. Code § 1770. For example, "[a]dvertising goods or services with intent not to sell them as advertised" is an unlawful practice. Cal. Civ. Code § 1770(a)(9). Also, "[a]dvertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement . . . in a size larger than any other price in that advertisement" is an unlawful practice. Cal. Civ. Code § 1770(a)(20).

California's FAL broadly proscribes "untrue and misleading statements in advertising." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1137 (C.D. Cal. 2005) (internal quotation marks omitted). "The FAL prohibits any unfair, deceptive, untrue, or misleading advertising." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 967 n.2 (9th Cir. 2016). "Any violation of the false advertising law' necessarily violates the UCL." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted).

California's UCL permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. . . ." Cal. Bus. & Prof. Code § 17200. Under the UCL, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009). To establish an "unlawful" business practice, "a UCL action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices[.]" *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (Ct. App. 2008) (internal quotation marks omitted). "An 'unfair' business practice is actionable under the [UCL] even if it is not 'deceptive' or 'unlawful.'" *Buller*

4

*v. Sutter Health*, 160 Cal. App. 4th 981, 990 (Ct. App. 2008). An "unfair" business practice occurs "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Wilner v. Sunset Life Ins. Co.*, 78 Cal. App. 4th 952, 965 (Ct. App. 2000) (internal quotation marks and citations omitted). "An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (Ct. App. 2006). Finally, a "fraudulent" business practice is distinct from a common law claim and a plaintiff does not need to prove the elements of common law fraud to obtain relief. *In re Tobacco II Cases*, 46 Cal. 4th at 312. "[T]he term 'fraudulent,' as used in the UCL, has required only a showing that members of the public are likely to be deceived." *Daugherty*, 144 Cal. App. 4th at 838.

## EVIDENTIARY OBJECTIONS

The parties each raise a variety of evidentiary objections to the evidence presented by the opposing party. Doc. No. 75-38 ("D Obj."); Doc. No. 82-2 ("P Reply Obj."); Doc. No. 81-2 ("P Oppo. Obj."). Most of these objections are raised on the grounds that the evidence is argumentative, speculative, prejudicial, irrelevant, or that the form of the evidence is inadmissible because there is a lack of personal knowledge, or it constitutes inadmissible lay opinion or hearsay. The parties' also object on the ground that the statements of fact mischaracterize the evidence.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper

5

17cv2246-MMA (BLM)

legal conclusion are all duplicative of the summary judgment standard itself" and unnecessary to consider here. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *see Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted."). Moreover, Federal Rule of Evidence 403 objections are unnecessary at the summary judgment stage because there is no jury that can be misled and no danger of confusing the issues. *See Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 994 (C.D. Cal. 2013) (stating that courts "need not exclude evidence at the summary judgment stage for danger of unfair prejudice, confusion of the issues, or any other grounds outlined in Rule 403"). Accordingly, the Court does not consider any objections on the grounds that the evidence is irrelevant, speculative, argumentative, prejudicial, that it constitutes hearsay or inadmissible lay opinion, or that there is a lack personal knowledge. *See Burch*, 433 F. Supp. 2d at 1122. Similarly, the Court will not consider the parties' objections to the characterization of or purported misstatement of the evidence represented. *See Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008) (noting that the parties' "'evidentiary objections to [their adversary's] separate statements of undisputed facts are not considered because such objections should be directed at the evidence supporting those statements'").

This leaves only two matters for the Court to decide. While not evidentiary objections, Plaintiff objects to Noble House's response to Plaintiff's statement of undisputed material facts and to Noble House's reference and citation to unpublished California state court decisions. P Reply Obj. at 2-3. First, Plaintiff argues that Noble House's response to her statement of undisputed material facts is improper, and the Court should therefore deem all of Plaintiff's facts undisputed. *Id.* Where a party fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the motion for summary judgment. Fed. R. Civ. P. 56(e)(2). Here, Noble House has filed a response to Plaintiff's statement of undisputed material facts, which appears to list only facts Noble House claims are mischaracterized. In

addition, Noble House filed a separate statement of undisputed material facts in support of its cross motion for summary judgment. In light of the several statements of fact proffered by both parties, the Court declines to deem all of Plaintiff's facts undisputed.

Second, Plaintiff argues the Court should disregard any citation or reference to unpublished state court opinions. P Reply Obj. at 3. California Rule of Court 8.1115(a) states that "an opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action." However, federal courts "may consider unpublished state decisions, even though such opinions have no precedential value." *Emp'rs Ins. of Wausau v. Granite St. Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003). While these opinions are "certainly not dispositive of how the California Supreme Court would rule," they may "lend[] support" to the contention that they "accurately represent[] California law." *Id.*; *see also Wash. v. Cal. City Corr. Ctr.*, 871 F. Supp. 2d 1010, 1028 n.3 (E.D. Cal. 2012) ("The Court may cite unpublished California appellate decisions as persuasive authority."). Thus, the Court is not precluded from considering unpublished state court opinions. *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 942 n.4 (9th Cir. 1997).

## DISCUSSION

Plaintiff seeks summary judgment as to liability only and on a class basis for Noble House's alleged violations of section 1770(a)(20) of the CLRA. PMSJ at 12. Noble House seeks summary judgment on all of Plaintiff's claims. *See generally*, DMSJ. Plaintiff asserts two theories of liability to prove that Noble House's surcharge practice is unlawful: (1) it is a *per se* violation of § 1770(a)(20) of the CLRA; and (2) it is misleading and deceiving under the CLRA, UCL, and FAL. *See id.* at 12-13; FAC.

**A.** *Per Se* **Violation of § 1770(a)(20) of the CLRA**

Plaintiff specifically contends that Noble House's surcharge practice is a *per se* violation of § 1770(a)(20) of the CLRA because "the advertised menu items do not indicate the total price of the items when the 3.5% surcharge is taken into account."

7

PMSJ at 18. To get to this conclusion, Plaintiff argues Noble House's surcharge practice is within the scope of § 1770(a)(20) because menus are advertisements and food and beverage items are products under the CLRA. *Id.* at 18-25. Noble House counters that the surcharge is outside the scope of § 1770(a)(20).[3] DMSJ at 13-14. As a result, the Court must first determine whether Noble House's surcharge practice is within the scope of § 1770(a)(20).

Section 1770(a)(20) provides that sellers cannot "[a]dvertis[e] that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in the advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product." Cal. Civ. Code § 1770(a)(20).

The scope of the CLRA turns on its express terms, including how it defines those terms. Neither the California Supreme Court nor the intermediate appellate courts have spoken on the issue of whether menus are advertisements under § 1770(a)(20). Because no published California decision directly addresses this issue, the Court must construe the CLRA's provisions to determine whether the statute applies to the transactions in this case. "In statutory construction, courts must, if possible, place significance upon every word, phrase, sentence and part of an act to achieve the underlying legislative purpose for a particular statute or legislative scheme." *Ceja v. J.R. Wood, Inc.*, 196 Cal. App. 3d 1372, 1375 (Ct. App. 1987). "When construing the meaning of words in a statute, courts

---

[3] Noble House and Plaintiff each request the Court judicially notice several documents. *See* Doc. Nos. 75-24; 69-30. However, judicial notice of these documents is unnecessary for the instant purposes, as the Court finds the disposition of the instant motions are proper without reference to those documents. *See Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n.13 (9th Cir. 1998) (denying to judicially notice facts which were not relevant to the disposition of the issues before the court). Accordingly, the Court **DENIES** both parties' requests for judicial notice. *See* Doc. Nos. 75-24; 69-30; 84-1.

should first look to the plain dictionary meaning of the word unless it has a specific legal definition." *Id.* at 1375-76 (citations omitted).

Here, the CLRA does not define "advertising." *See* Cal. Civ. Code § 1761. However, § 1770(a)(20) provides some guidance, explaining that advertisements include, but are not limited to, "shelf tags, displays, and media advertising." Cal. Civ. Code § 1770(a)(20). California Civil Code § 1755 explains that media advertising "includ[es], but [is] not limited to, newspapers, magazines, broadcast stations, billboards and transit ads[.]" Cal. Civ. Code § 1755. Restaurant menus do not fit well within this statutory language. Menus are lists of dishes or offerings that may be ordered at a restaurant, not tags, displays, or ads one would find in a magazine or on billboards.

Menus also do not fit well within the plain dictionary meaning of advertisements. According to Merriam-Webster Dictionary, "advertising" is defined as "the action of calling something to the attention of the public especially by paid announcements." MERRIAM-WEBSTER (2019), *available at* https://www.merriam-webster.com/dictionary/advertising. The term "advertisement" is defined as "a public notice" especially "one published in the press or broadcast over the air." *Id., available at* https://www.merriam-webster.com/dictionary/advertisement. Finally, the term "advertise" is defined as "to make something known to[;]" "to make publicly and generally known[;]" "to announce publicly especially by a printed notice or a broadcast[;]" or "to call public attention to especially by emphasizing desirable qualities so as to arouse a desire to buy or patronize." *Id., available at* https://www.merriam-webster.com/dictionary/advertise. Restaurant menus are not public announcements which are published or disseminated to the general public in an effort to arouse a desire to buy or patronize; rather, they are lists of offerings of items available at a restaurant.

Accordingly, the Court finds as a matter of law that Noble House's surcharge practice does not constitute a *per se* violation of § 1770(a)(20) of the CLRA because menus are not advertisements under the plain language of the statute. Based on the

9

foregoing, the Court **DENIES** Plaintiff's motion for partial summary judgment and **GRANTS** Noble House's motion for summary judgment on this claim.

B.   <u>**Misleading and Deceiving Practice under the CLRA, UCL, and FAL**</u>

Noble House moves for summary judgment in its favor on Plaintiff's remaining claims, which include a violation of § 1770(a)(9) of the CLRA and violations of the UCL and FAL. DMSJ at 22-23. To succeed on each of these claims, Noble House's surcharge practice must be unfair, deceptive, or misleading. *See generally*, Cal. Civ. Code § 1770(a)(9) (stating it is unlawful to "advertis[e] goods or services with intent not to sell them as advertised"); Cal. Bus. & Prof. Code § 17500 (prohibiting unfair, deceptive, untrue, or misleading advertising); Cal. Bus. & Prof. Code § 17200 (permitting civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising").

Under the UCL, FAL, and CLRA, conduct is deceptive or misleading if it is likely to deceive a "reasonable consumer." *Williams*, 552 F.3d at 938; *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (Ct. App. 2003) ("[U]nless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer."). "A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'" *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (Ct. App. 2006)). This standard "implies more than a mere possibility that [a defendant's products' label] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie*, 105 Cal. App. 4th at 508. Rather, the reasonable consumer standard requires a likelihood "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

"In determining whether a statement is misleading under the statute, the primary evidence in a false advertising case is the advertising itself." *Colgan*, 135 Cal. App. 4th at 679 (internal quotation marks and citation omitted). The reasonableness of consumer

deception is generally a question of fact, but in some circumstances courts may conclude that a business practice is not likely to deceive a reasonable consumer as a matter of law. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (finding a mailer that advertises a million-dollar sweepstakes is not misleading if it states explicitly that the prize is available to only the participant with the winning number).

Plaintiff contends that reasonable consumers would be "misled by the advertised menu pricing where [Noble House] did not raise prices but rather imposes a 3.5% surcharge after failing to provide conspicuous notice." P Oppo. at 24-25. Noble House asserts that a reasonable consumer would not be misled by its surcharge practice because of the surcharge disclosure, which can be found on the menus, the bill, and on signage throughout the property. *See* DMSJ at 24-30.

Under Ninth Circuit precedent, district courts have found that a reasonable consumer would not be misled when "statements, in context, are not misleading," or where "[a]ny ambiguity that [reasonable consumers] would read into any particular statement is dispelled by the promotion as a whole." *Freeman*, 68 F.3d at 290. Thus, the question here is whether Noble House's surcharge practice as a whole, including its disclosures, is misleading or deceiving. As noted previously, Noble House discloses its surcharge practice in three ways. First, it places the surcharge disclosure on signs throughout the property. Second, the disclosure is placed on the menus. Third, the disclosure is listed on each patron's bill, which also lists the cost of the surcharge as a separate line item. Taking these disclosures into account, a reasonable consumer would not be misled by Noble House's surcharge practice.

California case law supports this conclusion, and the Court finds four cases to be particularly illustrative. In *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1149-50 (Ct. App. 2000), the defendant's standard car rental agreement required its renters to either choose to purchase fuel from the defendant at the beginning of the rental or pay a fuel service charge if they failed to return the car with a full tank. The plaintiff alleged the charge was an unfair business practice and the defendant unfairly and fraudulently

concealed or obscured the charge. *See id.* at 1163-70. The California Court of Appeal found that the trial court errantly dismissed the plaintiff's claim because the per gallon rate was not disclosed in the rental agreement, but in a small and hard to read document consisting of indecipherable abbreviations. *Id.* According to the appellate court, this raised an issue of fact as to whether a reasonable consumer would know of the charge. *Id.* Conversely, in *Shvarts v. Budget Grp., Inc.*, 81 Cal. App. 4th 1153, 1160 (Ct. App. 2000), a California Court of Appeal held the public was not likely to be deceived by the defendant's practice of imposing a refueling charge for rental cars returned without a full tank of gas because the per gallon amount was clearly printed on the first page of the rental agreement.

In *Freeman v. Priceline.com, Inc.*, No. B242653, 2013 WL 5946069, at *6 (Cal. Ct. App. Nov. 7, 2013), the plaintiff alleged that Priceline's television advertisements were deceptive and misleading under § 1770(a)(5) and (a)(9) of the CLRA because they did not disclose that the price offered by a customer through its "name your own price" service would not be the total price for the room. California's Second District Court of Appeal held that Priceline's television commercials contained only limited information about Priceline's services, but that the customer could not avoid multiple disclosures regarding pricing in making a reservation through Priceline's website. *Id.*

Finally, in *Murray, Stok & Co. v. Recall Secure Destruction Servs., Inc.*, No. A123666, 2010 WL 168183, at *2, 4 (Cal. Ct. App. Jan. 19, 2010), the plaintiff argued that the defendant's practice of adding a $15 security administration fee to its document destruction bills was "merely a means of increasing the price for the same services and inflating its profits." The First District Court of Appeal found the practice lawful, noting that because "the total amount of the security administration fee was clearly delineated on [the defendant's] invoices" the public was not likely to be misled by the inclusion of the fee. *See id.* at *5. The court further held that "[i]t is not . . . a fraudulent business practice to impose an ancillary fee in a commercial transaction for the sole purpose of raising revenue without increasing baseline costs. . . ." *Id.* at *4.

Here, it is undisputed that Noble House displays the surcharge disclosure on signs, menus, and bills. PRDSOF at 3. With respect to the menus, it is undisputed that the disclosure is at the bottom of some, but not all, of the pages of the menus in the same size font as menu pricing and in red text, and black text on Fresco's menu. *Id.* at 4, 6. It is also undisputed that signs containing nothing but the surcharge disclosure are located at entry host stands, in lounge and bar areas, and around dining areas. *Id.* at 6. Finally, it is undisputed that every bill contains the surcharge disclosure, with a line item showing the exact amount of the surcharge. *Id.* at 7-8.

Based on the foregoing, the Court finds that Noble House's surcharge practice does not violate the CLRA, FAL, or UCL. As in *Shvarts*, the surcharge disclosure is not buried, but is instead displayed on menus, on signs throughout the property, and on each patron's bill. Analogous to *Freeman*, while the menu price of an item on its own may be "limited" in that it does not include the cost of the surcharge, a patron may not avoid the multiple disclosures on menus, signs, and the bill regarding the surcharge. Finally, as noted by the court in *Murray*, even if the surcharge is merely a method to raise revenue without raising baseline menu prices, as Plaintiff alleges, the surcharge would not be unfair or deceptive because of the numerous disclosures.

Thus, the Court concludes as a matter of law that a reasonable consumer would not be misled by Noble House's practice of listing menu prices exclusive of the surcharge where several signs throughout the property, the menus, and each patron's bill indicated that "[a] 3.5% surcharge will be added to all guest checks to help cover increasing labor costs and in our support of the recent increases in minimum wage and benefits for our dedicated team members." Accordingly, Noble House is entitled to judgment as a matter of law on Plaintiff's claims that Noble House's surcharge practice is unfair or deceptive under the CLRA, FAL, and UCL, and the Court **GRANTS** Noble House's motion for summary judgment.

//
//

## Conclusion

For the reasons set forth above, the Court finds that there is no genuine dispute as to any material fact and that Noble House is entitled to judgment as a matter of law as to all of Plaintiff's claims. As such, the Court **DENIES** Plaintiff's motion for partial summary judgment [Doc. No. 69] and **GRANTS** Noble House's motion for summary judgment [Doc. No. 75]. This order disposes of all claims. Accordingly, the Court **ORDERS** the Clerk of Court to enter judgment in favor of Noble House and to terminate the case.

**IT IS SO ORDERED**.

Dated: February 28, 2019

Hon. Michael M. Anello
United States District Judge